**Elroy TILLMAN, Petitioner,**

v.

**Gerald L. COOK, Warden, Utah State Prison and Jan Graham, Utah Attorney General, Respondents.**

**No. 2:95–CV–731 B.**

United States District Court,
D. Utah,
Central Division.

Aug. 31, 1998.

Loni Deland, Michael Sikora, Salt Lake City, UT, for Plaintiff.

J. Federic Voros, Jr., Angela Micklos, Salt Lake City, UT, for Defendants.

## ORDER ADOPTING REPORT AND RECOMMENDATION

BENSON, District Judge.

## I. BACKGROUND

On the night of May 25, 1982, Petitioner Elroy Tillman entered the home of Mark Schoenfeld, the new-found lover of Tillman's ex-girlfriend. After quietly crawling into Schoenfeld's darkened bedroom, Tillman signaled to his accomplice to turn on a light, whereupon Tillman hit Schoenfeld several times in the head with an axe. While Schoenfeld was still alive, Tillman set fire to the victim's mattress, and quickly fled the scene.

Soon after his accomplice agreed to cooperate with police officers investigating the homicide, Tillman was charged with first-degree murder. On January 14, 1983, a jury convened in Utah's Third District Court found Tillman guilty of capital murder in violation of Utah Code Ann. § 76–5–202. Six days later, the same jury sentenced Tillman to death by lethal injection. On appeal, the Utah Supreme Court affirmed the conviction and sentence on December 27, 1987. *State v. Tillman*, 750 P.2d 546 (Utah 1987)(*Tillman I* ).

Tillman then sought a writ of habeas corpus through the Utah court system. The Third District Court denied his petition. On appeal, the Utah Supreme Court affirmed that denial, *Tillman v. Cook*, 855 P.2d 211 (Utah 1993)(*Tillman II* ), and later denied Tillman's request for rehearing on June 25, 1993. On January 10, 1994, the United States Supreme Court denied Tillman's petition for a writ of certiorari.

On March 8, 1994, Tillman filed a petition for a writ of habeas corpus with this Court under 28 U.S.C. § 2254. That petition was dismissed without prejudice to allow Tillman to fully exhaust his state remedies as required by § 2254.

Tillman's current Petition, filed August 13, 1995, pleads eight grounds for relief. The case was referred to the Magistrate Judge pursuant to 28 U.S.C. § 636(b)(1)(B). After the matter was fully briefed, the Magistrate Judge held a hearing.

On December 23, 1997, the Magistrate Judge issued a Report and Recommendation, recommending that the Petition be denied. After the Court granted Petitioner an additional 30 days to respond to the Magistrate Judge's Report and Recommendation, Petitioner submitted his Objections to the Report and Recommendation on February 2, 1998. Petitioner objects to each of the Magistrate Judge's recommendations. Respondents submitted a Response to Petitioner's Objections on February 17, 1998.

## II. DISCUSSION

As noted above, Petitioner Tillman takes issue with every finding and recommendation made by the Magistrate Judge in his Report and Recommendation. In ruling on the Petitioner's objections, the Court has carefully reviewed all aspects of the Report and Recommendation, and finds it to be thorough and well-reasoned.

Because this is a case involving the death penalty, nothing less than the most painstakingly thorough analysis is to be expected. The Court has now carefully examined *de novo* each legal principal raised by Petitioner's objections. This explanation is provided at the outset of this relatively brief Opinion and Order to allay any question the Petitioner might otherwise have as to the level of scrutiny provided by the District Court in this review.

The Magistrate Judge's Report and Recommendation requires little, if any, amplification or elucidation. The Court finds no legal merit in any of the Petitioner's objections. The objections are virtually identical to the points raised in the Petition itself. The Court adopts the Report and Recommendation in its entirety and without any modification. However, the Court does feel inclined to provide the following additional brief comments on two of the eight grounds for relief.

## A. The Reasonable Doubt Instruction

██ Petitioner objects to the Magistrate Judge's conclusion that the trial court's reasonable doubt instruction was constitutionally acceptable. Specifically, Petitioner argues that the reasonable doubt instruction denied him of his right to a fair trial under *Monk v. Zelez*, 901 F.2d 885 (10th Cir.1990).

In *Monk*, the United States Court of Appeals for the Tenth Circuit held that a reasonable doubt instruction given at that criminal trial violated the defendant's constitutional rights. The instruction in *Monk* defined reasonable doubt as follows:

> "Reasonable doubt" means a substantial honest, conscientious doubt suggested by the material evidence or lack of it in the case. It is an honest, substantial misgiving generated by the material evidence or lack of it in this case. It is an honest, substantial misgiving generated by insufficiency of proof or guilt. It is not a captious doubt, nor a doubt suggested by the ingenuity of counsel or court and unwarranted by the testimony, nor a doubt born of a merciful inclination to permit the accused to escape conviction, nor a doubt prompted by sympathy for him or those connected with him. Proof beyond a reasonable doubt means proof to a moral certainty although not necessarily an absolute or mathematical certainty. If you have an abiding conviction of [defendant's] guilt such as you would be willing to act upon in the more weighty and important matters relating to your own affairs, then you have no reasonable doubt.

*Id.* at 889.

The *Monk* court concluded that "taken as a whole," this reasonable doubt instruction did not "accurately convey[ ] the concept of reasonable doubt to the [jury]." *Id.* at 893. Using the word "substantial," no fewer than three times, the instruction placed undue emphasis on the magnitude of doubt required for acquittal.

The challenged instruction given at Petitioner Tillman's trial reads as follows:

> I have heretofore told you that the burden is upon the State to prove the defendant guilty beyond a reasonable doubt. Now, by reasonable doubt is meant a doubt that is based on reason and one which is reasonable in view of all the evidence. Proof beyond a reasonable doubt is that degree of proof which satisfies the mind and convinces the understanding of those who are bound to act conscientiously upon it. A reasonable doubt is a doubt which reasonable men and women would entertain, and it must arise from the evidence or the lack of the evidence in this case.
>
> If after an impartial consideration and comparison of all the evidence in the case you can candidly say that you are not satisfied of the defendant's guilt, you have a reasonable doubt. But if after such impartial consideration and comparison of all the evidence you can truthfully say that you have an abiding conviction of the defendant's guilt such as you would be willing to act upon in the more weighty and important matters relating to your own affairs, you have no reasonable doubt. A reasonable doubt must be a real, substantial doubt and not one that is merely possible or imaginary.

Report and Recommendation at 7. A comparison of this instruction with the instruction given in *Monk* reveals obviously different approaches and contexts. The instruction in this case explained the reasonable doubt standard far more thoroughly than did the instruction declared invalid in *Monk*, and the reference to "substantial doubt" in this case constituted "merely a small part of an otherwise correct burden of proof charge." *Monk*, 901 F.2d at 893.

Moreover, in Tillman's instruction the substantial doubt language was included only to distinguish reasonable doubt from "possible" or "imaginary" doubt, referring to the "existence rather than magnitude of the doubt." *Victor v. Nebraska*, 511 U.S. 1, 20, 114 S.Ct. 1239, 127 L.Ed.2d 583 (1994). This is significant. The *Monk* court cited with approval the Fourth Circuit's opinion in *Murphy v. Holland*, 776 F.2d 470, 477 (4th Cir.1985), *vacated on other grounds*, 475 U.S. 1138, 106 S.Ct. 1787, 90 L.Ed.2d 334 (1986), explaining that in that case "substantial doubt language did not require reversal [because the] court

cautioned [the] jury that conviction requires exclusion of 'every reasonable hypothesis but that of guilt' and only used substantial doubt language as a contrast to a 'mere possible doubt' that would not prevent conviction." *Monk,* 901 F.2d at 893 (quoting *Murphy,* 776 F.2d at 477). The instruction given at Tillman's trial served a similar purpose and had a similar construction. It is therefore consistent with the Tenth Circuit's opinion in *Monk.*

The Court concludes that "taken as a whole," the instruction "correctly conveyed the concept of reasonable doubt" to the jury. *Holland v. United States,* 348 U.S. 121, 140, 75 S.Ct. 127, 99 L.Ed. 150 (1954); *Monk,* 901 F.2d at 893.

Furthermore, as explained in some detail in the Magistrate Judge's Report and Recommendation, subsequent to the Tenth Circuit's *Monk* decision in 1990, the United States Supreme Court has issued further guidance on the constitutionality of reasonable doubt instructions. In *Victor v. Nebraska,* 511 U.S. 1, 114 S.Ct. 1239, 127 L.Ed.2d 583 (1994), the Court upheld a trial court's use of an instruction that described reasonable doubt as "an actual and substantial doubt" arising from the evidence. *Id.* at 18, 114 S.Ct. 1239. The Court explained that mere "reference to substantial doubt" is not "sufficient to render [an] instruction unconstitutional," *id.* at 20, 114 S.Ct. 1239, concluding that where "the context makes clear that 'substantial' is used in the sense of existence rather than magnitude of the doubt," the instruction may indeed " 'correctly convey[ ] the concept of reasonable doubt to the jury.' " *Id.* at 20, 22, 114 S.Ct. 1239 (quoting *Holland v. United States,* 348 U.S. 121, 140, 75 S.Ct. 127, 99 L.Ed. 150 (1954)).

In appears that the Supreme Court clarified *Monk* in *Victor,* and possibly overruled *Monk* as controlling precedent. However, regardless of whether *Victor* overruled or merely clarified *Monk,* the reasonable doubt instruction in the instant case is constitutionally valid under the rationale used in *Monk* and *Victor.*

**B. Improper Prosecutorial Argument During the Sentencing Phase**

 Petitioner also takes issue with the Magistrate Judge's conclusion that the prosecutor's arguments about Tillman's chances for parole were appropriate, and were not so inflammatory as to deny Tillman a fair trial.

The prosecutor's argument that Tillman would be eligible for parole within fifteen years unless sentenced to death was both accurate and constitutionally permissible. *Simmons v. South Carolina,* 512 U.S. 154, 168, 114 S.Ct. 2187, 129 L.Ed.2d 133 (1994) ("[N]othing in the Constitution prohibits the prosecution from arguing any truthful information relating to parole or other forms of early release."). Furthermore, the prosecutor advanced this argument only in response to defense counsel's potentially misleading statement that if Tillman were sentenced to life imprisonment he would either (a) never receive parole or (b) receive parole at a very old age.

Under the totality of the circumstances, the prosecutor's statement was appropriate and necessary to explain to the jury the risks associated with imposing a non-death penalty sentence. *See e.g. Jurek v. Texas,* 428 U.S. 262, 275, 96 S.Ct. 2950, 49 L.Ed.2d 929 (1976). The Court agrees with the Magistrate Judge's conclusion that the circumstances raise no grave doubt of substantial or injurious harm.

### III. CONCLUSION

The Court ADOPTS the Magistrate Judge's Report and Recommendation in its entirety. Accordingly, IT IS HEREBY ORDERED that Petitioner Elroy Tillman's Petition for a Writ of Habeas Corpus is DENIED.

### REPORT & RECOMMENDATION

BOYCE, United States Magistrate Judge.

Elroy Tillman, an inmate at the Utah State Prison (USP) at Draper, Utah, filed a petition for habeas corpus based upon a challenge to a conviction for capital murder in violation of Utah Code Ann. § 76–5–202 (1978). Both the guilt and penalty were

determined by a jury and petitioner was sentenced to death. The petitioner appealed his conviction to the Utah Supreme Court which affirmed the conviction and sentence on December 27, 1987. *State v. Tillman*, 750 P.2d 546 (Utah 1987) (Tillman I). The petitioner sought post conviction habeas corpus in the Utah Courts and the petition for habeas corpus was denied by the Third District Court, State of Utah and petitioner appealed to the Utah Supreme Court which affirmed the denial of relief in *Tillman v. Cook*, 855 P.2d 211 (Utah 1993) (Tillman II). A rehearing before the Utah Supreme Court was denied on June 25, 1993. A petition for certiorari to the United States Supreme Court from the Utah post conviction judgment was denied on January 10, 1994.

On March 8, 1994 a petition for habeas corpus under 28 U.S.C. § 2254 was filed in federal court for the District of Utah. The petition was dismissed without prejudice to allow Tillman to seek further exhaustion of state remedies required by § 2254. The Utah Supreme Court ruled Tillman was procedurally barred from further consideration of "Ground Two" of this petition. The current petition filed August 13, 1995 pleads eight grounds for relief. A memorandum of points and authorities was submitted with the petition (File Entry # 2). An answer to the petition was filed by the respondent (File Entry # 8). The answer admitted most of the sequence of events alleged in the petition for habeas corpus. However, respondent contends there is no merit to any of the eight contentions of the petition. Respondent submitted an extensive memorandum with attachments and the complete state court record in support of the contention that the petition for habeas corpus should be denied. The petitioner submitted a reply memorandum (File Entry # 11). A supplement was submitted by respondent to its position to deny the petition (File Entry # 16). The petitioner submitted an additional post hearing reply (File Entry # 18). A rebuttal memorandum was submitted by respondent (File Entry # 19). Hearing was held on the petition but no evidence was taken at the hearing and the points for relief raised by the petitioner were argued by the parties.

The case was referred to the magistrate judge under 28 U.S.C. § 636(b)(1)(B). This report and recommendation is submitted pursuant to the reference on Elroy Tillman's petition for habeas corpus. Since the hearing on this matter, Congress enacted the Antiterrorism and Effective Death Penalty Act of 1996, Pub.L. No. 104–132 (April 24, 1996). The Act in Section 107(c) provides with regard to the death penalty provision in Chapter 154 of title 28: "Chapter 154 of Title 28, United States Code (as added by subsection (a)) [this chapter] shall apply to cases pending on or after the date of enactment of this Act [April 24, 1996]." However, 28 U.S.C. § 2261(a) provides that the chapter "shall apply only if the provisions of [28 U.S.C. § 2261(b) and (c) ] are satisfied." See discussion on retroactivity in *Lindh v. Murphy*, 521 U.S. 320, 117 S.Ct. 2059, 138 L.Ed.2d 481 (1997). In this case, the State of Utah has not complied with § 2261(b) & (c) and therefore the death penalty provisions of AEDPA are not retroactive and applicable to this case. The other substantive provisions of AEDPA (Chap.153) are not retroactive *Lindh, supra*.

### Preliminary Facts

The petitioner and respondent, in their respective memoranda, have not submitted a detailed factual statement of the circumstances of the crime, but the record has been provided. The information on which Tillman was prosecuted alleged that the homicide was committed while he was "engaged in the commission of burglary, aggravated burglary, arson or aggravated arson." Utah Code Ann. § 76–5–202(1)(d) (1978).

The Utah Supreme Court summarized the facts in *Tillman I:*

On May 26, 1982, Mark Schoenfeld was found dead in his smoke-filled apartment. He was lying on a smoldering bed, and his body was badly burned. Experts determined that the fire had been deliberately started and that its point of origin was the victim's mattress. Although the victim had received several severe blows to the head, the primary cause of death was asphyxiation. The evidence indicated, however, that the blows to the victim's head

could have produced fatal brain damage independent of the fire.

Defendant's former girlfriend, Lori Groneman, had been dating the victim at the time of his death. Groneman had been with the victim earlier in the evening on the night he was killed. On the basis of information provided by Groneman, defendant was arrested by the police.

At trial, Groneman testified that she had known defendant for over five years and that after breaking off their relationship in January 1982, she had repeatedly received threatening phone calls from defendant and a female caller who did not identify herself. Groneman also said that defendant had followed her and the victim on at least three occasions and that defendant had further harassed and threatened her.

Carla Sagers, defendant's girlfriend at the time of the murder, was picked up by the police a few days after the murder. Although she originally confirmed the alibi defendant had given the police, Sagers later recanted her statement and became the State's key witness, for which she was granted immunity from prosecution. Apparently, Sagers recanted her initial statement after the police confronted her with the fact that Groneman had identified Sagers' voice as that of the female who had made the threatening calls.

Sagers testified at trial that she had been romantically involved with defendant and that she had made the calls to Groneman at his request. Sagers also testified that in March 1982, defendant began to talk about killing Groneman, but later decided to kill the victim instead. Sagers described how, at various times before the murder, defendant discussed a number of alternative means of killing the victim, including poisoning him or using a bomb. At defendant's request, Sagers purchased two handguns. Sagers also helped locate the victim's address and learn the physical layout of the victim's home. In March 1982, defendant and Sagers went to the victim's house to shoot him, but did not commit the crime.

On the night of May 25, however, defendant and Sagers again went to the victim's home intending to kill him. Both defendant and Sagers entered the house and sat in the dark near the victim's front door. After waiting for what Sagers estimated to be about an hour, defendant crept to the victim's bedroom door, slowly opened it, and after finding that it was too dark to see, went to the kitchen and briefly turned on a light. Defendant then went back to the bedroom and crawled inside. Once in the bedroom, defendant whispered for Sagers to again turn on the kitchen light. Then defendant hit the victim several times in the head with an ax. While the victim was still alive and after Sagers suggested that they start a fire to cover up the homicide, defendant ignited the victim's mattress and scattered cigarette butts around the room to create the impression that the fire had been caused by a burning cigarette. Defendant and Sagers then left the house and disposed of the evidence used in the crime: a towel (which was used to wipe blood off the wall) and an article of clothing (which had been placed over the victim's head) were burned; the ax was thrown into a river; and defendant's gloves were discarded. The two then returned to defendant's apartment.

During the course of the homicide investigation, Sagers directed the police to the places where the evidence had been disposed of, and the police recovered the gloves, the burned towel, and the burned piece of clothing. The ax was never recovered.

Defendant was tried and convicted of first-degree murder and sentenced to death.

*Tillman I*, 750 P.2d at 550–51 (footnote omitted).

See also *Tillman v. Cook*, (*Tillman II*), at 855 P.2d at 214.

### Contentions

Petitioner has raised eight grounds for relief. First, he contends the reasonable doubt instruction in both the guilt and penalty phases unconstitutionally lowered the state's burden of proof and undermined the jury's sense of responsibility for its guilt and sentencing verdicts. Second, it is argued

that the prosecutor's argument at sentencing denied a fair trial and denied due process of law. Third, it is contended that the instructions on the guilt phase allowed the jury to convict based on arson and aggravated arson when those statutory crimes were not proved and that this denied due process. Fourth, petitioner asserts that because a special verdict was not required on the penalty phase it cannot be determined if the jury agreed unanimously on any one aggravator. Fifth, it is urged that the information was defective because it did not list the alleged aggravating crime in sufficient detail so that defendant could understand the crime and was improperly amended after preliminary hearing. Sixth, it is argued that the Utah capital murder statute is unconstitutional. Seventh, petitioner claims that the evidence was insufficient to prove Tillman committed aggravated arson or arson for sentencing purposes. Eighth, petitioner contends that because three members of the Utah Supreme Court had at one time or another expressed the opinion that Tillman should not be executed and that his execution would violate the Eighth Amendment prohibition against cruel and unusual punishment.

### Discussion

#### Ground One—Reasonable Doubt Instruction, Guilt Phase

Petitioner contends the reasonable doubt instruction given to the jury by the Utah trial court in the guilt phase of the trial denied petitioner due process of law. He challenges the reasonable doubt instruction given at both the guilt phase and the penalty phase. The petitioner asserts the instruction at the guilt phase lowered the state's burden of proof.

At the guilt phase of petitioner's trial, the judge instructed the jury with regard to reasonable doubt (Instruction 14, at 193):

All presumptions of law, independent of evidence, are in favor of innocence, and a defendant is presumed innocent until he is proved guilty beyond a reasonable doubt. And in case of a reasonable doubt as to whether his guilt is satisfactorily shown, he is entitled to an acquittal.

I have heretofore told you that the burden is upon the State to prove the defendant guilty beyond a reasonable doubt. Now, by reasonable doubt is meant a doubt that is based on reason and one which is reasonable in view of all the evidence. Proof beyond a reasonable doubt is that degree of proof which satisfies the mind and convinces the understanding of those who are bound to act conscientiously upon it. A reasonable doubt is a doubt which reasonable men and women would entertain, and it must arise from the evidence or the lack of the evidence in this case.

If after an impartial consideration and comparison of all the evidence in the case you can candidly say that you are not satisfied of the defendant's guilt, you have a reasonable doubt. But if after such impartial consideration and comparison of all the evidence you can truthfully say that you have an abiding conviction of the defendant's guilt such as you would be willing to act upon in the more weighty and important matters relating to your own affairs, you have no reasonable doubt. A reasonable doubt must be a real, substantial doubt and not one that is merely possible or imaginary.

The petitioner attacks that portion of the instruction that refers to "an abiding conviction of the defendant's guilt such as you would be willing to act upon in the more weighty and important matters relating to your own affairs, you have no reasonable 'doubt.'" The petitioner did not assert any other deficiency, but in his reply to the respondent's memorandum (File Entry # 11 at 3), petitioner contends the offending language has to be assessed in context with the last sentence of the instruction, that a "reasonable doubt must be a real, substantial doubt and not one that is merely possible or imaginary." The petitioner contends the real and substantial language also offends due process by diluting the prosecution's burden of proof.

Before considering the argument of defendant as to the specifics of the claimed deficiency in the instruction, it should be noted that additional instructions given by the trial

judge in this case addressed reasonable doubt. Instruction number 3 (R. at 183) advised the jury that defendant's plea of not guilty "casts upon the State the burden of proving each and all the essential allegations thereof to your satisfaction and beyond a reasonable doubt." In an additional instruction (number 15, at 194), the jury was told defendant had pled not guilty and denies every element of the offense. The jury was told the state had to prove every one of the elements of the offense beyond a reasonable doubt and "if you find the State has failed to prove any of these elements beyond a reasonable doubt, then you must find the defendant not guilty ..." Later in the same instruction (R. at 195) referring to second degree murder, the jury was told "you must find from the evidence, beyond a reasonable doubt" all the elements of the offense. The instructions in total on reasonable doubt, went beyond just the instruction challenged by petitioner.

*The Teague v. Lane issue*

■ In the respondent's memorandum (p. 11) it is asserted that the petitioner's argument on the instructional error as to reasonable doubt would create a "new rule" within the doctrine of *Teague v. Lane,* 489 U.S. 288, 109 S.Ct. 1060, 103 L.Ed.2d 334 (1989) and petitioner cannot on collateral petition raise the issue. In *Teague,* the Supreme Court said a habeas corpus petitioner may not seek to enforce a "new rule" of law that was announced after his conviction had become final unless the new rule fits into one of two narrow exceptions. The first is if the new rule "places certain kinds of primary, private individual conduct beyond the power of the criminal law making authority to proscribe." The second is if the rule "requires the observance of those procedures that ... are implicit in the concept of ordered liberty." 489 U.S. at 307, 109 S.Ct. 1060; *Earnest v. Dorsey,* 87 F.3d 1123 (10th Cir.1996). A "case announces a new rule if the result was not dictated by precedent existing at the time the defendant's conviction became final." 489 U.S. at 301, 109 S.Ct. 1060. A state conviction "[becomes] final for purposes of [Teague] retroactivity analysis when the

availability of direct appeal to the state courts has been exhausted and the time for filing a petition for a writ of certiorari has elapsed or a timely filed petition has been finally denied." *Caspari v. Bohlen,* 510 U.S. 383, 390, 114 S.Ct. 948, 127 L.Ed.2d 236 (1994); *Earnest, supra,* at 1132. See also *Teague,* 489 U.S. at 310, 109 S.Ct. 1060. In making a determination as to whether a contention would announce a new rule the habeas court must "determine whether a state court considering [the petitioner's] claim at the time his conviction became final would have felt compelled by existing precedent to conclude that the rule [petitioner] seeks was required by the Constitution." *Caspari, supra,* at 390, 114 S.Ct. 948, (quoting from *Saffle v. Parks,* 494 U.S. 484, 488, 110 S.Ct. 1257, 108 L.Ed.2d 415 (1990)); *Earnest, supra* at 1132. The *Teague* principle applies to capital cases. *Penry v. Lynaugh,* 492 U.S. 302, 313–14, 109 S.Ct. 2934, 106 L.Ed.2d 256 (1989). In application of *Teague* to an instruction issued in a death penalty case, where the defendant claimed a right to a lesser included offense instruction, the court held the issue to be *Teague* barred. See *Andrews v. Deland,* 943 F.2d 1162 (10th Cir. 1991). In *Andrews* the Court also found the instruction request as to a lesser offense did not fit within the two exceptions in *Teague* for retroactive application of a new rule. *Id.* at 1180. In *Davis v. Maynard,* 911 F.2d 415 (10th Cir.1990), the court held a challenge to an anti-sympathy instruction did create a new rule, but as to an instruction on an aggravator for an especially heinous, atrocious or cruel killing, did not. The *Teague* doctrine applied as to the new rule, but where a new rule was not created, *Teague* did not apply.

■ In this case, the Utah Supreme Court upheld the petitioner's conviction on December 22, 1987 and denied his petition for rehearing on February 24, 1988. The petitioner *did not* apply for certiorari to the United States Supreme Court. In accord with the time frame set forth in *Caspari v. Bohlen, supra,* the time the petitioner's case became final was ninety days later on May 23, 1988.[1]

---

**1.** Rule 20, Supreme Court Rules, at the time provided for a ninety day period for a petition for certiorari.

■ The question as to whether the petitioner's contention would be a new rule as of May 23, 1988 must be determined on whether it would be dictated by precedent at that time.[2]

In *Hopt v. Utah,* 120 U.S. 430, 7 S.Ct. 614, 30 L.Ed. 708 (1887), the Supreme Court considered a "reasonable doubt" issue on review of a death sentence from the Territory of Utah. It was therefore a review of a lower federal court. The defendant challenged the instruction given on reasonable doubt by the trial court. It does not appear that the Court considered the issue in a constitutional context. Part of the instruction given advised the jury that "if, after such impartial comparison and consideration of all the evidence, you can truthfully say that you have an abiding conviction of the defendant's guilt, such as you would be willing to act upon in the more weighty and important matters relating to your own affairs, you have no reasonable doubt." *Id.* at 439, 7 S.Ct. 614. This is much like the instruction given in this case. The Court observed that:

"It is difficult to conceive what amount of conviction would leave the mind of a juror free from a reasonable doubt, if it be not one which is so settled and fixed as to control his action in the more weighty and important matters relating to his own affairs." *Id.*

The Court noted that some courts suggested no amplification of reasonable doubt was necessary, but the Supreme Court said some "explanation or illustration of the rule may aid in its full and just comprehension." *Id.* at 440, 7 S.Ct. 614. "The rule may be, and often is, rendered obscure by attempts at definition, which serve to create doubts instead of removing them." *Id.* at 440–41, 7 S.Ct. 614. The Court said an instruction which refers to the "weighty and important concerns of life, would be likely to aid [the jury] to a right conclusion." *Id.* at 441, 7 S.Ct. 614. The Court said the instruction given was "as just a guide" as could be given. *Id.*

In *Dunbar v. United States,* 156 U.S. 185, 15 S.Ct. 325, 39 L.Ed. 390 (1895) the Court again considered an instruction on reasonable doubt in a federal prosecution for smuggling. The issue was not considered as a Constitutional issue. Defendant contended the trial court failed to instruct the jury on what constituted reasonable doubt and in instructing the jury as to reasonable doubt used language in terms of "strong probabilities." *Id.* at 199, 15 S.Ct. 325. The Court referred to *Hopt* and *Miles* and said "[w]hile it is true that [the trial court] used the words 'probabilities' and 'strong probabilities,' yet it emphasized the fact that those probabilities must be so strong as to exclude any reasonable doubt, and that is unquestionably the law." *Id.* See also *Wilson v. United States,* 232 U.S. 563, 34 S.Ct. 347, 58 L.Ed. 728 (1914).

Subsequently, in *Holland v. United States,* 348 U.S. 121, 140, 75 S.Ct. 127, 99 L.Ed. 150 (1954) the Supreme Court again addressed the reasonable doubt issue in a tax prosecution. The Court did not refer to its prior decision in *Hopt, supra,* but referred to *Miles v. United States,* 103 U.S. 304, 26 L.Ed. 481 (1880), a polygamy case from Utah, where the court did not really decide the reasonable doubt issue but referred in *Miles* to the instruction of the trial court on reasonable doubt where the trial court stated:

A juror in a criminal case ought not to condemn unless the evidence excludes from his mind all reasonable doubt; unless he be so convinced by the evidence, no matter what the class of the evidence, of the defendant's guilt, that a prudent man would feel safe to act upon that conviction in matters of the highest concern and importance to his own dearest personal interests.

*Miles,* 103 U.S. at 309.

The reporter (Otto) in the case head notes concludes the instruction provided no "just grounds of exception."

In *Holland, supra,* the court did not consider the issue of reasonable doubt in a constitutional context, but on review of a federal prosecution. The Court, referring to *Miles,* noted the "[a]ttempts to explain the term

---

**2.** The brief of respondent has not been helpful on the *Teague* question as it has not explored the extent of the *Teague* issues.

'reasonable doubt' do not usually result in making it any clearer to the minds of the jury." 348 U.S. at 140, 75 S.Ct. 127. The Court did say that it believed "that the instruction as given was not of the type that could mislead the jury into finding no reasonable doubt when in fact there was some." *Id.* The Court referred to the instruction given that reasonable doubt is "the kind of doubt ... which you folks in the more serious and important affairs of your own lives might be willing to act upon." *Id.* The Court directed a modification saying, "[w]e think this section of the charge should have been in terms of the kind of doubt that would make a person hesitate to act." *Id.* However, the Court then said that, "taken as a whole, the instruction correctly conveyed the concept of reasonable doubt to the jury." *Id.* The Supreme Court's holding in *Holland* did not fault the instruction given to the extent of finding error, let alone a violation of due process. This appears to be the extent of the Supreme Court's decisions as of 1988 when Tillman's state conviction became final for *Teague* purposes.

During argument and his memorandum petitioner referred to and relied heavily on *Monk v. Zelez,* 901 F.2d 885, 889–90 (10th Cir.1990). However, for *Teague* purposes the case came after Tillman's conviction was final. Further, the case was an expansion of legal analysis from prior Supreme Court precedent on reasonable doubt instructions and due process claims.

However, the Supreme Court had, before Tillman's conviction became final, decided *In re Winship,* 397 U.S. 358, 90 S.Ct. 1068, 25 L.Ed.2d 368 (1970). The court held that in a juvenile court delinquency proceeding involving an act which if committed by an adult would be criminal, due process required proof at a level of beyond a reasonable doubt. In the course of the discussion, the court said:

The requirement that guilt of a criminal charge be established by proof beyond a reasonable doubt dates at least from our early years as a Nation ....

Although virtually unanimous adherence to the reasonable-doubt standard in common-law jurisdictions may not conclusively establish it as a requirement of due process, such adherence does reflect a pro-

found judgment about the way in which law should be enforced and justice administered.

*Winship* 397 U.S. at 361–62, 90 S.Ct. 1068. The court also said:

Expressions in many opinions of this Court indicate that it has long been assumed that proof of a criminal charge beyond a reasonable doubt is constitutionally required. See, for example, *Miles v. United States,* 103 U.S. 304, 312[, 26 L.Ed. 481] (1881); *Davis v. United States,* 160 U.S. 469, 488[, 16 S.Ct. 353, 40 L.Ed. 499] (1895); *Holt v. United States,* 218 U.S. 245, 253[, 31 S.Ct. 2, 54 L.Ed. 1021] (1910); *Wilson v. United States,* 232 U.S. 563, 569–570[, 34 S.Ct. 347, 58 L.Ed. 728] (1914); *Brinegar v. United States,* 338 U.S. 160, 174[, 69 S.Ct. 1302, 93 L.Ed. 1879] (1949); *Leland v. Oregon,* 343 U.S. 790, 795[, 72 S.Ct. 1002, 96 L.Ed. 1302] (1952); *Holland v. United States,* 348 U.S. 121, 138[, 75 S.Ct. 127, 99 L.Ed. 150] (1954); *Speiser v. Randall,* 357 U.S. 513, 525–526[, 78 S.Ct. 1332, 2 L.Ed.2d 1460] (1958); *Cf. & Coffin v. United States,* 156 U.S. 432[, 15 S.Ct. 394, 39 L.Ed. 481] (1895). Mr. Justice Frankfurter stated that "[i]t is the duty of the Government to establish ... guilt beyond a reasonable doubt. This notion— basic in our law and rightly one of the boasts of a free society—is a requirement and a safeguard of due process of law in the historic, procedural content of 'due process.'" *Leland v. Oregon, supra,* 343 U.S. [790] at 802–803, at 1009[, 72 S.Ct. 1002, 96 L.Ed. 1302 (1952)] (dissenting opinion). In a similar vein, the Court in *Brinegar v. United States, supra,* 338 U.S., at 174[, 69 S.Ct. 1302], that "[g]uilt in a criminal case must be proved beyond a reasonable doubt and by evidence confined to that which long experience in the common-law tradition, to some extent embodied in the Constitution, has crystallized into rules of evidence consistent with that standard. These rules are historically grounded rights of our system, developed to safeguard men from dubious and unjust convictions, with resulting forfeitures of life, liberty and property." *Davis v. United States,* at 488[ 16 S.Ct. 353], stated that the requirement is implicit in "constitu-

tions .... [which] recognize the fundamental principles that are deemed essential for the protection of life and liberty." In *Davis* a murder conviction was reversed because the trial judge instructed the jury that it was their duty to convict when the evidence was equally balanced regarding the sanity of the accused. This Court said: "On the contrary, he is entitled to an acquittal of the specific crime charged, if upon all the evidence, there is reasonable doubt whether he was capable in law of committing crime .... No man should be deprived of his life under the forms of law unless the jurors who try him are able, upon their consciences, to say that the evidence before them .... is sufficient to show beyond a reasonable doubt the existence of every fact necessary to constitute the crime charged."[3]
*Winship*, 397 U.S. at 362–63, 90 S.Ct. 1068.

Thus, *In re Winship* made it clear that due process requires proof beyond a reasonable doubt in a criminal prosecution. However, *Winship* dealt with the level of proof, not the instruction to define that level. However, it is important to recognize that the reasonable doubt standard is a part of fundamental due process. However, for *Teague* purposes, and petitioner's claim of instructional error as undermining the reasonable doubt standard, petitioner's argument would require a "new rule" since it was not to be reasonably anticipated from prior precedent, and is barred from consideration by *Teague* unless subject to an exception. See *O'Dell v. Netherland*, 521 U.S. 151, 117 S.Ct. 1969, 138 L.Ed.2d 351 (1997) (rule requiring capital defendant to be allowed to inform sentencing jury of parole eligibility is a new rule); *Lambrix v. Singletary*, 520 U.S. 518, 117 S.Ct. 1517, 137 L.Ed.2d 771 (1997) (rule on how sentencing judge should consider factors of jury recommendation and weigh aggravating circumstances in a capital case was a new rule); *Gray v. Netherland*, 518 U.S. 152, 116 S.Ct. 2074, 2084, 135 L.Ed.2d 457 (1996) (ruling that due process required more than one day's notice of evidence to be used by the prosecution would be a new rule); *Caspari v. Bohlen*, 510 U.S. 383, 393, 114 S.Ct. 948, 127 L.Ed.2d 236 (1994) (application of double jeopardy clause to noncapital sentencing situation would be a new rule); *Gilmore v. Taylor*, 508 U.S. 333, 344, 113 S.Ct. 2112, 124 L.Ed.2d 306 (1993) (rule requiring express instruction on mitigating mental state is new rule); *Graham v. Collins*, 506 U.S. 461, 477, 113 S.Ct. 892, 122 L.Ed.2d 260 (1993) (argument that Texas capital sentencing scheme prevented jury from adequately considering mitigating evidence raised a new rule); *Saffle v. Parks, supra,* (Eighth Amendment requires a jury to consider certain mitigating evidence in death sentence cases is a new rule). However, if the rule draws from existing precedent it is not new. *Maynard v. Cartwright*, 486 U.S. 356, 108 S.Ct. 1853, 100 L.Ed.2d 372 (1988); *Penry v. Lynaugh, supra; Clemons v. Mississippi*, 494 U.S. 738, 110 S.Ct. 1441, 108 L.Ed.2d 725 (1990) (no new rule). In this the petitioner's contention is a "new rule."

The next consideration is whether petitioner's argument falls under any of the exceptions to *Teague* that would allow retroactive application of the petitioner's contention. The petitioner contends that *Teague* is inapplicable to the issue of reasonable doubt. As noted before, in *Teague*, the court said the first exception to its nonretroactive application of a new rule was "if it places 'certain kinds of primary, private individual conduct beyond the power of the criminal law-making authority to proscribe.'" 489 U.S. at 311, 109 S.Ct. 1060. This exception has no application in this case. The Court, however, said a second exception applies to "watershed rules of criminal procedure" and requires "observance of 'those procedures that are implicit in the concept of ordered liberty.'" *Id.* The Court went on and, quoting from Justice Harlan's opinion in *Mackey v. United States*, 401 U.S. 667, 675, 91 S.Ct. 1160, 28 L.Ed.2d 404 (1971) (concurring in judgments and dissenting in part), adopted the assessment of what is "watershed" procedure.

"Typically, it should be the case that any conviction free from federal constitutional error at the time it became final, will be found, upon reflection, to have been funda-

---

**3.** In *Victor v. Nebraska*, 511 U.S. 1, 114 S.Ct. 1239, 127 L.Ed.2d 583, (1994), the Court referred to the reasonable doubt requirement as "an ancient and honored aspect of our criminal justice system." *Id.* at 5, 114 S.Ct. 1239.

mentally fair and conducted under those procedures essential to the substance of a full hearing. However, in some situations it might be that time and growth in social capacity, as well as judicial perceptions of what we can rightly demand of the adjudicatory process, will properly alter our understanding of the bedrock procedural elements that must be found to vitiate the fairness of a particular conviction."

*Teague*, 489 U.S. at 311, 109 S.Ct. 1060. See *O'Dell v. Netherland, supra,* 117 S.Ct. at 1978 (finding little watershed character in the rule allowing a defendant to advise a capital jury about parole eligibility); *Earnest v. Dorsey,* 87 F.3d 1123, 1132 (10th Cir.1996); *Castro v. State of Oklahoma,* 71 F.3d 1502, 1511 n. 9 (10th Cir.1995).

It should be noted that in *In re Winship, supra,* the Supreme Court held the requirement of proof beyond a reasonable doubt to be fundamental. However, a distinction can be made between *Winship* where the state practice did not use a reasonable doubt standard and the situation where a reasonable doubt standard is used but the claim is that there is a deficiency in the instruction that is provided. It is the latter that is involved in this case. As noted before, the Tenth Circuit has applied *Teague* where the petitioner was essentially making a claim of instructional error. *Andrews v. Deland, supra,* (lesser offense instruction). *Davis v. Maynard, supra,* does not support a different conclusion because the court held that a "new rule" was not involved. By contrast, in *Rael v. Sullivan,* 918 F.2d 874, 875 (10th Cir.1990) the court held that "a complete failure to instruct on an essential element of an offense violates the right to due process."

In *Sullivan v. Louisiana,* 508 U.S. 275, 113 S.Ct. 2078, 124 L.Ed.2d 182 (1993) defendant was tried for first degree murder in state court. The reasonable doubt instruction given by the trial judge was one that had been condemned as unconstitutional by the Supreme Court in *Cage v. Louisiana,* 498 U.S. 39, 111 S.Ct. 328, 112 L.Ed.2d 339

(1990)(per curiam).[4] The state court had held on appeal that the instruction was harmless beyond a reasonable doubt. 508 U.S. at 277, 113 S.Ct. 2078. The United States Supreme Court held that giving a deficient reasonable doubt instruction was constitutional error that required reversal of the conviction rather than being one amenable to harmless error analysis. The court held an erroneous reasonable doubt instruction vitiates all factual findings of the jury. There is no jury verdict within the meaning of the Sixth Amendment and the premise for harmless error analysis is absent. *Id.* at 280, 113 S.Ct. 2078. The court referred to the error as a violation of a "basic protection." *Id.* at 281, 113 S.Ct. 2078. The error is structural error. *Id.* at 282, 113 S.Ct. 2078. This case is a strong argument for the position that instructional error on reasonable doubt is to be treated no differently than a failure to use a reasonable doubt standard. This is supported by the characterization of instructional error as diluting the requirement for the reasonable doubt standard. See also *Victor v. Nebraska, supra.*

However, the majority of the court did not cite to or mention the *Teague v. Lane* issue, nor was it apparently raised by the defendant in *Sullivan.* Therefore, although *Sullivan* is strongly pertinent to the *Teague* question, it does not directly resolve it.

Several circuits have addressed the issue of whether *Teague* is a bar to a deficient reasonable doubt instruction. However, the circuits are split in their positions. In *Skelton v. Whitley,* 950 F.2d 1037, 1044–46 (5th Cir.1992), a decision before *Sullivan* but after *Cage,* the defendant contended the court's instructions called for · a higher degree of doubt than that required by the reasonable doubt standard and relied on *Cage* for reversal of a conviction. The court found the issue procedurally barred in part.[5] The court considered the *Cage* ruling. The court concluded that *Cage* was a new rule (as is the petitioner's claim in this case). *Skelton,* 950

---

**4.** *Cage* is not relevant to the *Teague* issue, but is relevant to the instructional error claim made by petitioner.

**5.** The respondent has not claimed any procedural bar in this case, even though the reasonable

doubt issue raised by the petitioner in this court is not the same one as the one which was raised in the initial appeal to the Utah Supreme Court. *State v. Tillman,* 750 P.2d 546, 572 (Utah 1987). Therefore, that defense has been waived by respondent.

F.2d at 1043–44. The court then addressed whether the second exception of *Teague* was applicable. The court held the second exception inapplicable, noting:

> Here, the problem is not a complete absence of the reasonable doubt standard or a deliberate reliance on an incorrect standard of proof, compare *Jackson v. Virginia*, 443 U.S. 307, 320 n. 14, 99 S.Ct. 2781, 2790, n. 14, 61 L.Ed.2d 560 (1979), but rather whether the jury instruction inadvertently diluted the reasonable doubt standard to some degree. Both the gravity of the procedural error and the determination whether it cause an inaccurate verdict are much more ambiguous in *Cage* and in this case than in *Winship*.

Moreover, the Court has observed the scope of *Teague* exceptions "must be consistent with the recognition that '[a]pplication of constitutional rules not in existence at the time of a conviction became final seriously undermines the principle of finality which is essential to the operation of our criminal justice system.' *Teague*, 489 U.S. at 309, 109 S.Ct., at 1074 ... [T]he 'cost imposed upon the State[s] by retroactive application of new rules of constitutional law on habeas corpus thus generally far outweigh the benefits of this application.'" *Sawyer v. Smith*, 497 U.S. 227, 110 S.Ct. 2822, 2831, 111 L.Ed.2d 193 (1990).

In *Saffle v. Parks*, 494 U.S. 484, 110 S.Ct. 1257, 1264, 108 L.Ed.2d 415 (1990, the Court stated that:

> Although the precise contours of this [second] exception may be difficult to discern, we have usually cited *Gideon v. Wainwright* [372 U.S. 335, 83 S.Ct. 792, 9 L.Ed.2d 799 (1963)] [citation omitted], holding that the defendant has the right to be represented by counsel in all criminal trials for serious offenses, to illustrate the type of rule coming within the exception.

Finally, in *Teague*, the Court believed it "unlikely that many such components of basic due process have yet to emerge." *Teague*, 489 U.S. at 313, 109 S.Ct. at 1076. These passages highlight the critical difference between *Winship* and *Cage*. The failure to give reasonable doubt instruction would seriously diminish the likelihood of obtaining an accurate conviction. Errors in an instruction long used, seldom challenged, and promulgated with good intentions, however, should not lightly be held to have violated fundamental constitutional norms in a way that requires retroactive habeas relief.

*Skelton*, 950 F.2d at 1045 (footnotes omitted). The court concluded *Teague* barred the retroactive application of *Cage*.

Subsequently, in *Brown v. Cain*, 104 F.3d 744 (5th Cir.1997), the defendant argued his trial denied due process because the instructions given by the Louisiana trial court violated the standard in *Cage v. Louisiana, supra*. The defendant contended that *Sullivan v. Louisiana, supra*, required overruling *Skelton v. Whitley, supra*. The court adhered to its prior position absent a decision from the circuit, en banc. See also *United States v. Shunk*, 113 F.3d 31, 37 (5th Cir. 1997).

Most recently, in *Humphrey v. Cain*, 120 F.3d 526 (5th Cir.1997) a panel of the Fifth Circuit concluded it was bound by its prior precedent but in a strong opinion by Judge Higginbotham, the panel set up the case for en banc review by concluding the instruction was error of a Constitutional dimension and found positions of other circuits in applying *Teague* that were contrary to the Fifth Circuit position. This suggests a recognition that the Fifth Circuit position may not be on solid ground and in transition in that circuit.

The Fourth Circuit addressed the issue in *Adams v. Aiken*, 41 F.3d 175 (4th Cir.1994). The court concluded that *Sullivan v. Louisiana, supra*, put the reasonable doubt instruction issue under the second exception of *Teague*:

> What Sullivan does cast into doubt is our holding that a *Cage* error does not qualify for retroactive application under the second *Teague* exception. This exception provides that "a new rule should be applied retroactively if it requires the observance of those procedures that are implicit in the concept of ordered liberty." 489 U.S. at 311, 109 S.Ct. at 1076 (citation and internal quotation marks omitted). The exception is limited to "those new procedures without which the likelihood of an accurate conviction is seriously diminished." 489 U.S. at 313, 109 S.Ct. at 1077. In *Sawyer*

*v. Smith,* 497 U.S. 227, 110 S.Ct. 2822, 111 L.Ed.2d 193 (1990), the Court emphasized that to qualify under *Teague*'s second exception a rule "must not only improve accuracy, but also alter our understanding of the bedrock procedural elements essential to the fairness of a proceeding." 497 U.S. at 242, 110 S.Ct. at 2831 (citations and internal quotation marks omitted).

In view of these explanations of *Teague*'s second exception, the question arises whether the remedy for an unconstitutional reasonable doubt instruction should be applied retroactively. The answer is found in *Sullivan*'s explanation of the crippling effects of such an instruction: "a misdescription of the burden of proof ... vitiates all the jury's findings." —— U.S. —— at ——, 113 S.Ct. at 2082. Without a jury's constitutional finding of guilt, a conviction lacks both "accuracy" and one of the "bedrock procedural elements essential to the fairness of the proceeding." *Sawyer,* 497 U.S. at 242, 110 S.Ct. at 2831.

*Sullivan* also describes denial of a right to a jury verdict of guilt beyond a reasonable doubt as a "structural" error. —— U.S. at —— and ——, 113 S.Ct. at 2082–83 and 2083–84 (Rehnquist, C.J., concurring). In the context of harmless error doctrine, the Supreme Court has stated that a criminal trial infected by a structural error "cannot reliably serve its function as a vehicle for determination of guilt or innocence and no criminal punishment may be regarded as fundamentally fair." *Arizona v. Fulminante,* 499 U.S. 279, 310, 111 S.Ct. 1246, 1265, 113 L.Ed.2d 302 (1991) (citation and internal quotation marks omitted).

In light of *Sullivan,* a constitutionally deficient reasonable doubt instruction not only dilutes the standard of proof beyond a reasonable doubt mandated by *In re Winship,* 397 U.S. 358, 90 S.Ct. 1068, 25 L.Ed.2d 368 (1970), but it also prevents a jury verdict of guilty from coming into existence. This failure is a breach of the right to a trial by jury resulting in a lack of accuracy and the denial of a bedrock procedural element essential to fairness. It is also a structural error that deprives a defendant of a fundamentally fair trial. Consequently, the rule that a constitutionally deficient reasonable doubt instruction

violates the Due Process Clause satisfies *Teague*'s second exception. It should be applied retroactively.

*Adams,* 41 F.3d at 178–79.

A similar position has been taken by the Eleventh Circuit. *Nutter v. White,* 39 F.3d 1154 (11th Cir.1994)(*Cage* rule satisfied accuracy and fundamental fairness prongs of exception to *Teague's* nonretroactivity rule allowing retroactive application of new rules that involve procedures that are implied in the concept of ordered liberty). But see, *In re Hill,* 113 F.3d 181 (11th Cir.1997) reacknowledging *Nutter* but refusing to allow a successive petition under 28 U.S.C. § 2244(b)(2)(A).

In *Murray v. Delo,* 34 F.3d 1367, 1382 (8th Cir.1994) the Eighth Circuit addressed a deficient reasonable doubt instruction. The petitioner claimed the use of "firmly convinced" in a reasonable doubt instruction was constitutionally infirm. The court said that such a claim would create a new rule within *Teague*'s doctrine. The petitioner had relied on *Cage* in support of his argument. *Id.* at 1381. The court rejected the *Cage* basis for the argument finding for a new rule and without considering the *Teague* exceptions, said, "Therefore, we hold that this claim is barred by *Teague." Id.* at 1382. The court did *not* address whether the second exception in *Teague* was applicable. Therefore, the case is not as significant as if it had decided the issue of the fundamental nature of a deficiency in a reasonable doubt instruction.

Based on a careful consideration of the cases and especially the Supreme Court's ruling in *Sullivan v. Louisiana, supra,* it must be concluded that the position of the Fourth and Eleventh Circuits is correct. The Fifth Circuit's position has been undermined and no other reasonable conclusion can be accepted than that *Teague* does not bar consideration of petitioner's claim of a deficient reasonable doubt instruction.

The question of whether the reasonable doubt instruction given to the jury in this case is constitutionally deficient must be considered on the merits in light of the relevant Supreme Court and circuit court opinions.

Petitioner's first contention is the language in the instruction 14 (Tr. at 193) that if, after "impartial consideration and comparison of all the evidence you can truthfully say you have an abiding conviction of defendant's guilt such as you would be willing to act upon in the more weighty and important matters relating to your own affairs, you have no reasonable doubt" is deficient. No objection or exception was taken to instruction 14. (Tr. at 1743–1747). The reasonable doubt instruction requested by the petitioner is very similar. It contains the "substantial" language wording and the language of "best able to act in the more important affairs of his life". (Tr. at 148) The trial judge believed the court's instruction encompassed defendant's request "in substance." This part of the instruction is to directly caution the jury as to the seriousness and importance of their decision and the high standard required to overcome the presumption of innocence discussed in the first part of the instruction. Further, the instruction indicates the proof is the prosecution's burden and must be satisfied from the evidence.

The petition has placed strong emphasis on *United States v. Holland,* supra, to attack the language as constitutionally deficient. However, as noted before, *Holland* did not address the instruction in that case in constitutional terms. *Holland* did indicate the instruction should be in terms of the "kind of doubt that would make a person hesitate to act," 348 U.S. at 140, 75 S.Ct. 127, rather than "willing to act," but did not reverse the finding that the instructions taken as a whole conveyed the concept of reasonable doubt. *Holland* will not support petitioner's claim for relief. See *United States v. McIntyre,* 836 F.2d 467, 473 (10th Cir.1987) (instructions on reasonable doubt must be viewed in the context of the instructions as a whole). The Second Circuit has characterized *Holland* as stating a preference for the position it expressed. *United States v. McBride,* 786 F.2d 45 (2nd Cir.1986).

Subsequently, in *Monk v. Zelez,* 901 F.2d 885 (10th Cir.1990), the court reviewed a court-martial conviction[6] on petition for habeas corpus. The petitioner contended the instruction given which used the referenced phrase that reasonable doubt meant "a substantial, honest, conscientious doubt" was defective and that the instruction on "willing to act upon in the more weighty and important matters relating to your own affairs" was also defective. *Id.* at 889. *Holland* was cited for the alleged wrongfulness of the "substantial doubt" instruction to require reversal. *Id.* at 890. However, *Holland* never addressed that matter and is only properly cited for a harmless error standard. *Id.* The "willingness to act" language was condemned by the court, but without observing that *Holland* had found the instruction not to offend to the extent as to require reversal. The court did not discuss *Hopt v. Utah, supra,* in terms of the instruction upheld in that case. The *Monk* court concluded the instruction denied due process and that the Court of Military Appeals had reached the same conclusion in *United States v. Salley,* 9 M.J. 189 (C.M.A.1980). *Id.* at 891. The court did observe that in *United States v. Smaldone,* 485 F.2d 1333, 1348 (10th Cir.1973) the "willing to act" language did not require reversal of an otherwise unobjectionable charge. *Id.* at 893. There was also a "moral certainty" charge in the *Monk* instruction. *Id.* at 889–90, 893.[7] The court found a denial of due process because the instruction on substantial doubt along with the instruction as a whole diluted the reasonable doubt standard. Thus *Monk* is, if it still has controlling validity, a strong argument for petitioner's position. However, as will be seen, the *Monk* analysis has been rejected by the Supreme Court in its analysis.

The Supreme Court considered a reasonable doubt instruction in *Cage v. Louisiana,* 498 U.S. 39, 111 S.Ct. 328, 112 L.Ed.2d 339 (1990)(per curiam). The instruction given was in terms of reasonable doubt as "such doubt as would give rise to a grave uncer-

---

**6.** This may be of some importance. If the error was not of a jurisdictional (constitutional) nature, the court could not order a new trial. The court did not have general authority to review a military court conviction on habeas corpus for ordinary error. *Monk,* 901 F.2d at 888.

**7.** The court rejected the conclusion in the Ninth Circuit case of *Hatheway v. Secretary of Army,* 641 F.2d 1376 (9th Cir.1981), that the "moral certainty" language could cure the same deficient instruction which was given in *Monk.*

tainty" and as an "actual substantial doubt." *Id.* at 40, 111 S.Ct. 328. The instruction said the certainty for conviction was a "moral certainty." *Id.* The court said:

In construing the instruction, we consider how reasonable jurors could have understood the charge as a whole. *Francis v. Franklin,* 471 U.S. 307, 316, 105 S.Ct. 1965, 85 L.Ed.2d 344 (1985). The charge did at one point instruct that to convict, guilt must be found beyond a reasonable doubt; but it then equated a reasonable doubt with a "grave uncertainty" and an "actual substantial doubt," and stated that what was required was a "moral certainty" that the defendant was guilty. It is plain to us that the words "substantial" and "grave," as they are commonly understood, suggest a higher degree of doubt than is required for acquittal under the reasonable-doubt standard. When those statements are then considered with the reference to "moral certainty," rather than evidentiary certainty, it becomes clear that a reasonable juror could have interpreted the instruction to allow a finding of guilt based on a degree of proof below that required by the Due Process Clause.[8]

*Id.* at 41, 111 S.Ct. 328.

*Cage* does reinforce *Monk*'s condemnation of the instruction in that case. However, what *Cage* found deficient in the Louisiana reasonable doubt instruction, when taken as a whole, were three expressions, 1) "grave uncertainty," 2) "actual substantial doubt," and 3) "moral certainty."[9] However, in this case, the instruction given to the jury did not use "grave uncertainty" or "moral certainty" nor "actual substantial," although "substantial" was used. Therefore, the instruction condemned in *Cage* taken as "whole" is significantly different that the instruction given in this case and *Cage* does not actually support the petitioner's position in this case.

After *Cage,* in *Victor v. Nebraska,* 511 U.S. 1, 114 S.Ct. 1239, 127 L.Ed.2d 583 (1994), the court again addressed a reasonable doubt instruction. The court said the "Constitution neither prohibits trial courts from defining reasonable doubt nor requires them to do so as a matter of course." *Id.* at 1243. No particular "form of words" is required. *Id.* The instructions must be taken as a whole, citing *Holland, supra.* The court said that *Cage* was the "one case" in which the court had found a reasonable doubt instruction violated due process. *Id.* The court referred to a decision in *Estelle v. McGuire,* 502 U.S. 62, 112 S.Ct. 475, 116 L.Ed.2d 385 (1991)(considered battered child syndrome evidence) where the court said, "It must be established not merely that the instruction was undesirable", 502 U.S. at 72, 112 S.Ct. 475, but that it violated a "constitutional right," and that the inquiry is "whether there is a *reasonable likelihood* that the jury has applied the challenged instruction is a way that violates the Constitution." 502 U.S. at 72, 112 S.Ct. 475 (emphasis added). In *Victor v. Nebraska,* the court interpreted *Estelle* as requiring a finding that "there [was] a reasonable likelihood the jury *did* so apply it" in the unconstitutional manner. 114 S.Ct. at 1243. In one case in *Victor* "moral certainty" was used in the instruction *(Sandoval v. California). Id.* at 1244–45. That part of the Court's opinion concerning the use of "moral certainty" need not be considered as it does not pertain to the issue in this case.

The *Victor* case also involved a moral certainty instruction. Also the instruction referred to "strong probabilities" as a basis for a finding of guilt and also instructed that a reasonable doubt "is an *actual and substantial doubt*" arising from the evidence. 114 S.Ct. at 1249. It is the "substantial doubt" portion of the instruction that is proper for consideration in this case, since the instruction given in Tillman's case contained no "moral certainty" or "strong probabilities" language. The Court in *Victor* noted it had held in *Taylor v. Kentucky,* 436 U.S. 478,

---

8. The court cited *Monk v. Zelez, supra,* as one of several cases finding "[s]imilar attempts to define reasonable doubt" as "widely criticized." 498 U.S. at 41 n. \*, 111 S.Ct. 328. This is not an approval of the *Monk* holding.

9. The court in *Cage* did not note that the court had given approval to moral certainty language

in *Miles v. United States, supra.* See also *United States v. Love,* 767 F.2d 1052 (4th Cir.1985), and contrast with *Lanigan v. Maloney,* 853 F.2d 40 (1st Cir.1988), as to the use of moral certainty language. "Moral certainty" language is improper. *United States v. Byrd,* 352 F.2d 570 (2nd Cir.1965).

488, 98 S.Ct. 1930, 56 L.Ed.2d 468 (1978), that instructing in terms of substantial doubt was not reversible error. *Victor,* 114 S.Ct. at 1250. The Court found no constitutional error and said:

> In the instruction given in Victor's case, the context makes clear that "substantial" is used in the sense of existence rather than magnitude of the doubt, so the same concern is not present.
>
> In any event, the instruction provided an alternative definition of reasonable doubt: a doubt that would cause a reasonable person to hesitate to act. This is a formulation we have repeatedly approved, *Holland v. United States,* 348 U.S., at 140, 75 S.Ct., at 137; *cf. Hopt v. Utah,* 120 U.S., at 439–441, 7 S.Ct., at 618–620, and to the extent the word substantial denotes the quantum of doubt necessary for acquittal, the hesitate to act standard gives a common-sense benchmark for just how substantial such a doubt must be. We therefore do not think it reasonably likely that the jury would have interpreted this instruction to indicate that the doubt must be anything other than a reasonable one.

*Victor,* 114 S.Ct. at 1250–51. The court then went on to state:

> The Due Process Clause requires the government to prove a criminal defendant's guilt beyond a reasonable doubt, and trial courts must avoid defining reasonable doubt so as to lead the jury to convict on a lesser showing than due process requires. In these cases, however, we conclude that "taken as a whole, the instructions correctly conveyed the concept of reasonable doubt to the jury." *Holland v. United States,* 348 U.S., at 140, 75 S.Ct., at 137. There is no reasonable likelihood that the jurors who determined petitioner's guilt applied the instructions in a way that violated the Constitution.

*Victor,* 114 S.Ct. at 1251. The convictions were affirmed.

The effect of *Victor* is to undercut the rigid conclusion reached in *Monk v. Zelez, supra.*[10] It is also to support the conclusion that due process was not offended by the instruction given in this case.

In *United States v. Conway,* 73 F.3d 975 (10th Cir.1995), the court considered an instruction where the jury was informed in terms of "real possibility" as the standard for acquittal. The court referred to *Victor v. Nebraska, supra,* and said the reasonable doubt instruction required no "particular form", *Id.* at 980. The instructions were to be "taken as a whole." The court said the trial judge is allowed considerable latitude. The instruction was upheld.

A reasonable doubt instruction was upheld in *United States v. Miller,* 84 F.3d 1244 (10th Cir.1996), where reasonable doubt was defined in terms of evidence "such as a reasonably prudent man would be willing to rely and act upon in the most important of his own affairs." *Id.* at 1252. *See also United States v. Pepe,* 501 F.2d 1142 (10th Cir.1974); *Vargas v. Keane,* 86 F.3d 1273, 1276 (2nd Cir.1996).

Recently, in *Beverly v. Walker,* 118 F.3d 900 (2nd Cir.1997), the court referred to an instruction in which the jury was told reasonable doubt must be "based entirely and absolutely upon some good sound substantial reason." *Id.* at 901. The court was reviewing a New York conviction on habeas corpus. The court said:

> However, we need not resolve this issue since we hold that the reasonable doubt charge, taken as a whole, did not deprive Beverly of his constitutional rights.

It is well settled that due process requires the government to prove each element of a criminal offense beyond a reasonable doubt. *In re Winship,* 397 U.S. 358, 364, 90 S.Ct. 1068, 1072–73, 25 L.Ed.2d 368 (1970). Although the Constitution neither compels nor prohibits the defining of the term "reasonable doubt," any attempt to define it " 'must correctly convey the concept of reasonable doubt to the jury.' " *Victor v. Nebraska,* 511 U.S. 1, 5, 114 S.Ct. 1239, 1243, 127 L.Ed.2d 583 (1994) (quoting *Holland v. United States,* 348 U.S. 121, 140, 75 S.Ct. 127, 137–38, 99 L.Ed. 150 (1954)) (alterations omitted). As recent cases in this Circuit have demon-

---

10. *Cage v. Louisiana, supra,* is apparently restricted to the circumstances of the instruction in that case. See Matt Nichols, Note, *Victor v.*

*Nebraska: The "Reasonable Doubt" Dilemma,* 73 N.C. L.Rev. 1709 (1995).

strated, however, the term is "perhaps one of the least susceptible to verbal formulation." *United States v. Birbal,* 62 F.3d 456, 457 (2d Cir.1995); *see, e.g., Vargas v. Keane,* 86 F.3d 1273, 1280 (2d Cir.), *cert. denied,* —— U.S. ——, 117 S.Ct. 240, 136 L.Ed.2d 169 (1996); *Chalmers v. Mitchell,* 73 F.3d 1262, 1266 (2d Cir.), *cert. denied,* —— U.S. ——, 117 S.Ct. 106, 136 L.Ed.2d 60 (1996). It has been suggested that trial courts either stick to tried and true pattern jury instructions defining reasonable doubt, *Vargas,* 86 F.3d at 1280, or not define the term at all, *see id.* at 1283 (Weinstein, J., concurring) (" 'The phrase "reasonable doubt" is self-explanatory and is its own best definition. Further elaboration "tends to misleading refinements" which weaken and make imprecise the existing phrase.' ") (quoting 1 *Federal Criminal Jury Instructions of the Seventh Circuit* § 2.07, Committee Comments (1980)).

However, whether in the exercise of our supervisory authority we should suggest a rule requiring a bare-bones charge is a question not presently before us, since our review on habeas is limited to determining whether the instant charge was constitutionally infirm. *See Vargas,* 86 F.3d at 1280 ("[W]e are mindful that the challenge to the trial court's instruction arises on habeas review, and our inquiry is whether the instruction is constitutional, not whether it is exemplary."). In making this determination, our task is to decide not simply whether the challenged instructions, standing alone, are erroneous or misleading, but rather whether it is "reasonably likely" that the jury applied the wrong standard. *Victor,* 511 U.S. at 16, 114 S.Ct. at 1248; *Vargas,* 86 F.3d at 1277; *Chalmers,* 73 F.3d at 1267 ("Sometimes, erroneous portions of the jury instructions are offset when considered in context or explained by the trial court in later sections of the instruction."). If we conclude that the jury applied the wrong standard, then the conviction may not stand, because harmless error analysis does not apply to a deficient reasonable doubt charge.

*Beverly,* 118 F.3d at 902–03.

Although critical of the instruction, *Id.* at 904, the court found it was not constitutionally deficient under *Victor.*

"Substantial doubt" instructions were found not to provide a defendant with a basis for complaint in *Flamer v. Delaware,* 68 F.3d 736, 757 (3rd Cir.1995)("We find the challenged portion of the jury instructions in this case to be essentially as that in *Victor* . . . . [W]e believe that *Victor* supports the constitutionality of the challenged instruction in this case and, in any event, clearly shows that it did not result in a fundamental miscarriage of justice."). *Id.* at 757–58. *See also Kornahrens v. Evatt,* 66 F.3d 1350, 1363 (4th Cir.1995)("substantial doubt" instruction did not offend due process); *Harvell v. Nagle,* 58 F.3d 1541 (11th Cir.1995)(equating substantial doubt with reasonable doubt did not violate due process); *Brown v. Cain,* 104 F.3d 744 (5th Cir.1997)("actual substantial doubt" not improper); *Schneider v. Day,* 73 F.3d 610 (5th Cir.1996)(same); *United States v. Oreto* 37 F.3d 739 (1st Cir.1994)(same in principle); *Morley v. Stenberg,* 25 F.3d 687 (8th Cir.1994)(same); *United States v. Tipton,* 90 F.3d 861, 895 (4th Cir.1996)(substantial doubt not improper). *See also United States v. Artero,* 121 F.3d 1256 (9th Cir.1997).

A reasonable doubt instruction does not come in a "ready made package." *United States v. Delpit,* 94 F.3d 1134, 1148 (8th Cir.1996). In this case, the instructions given, when viewed as a whole, were not Constitutionally defective. The instruction advised the jury that defendant was presumed innocent until proven guilty beyond a reasonable doubt. If reasonable doubt existed the defendant was entitled to be acquitted. The jurors were told that the burden of proof was on the State to prove defendant guilty beyond a reasonable doubt. A "reasonable doubt" was referred to as a lack of evidence "and if the jurors could not 'candidly' say they were satisfied of guilt," they had a reasonable doubt. They were told they must have an abiding conviction of defendant's guilt. The "willing to act" rather than the "hesitate to act" language suggested in *United States v. Holland, supra,* does not come up to a constitutional violation. The language of a "real, substantial doubt" contrasts with the advice of "merely possible or imaginary". The contrast and differentiation was observed as important in *Victor* and to be

appropriate in assessing the instructions as a whole.

■ In addition, other references to reasonable doubt in other instructions reinforced the theme of the prosecution's obligation. Indeed some courts have found the failure to define reasonable doubt not to be improper. *United States v. Desimone*, 119 F.3d 217 (2nd Cir.1997)(failure to define reasonable doubt); *Beverly v. Walker*, 118 F.3d 900, 902 (2nd Cir.1997). See Note, *Reasonable Doubt: An Argument Against Definition*, 108 Harv. L.Rev.1957 (1995). A trial court need not give any definition of reasonable doubt. *United States v. Taylor*, 997 F.2d 1551 (D.C.Cir.1993); *United States v. Reynolds*, 64 F.3d 292 (7th Cir.1995)(no requirement to define reasonable doubt). The other references to reasonable doubt, not defined, even if they would be considered as relating to the defined instruction add to the strength of the concept of the special burden of the prosecution.[11]

Therefore, the petitioner's claim that the reasonable doubt instruction given in the guilt phase of this case offended due process must be rejected. There was no likelihood that the jury equated the requirement of reasonable doubt with anything less than that which the Constitution requires or that it was applied in an unconstitutional manner. *Estelle v. McGuire, supra; Victor*, 114 S.Ct. at 1243.

*Penalty Phase*

■ The petitioner challenges the reasonable doubt instruction given in the penalty phase. However, for several reasons, this claim must be rejected.

■ First, unlike the guilt phase, reasonable doubt has never been required as the standard at the penalty phase of a capital or other case. It has never been deemed a fundamental constitutional aspect of a penalty determination or sentencing that proof of relevant facts or standards must be established beyond a reasonable doubt. *McMillan v. Pennsylvania*, 477 U.S. 79, 106 S.Ct. 2411, 91 L.Ed.2d 67 (1986); *United States v. Watts*, 519 U.S. 148, 117 S.Ct. 633, 136

L.Ed.2d 554 (1997); *United States v. Segien*, 114 F.3d 1014, 1017 (10th Cir.1997); *United States v. Garza*, 118 F.3d 278 (5th Cir.1997). At this time there is no federal constitutional obligation for a jury in weighing matters in aggravation or mitigation in a capital case to find the aggravators outweigh the mitigators beyond a reasonable doubt.

In *Tuilaepa v. California*, 512 U.S. 967, 114 S.Ct. 2630, 129 L.Ed.2d 750 (1994), the defendant was convicted of first degree murder and sentenced to death. California law required the sentencing jury to consider the crime and special circumstances. The defendant challenged the California criteria. The court looked at the California process with regard to the death "selection decision" to impose the death penalty on an eligible defendant. *Id.* at 972–73, 114 S.Ct. 2630. The court said, "In providing for individualized sentencing, it must be recognized that the States may adopt capital sentencing processes that rely upon the jury, in its sound judgment, to exercise wide discretion." *Id.* at 974, 114 S.Ct. 2630. California's capital sentencing scheme did not require a weighing to any degree but did require juries to "consider" various factors. Defendants contended that merely requiring a jury to consider an open-ended subject matter was unconstitutional. The court addressed the questions of whether the jury had to apply a particular weight to the factors to be evaluated in the death decision. It concluded there was no such requirement:

> Petitioners also suggest that the § 190.3 sentencing factors are flawed because they do not instruct the sentencer how to weigh any of the facts it finds in deciding upon the ultimate sentence. In this regard, petitioners claim that a single list of factors is unconstitutional because it does not guide the jury in evaluating and weighing the evidence and allows the prosecution (as well as the defense) to make wide-ranging arguments about whether the defendant deserves the death penalty. This argument, too, is foreclosed by our cases. A capital sentencer need not be instructed

---

**11.** Anything in *Monk* to the contrary has been undercut by *Victor v. Nebraska, supra*. It should be noted that Judge Posner in *United States v. Hall*, 854 F.2d 1036, 1044 (7th Cir.1988), sug-

gested "reasonable doubt" was "deeply ingrained in popular culture" and may be the "single legal term that jurors understand best."

how to weigh any particular fact in the capital sentencing decision. In *California v. Ramos*, for example, we upheld an instruction informing the jury that the Governor had the power to commute life sentences and stated that "the fact that the jury is given no specific guidance on how the commutation factor is to figure into its determination presents no constitutional problem." 463 U.S., at 1008–1009, n. 22, 103 S.Ct. 3446. Likewise, in *Proffitt v. Florida*, we upheld the Florida capital sentencing scheme even though "the various factors to be considered by the sentencing authorities [did] not have numerical weights assigned to them." 428 U.S., at 258, 96 S.Ct. 2960. In *Gregg*, moreover, we "approved Georgia's capital sentencing statute even though it clearly did not channel the jury's discretion by enunciating specific standards to guide the jury's consideration of aggravating and mitigating circumstances." *Zant*, 462 U.S., at 875, 103 S.Ct. 2733. We also rejected an objection "to the wide scope of evidence and argument" allowed at sentencing hearings. 428 U.S., at 203–204, 96 S.Ct. 2909. In sum, "discretion to evaluate and weigh the circumstances relevant to the particular defendant and the crime he committed" is not impermissible in the capital sentencing process. *McCleskey v. Kemp*, 481 U.S. 279, 315, n. 37, 107 S.Ct. 1756, 95 L.Ed.2d 262 (1987). "Once the jury finds that the defendant falls within the legislatively defined category of persons eligible for the death penalty, ... the jury then is free to consider a myriad of factors to determine whether death is the appropriate punishment." *Ramos, supra,* at 1008, 103 S.Ct. 3446. Indeed, the sentencer may be given "unbridled discretion in determining whether the death penalty should be imposed after it has found that the defendant is a member of the class made eligible for that penalty." *Zant, supra,* at 875, 103 S.Ct. 2733; *see also Barclay v. Florida,* 463 U.S. 939, 948–951, 103 S.Ct. 3418, 77 L.Ed.2d 1134 (1983) (plurality opinion). In contravention of those cases, petitioners' argument would force the States to adopt a kind of mandatory sentencing scheme re-quiring a jury to sentence a defendant to death if it found, for example, a certain kind or number of facts, or found more statutory aggravating factors than statutory mitigating factors. The States are not required to conduct the capital sentencing process in that fashion. See *Gregg, supra,* 428 U.S., at 199–200, n. 50[, 96 S.Ct. 2909].

*Tuilaepa,* 512 U.S. at 978–80, 114 S.Ct. 2630. See also *Delo v. Lashley,* 507 U.S. 272, 113 S.Ct. 1222, 122 L.Ed.2d 620 (1993)(burden of proof of mitigating circumstances may be put on the defendant in a capital sentencing); *Walton v. Arizona;* 497 U.S. 639, 650, 110 S.Ct. 3047, 111 L.Ed.2d 511 (1990)(state may impose burden on capital defendant to establish mitigating circumstances by a preponderance of the evidence); *Williams v. Calderon,* 52 F.3d 1465, 1482 (9th Cir.1995)("A capital sentencer need not be instructed on how to weigh any particular fact in the capital sentencing decision.").

Some jurisdictions have imposed a standard of weighing aggravating and mitigating factors in a capital case [12] and have required a reasonable doubt standard and Utah is one of them. *State v. Wood,* 648 P.2d 71 (Utah 1982); *State v. Carter,* 888 P.2d 629 (Utah 1995). When the Utah Supreme Court adopted its reasonable doubt standard as to aggravating and mitigating factors in a capital sentencing, it recognized it was deciding the matter based on state law not on a constitutional interpretation. *Wood,* 648 P.2d at 82–83. Consequently, the position that the petitioner asserts that an error on a reasonable doubt instruction entitles him to void his death sentence would be a "new rule" under *Teague v. Lane, supra; Gacy v. Page,* 24 F.3d 887, 889 (7th Cir.1994).

Further, because a reasonable doubt instruction as to aggravators and mitigators in the sentencing phase of a capital case has no history of being a fundamental right, the rule petitioner argues for is not fundamental under the second prong of *Teague.* Therefore, petitioner's challenge to the reasonable doubt instruction given at sentencing is barred by *Teague v. Lane, supra.*

---

**12.** See *Davis v. Executive Director of Dep't of Corrections,* 100 F.3d 750, 767 (10th Cir. Cir. 1996); *Houston v. Dutton,* 50 F.3d 381 (6th Cir. 1995).

Even if *Teague* did not bar petitioner's claim that the reasonable doubt instruction during the sentencing phase was defective, petitioner cannot prevail on his claim. It is apparent from the above discussion in *Tuilaepa,* supra, that petitioner has no federal constitutional right to an instruction on reasonable doubt at the sentencing phase and any claim of error cannot come up to a violation of a federal constitutional right. The error, if any, is only a matter of state law and cannot be considered on federal habeas corpus under 28 U.S.C. § 2254. *Estelle v. McGuire,* 502 U.S. 62, 112 S.Ct. 475, 116 L.Ed.2d 385 (1991); *Pulley v. Harris,* 465 U.S. 37, 104 S.Ct. 871, 79 L.Ed.2d 29 (1984); *Matthews v. Price,* 83 F.3d 328 (10th Cir. 1996); *Scrivner v. Tansy,* 68 F.3d 1234 (10th Cir.1995).

Finally, the instruction on reasonable doubt given in this case during the penalty phase is the same as that which was given in the guilt phase of the case that this court has found not to be constitutionally defective. (R. at 276.) [13] Therefore, there is no basis to claim that the reasonable doubt instruction given in the penalty phase was constitutionally deficient.

### Prosecutor's Argument at Penalty Phase

The petitioner contends that portions of the argument made by the prosecutor during the penalty hearing at petitioner's trial were so inflammatory as to deny a fair trial.

The first contention is that the prosecutor invited the jury to consider the future risk from the defendant killing again. The defense counsel in response argued that if petitioner received a life sentence he would probably never receive parole, but if he was released he would probably be an old man. The prosecutor argued in response to defense counsel's argument that if Tillman were not executed he would be free to commit more acts of violence in fifteen years.

As to this argument, respondent has first asserted the decision of the Utah Supreme Court denying petitioner relief was based on an independent and adequate state ground and that Tillman is procedurally defaulted in this matter. See *Wainwright v. Sykes,* 433 U.S. 72, 97 S.Ct. 2497, 53 L.Ed.2d

594 (1977); *Engle v. Isaac,* 456 U.S. 107, 102 S.Ct. 1558, 71 L.Ed.2d 783 (1982); *Murray v. Carrier,* 477 U.S. 478, 106 S.Ct. 2639, 91 L.Ed.2d 397 (1986); *Smith v. Murray,* 477 U.S. 527, 106 S.Ct. 2661, 91 L.Ed.2d 434 (1986); *McCleskey v. Zant,* 499 U.S. 467, 111 S.Ct. 1454, 113 L.Ed.2d 517 (1991); *Coleman v. Thompson,* 501 U.S. 722, 111 S.Ct. 2546, 115 L.Ed.2d 640 (1991). The respondent's contention is based on the treatment of this issue by the Utah Supreme Court. The Utah Supreme Court addressed petitioner's claim in *State v. Tillman,* (Tillman I), *supra,* and said in Part V of the opinion, concurred in by four justices of the court:

> Defendant next assigns as reversible error the fact that the prosecutor suggested to the jury during the penalty phase that a life sentence, as opposed to the death penalty, would last only fifteen years. After careful review of the record, it is clear that prejudicial error did not occur in the sentencing proceeding. During defense counsel's closing argument, he stated:
>
> > [Elroy Tillman] is 47 years old, ladies and gentlemen, he is not 30, and a life sentence, even in Utah which is relatively easy in the light [sic] sentence area, al I am informed to believe, is probably 15 or 20 years.
> >
> > The Elroy Tillman you see today is not the Elroy Tillman that will be released from prison if he is released from prison and paroled again, which is highly unlikely in the event of his record at the end of 15 or 20 years. The man who is the threat about which [the prosecutor] has addressed to you so thoroughly is a 67–year-old . man, not one of 47. His body won't be in the condition that it is now. He will have spent 15 or 20 years in confinement. He will be broken and old and incapable of causing damage to anyone.
>
> Thus, it was defense counsel who first commented that in Utah, parole is a possibility under a life sentence and that based thereon defendant would probably spend fifteen to twenty years incarcerated under such a sentence.

13. The term reasonable doubt was also referenced in other penalty phase instructions.

In response to the above comments by defense counsel, the prosecutor stated:

I am sure we're all, to some degree or other, scholars of the Bible, the Mosaic law, the law of Christianity and all the rest of the factors [defense counsel] brought out in his closing remarks to you. And if I might for a moment indulge in that, in discussing a little of the Mosaic law yourself, you recall as the chosen, as they were called, were traveling through the wilderness, they were much like Elroy Tillman. They didn't heed the many miraculous instances of being saved, they were rotten and it took them 40 years to purge their souls. Forty years, not fifteen years as a life imprisonment would mean . . . .

. . . .

Can you honestly say to yourselves 15 years hence that a person showing the lack of remorse Mr. Tillman has shown is going to be a better person when he gets out or that he is not going to, as he said in the one statement to Lori Groneman, "Don't you know I will kill you, bitch?"

Defendant contends that the prosecutor's comments to the jury were misleading and had the potential of improperly influencing its decision on the death penalty. While these remarks were arguably improper and prejudicial because the prosecutor misstated the law and made a representation of fact not supported by the evidence, his comments, when placed within the context of his and defense counsel's entire arguments, fall within the ambit of permitted conduct.

Generally speaking, in argument to the jury, counsel for each side has considerable latitude and may discuss fully from their viewpoints the evidence and the inferences and deductions arising therefrom. Defendant has not alleged and there is little evidence to support an argument that defense counsel's remarks (referring to the length of a life sentence) noted above were made in response to comments made by the prosecutor to the jury that its job was "to make a risk assessment of Mr. Tillman in terms of his future life." In fact, defense counsel, in defendant's brief on appeal, admits that his comments opened the door to the prosecutor's remarks and were made in an attempt "to demonstrate [that] society's interests would be adequately served with a life sentence."

Furthermore, a careful review of the record in this case indicates that during closing argument, defense counsel saw fit to comment on the probable length of a life sentence. This prompted the prosecutor's comments urging the jury to make a thorough analysis of the facts and the man and particularly the possibility of future crimes which defendant could commit. Although it may have been unwise and hazardous for defense counsel to make comments concerning the length of a life sentence, he initially indicated to the jury that life sentence meant fifteen years, and in triggering rebuttal by the prosecutor, defense counsel may himself have invited error.

In this regard, we reemphasize this Court's past decisions wherein we stated that "invited error" is procedurally unjustified and viewed with disfavor, especially where ample opportunity has been afforded to avoid such a result. Indeed, it is the rule that if improper statements are made by counsel during a trial, it is the duty of opposing counsel to register a contemporaneous objection thereto so that the court may make a correction by proper instruction and, if the offense is sufficiently prejudicial, declare a mistrial. Instead, defense counsel in this case neither objected to the prosecutor's remarks nor moved on that basis for a mistrial. Fairness requires that if defendant objected to the prosecutor's argument, he, through his attorney, should have made such objection known at the earliest opportunity. A defendant should not be permitted to initiate an argument before a jury and make use of it, then wait until after the prosecutor has responded to it and complain it was improper on appeal. Otherwise, the possibility of invited error will become the general rule.

Inasmuch as defense counsel himself chose to initiate and argue these comments and failed to object to the prosecutor's response to the same, he should be deemed to have invited the error (if there was any) and waived any objection.

Nevertheless, when evaluating the possible prejudice to a defendant's case resulting from a prosecutor's comments, this Court assesses whether, absent the alleged prejudice, there is a reasonable likelihood of a more favorable result for the defendant. In doing so in the instant action, it is sufficient to say, without belaboring the semantic differences between the arguments of the prosecutor and defense counsel, that the prosecutor's rebuttal was in direct reply to the theory advanced by defense counsel in his final argument. We fail to see how the prosecutor's statement (that a sentence of fifteen years was insufficient to render defendant safe for release) was prejudicial given the fact that defense counsel had already stated to the jury the probable length of a life sentence. Nor was it improper for the prosecutor to remark about the risks attendant upon allowing defendant to live. This, too, was within the permissible bounds of closing argument.

Finally, instructions 5 and 12 given to this jury at the guilt stage had already provided the admonition that it was to be governed solely by the evidence introduced in the trial and the law as stated to it by the judge and that it should neither consider nor be influenced by any statements of counsel as to what the evidence was, unless it was stated correctly, nor by any statements of counsel of facts not shown in evidence.

Therefore, in light of the above, the trial court correctly determined that the remarks did not improperly influence the verdict, and from the record there appears to be no abuse of discretion and substantial justice appears to have been done. Accordingly, we hold that defendant's claimed errors are without merit and affirm his conviction on this ground.

*State v. Tillman,* 750 P.2d at 559–61 (footnotes omitted).

The Utah Supreme Court rejected petitioner's claim on four grounds. First, defense counsel did not object to the argument. Second, the matter was invited error. Third,

the argument was within the ambit of permitted argument, and fourth, it was not prejudicial. It should also be mentioned that the Utah Supreme Court did not assess the argument in federal constitutional terms. This would only be of importance on the issue of exhaustion of state remedies, and procedural default if prior failure to raise the issue were advanced in opposition to the petition, but since that has not been raised by respondent it may be disregarded. Procedural default has been raised, but it is based on the failure of petitioner to object.

The failure of counsel to object could be a waiver of any objection [14] if that was necessary under state law to preserve the claim and therefore it would be a proper state procedural bar to petitioner's claim in this court. *Dugger v. Adams,* 489 U.S. 401, 109 S.Ct. 1211, 103 L.Ed.2d 435 (1989)(failure to object may be procedural bar in a capital case); *Hopkinson v. Shillinger,* 888 F.2d 1286, 1290 (10th Cir.1989); *Buxton v. Collins,* 925 F.2d 816 (5th Cir.1991)(claim barred by failure to object). The petitioner has offered no argument of cause or prejudice in response or excuse to the procedural bar. The burden is on the petitioner to make such a showing in order to be relieved from the procedural default. *Sawyer v. Whitley,* 505 U.S. 333, 112 S.Ct. 2514, 120 L.Ed.2d 269 (1992); *Coleman v. Thompson,* 501 U.S. 722, 750, 111 S.Ct. 2546, 115 L.Ed.2d 640 (1991); *Murray v. Carrier,* 477 U.S. 478, 488, 106 S.Ct. 2639, 91 L.Ed.2d 397 (1986); *Hoxsie v. Kerby,* 108 F.3d 1239 (10th Cir.1997). Consequently, the claim of procedural default must be sustained unless there is an applicable exception.

The first argument in opposition to procedural default that might be asserted is that the Utah Supreme Court addressed both the independent state default grounds but also addressed the merits of the claim. This conclusion is predicated on the portions of the Utah court's opinion that said the prosecutor's arguments "fall within the ambit of permitted conduct" and the Utah court's applying its harmless error rule under Utah

---

**14.** The Utah courts, in addition to the position taken in *Tillman I,* have found that failure to object to a prosecutor's argument waives the objection. *State v. Hales,* 652 P.2d 1290 (Utah 1982). *State v. Shickles,* 760 P.2d 291 (Utah 1988); *State v. Cabututan,* 861 P.2d 408 (Utah 1993); *State v. Irwin,* 924 P.2d 5 (Utah App. 1996).

law. 750 P.2d 560, 561 nn. 41–42. However, the ruling "on the merits" was definitely not on the basis of federal law, but was based on state law. This complicates the procedural default analysis. There is a presumption that the court relied on federal law if the circumstance is ambiguous. *Harris v. Reed,* 489 U.S. 255, 263, 109 S.Ct. 1038, 103 L.Ed.2d 308 (1989); *Coleman v. Thompson,* 501 U.S. at 732–35, 111 S.Ct. 2546, 115 L.Ed.2d 640. However, in this case, there is a clear indication that the Utah Supreme Court relied only on state law in addressing the *merits* of the issue. In *Harris v. Reed,* 489 U.S. at 265 n. 12, 109 S.Ct. 1038, 103 L.Ed.2d 308 the court said, "if the state court under state law chooses not to rely on a procedural bar . . . ., then there is no basis for a federal habeas court's refusing to consider the merits of the federal claim." However, because of the nature of this issue, the *Harris* and *Coleman* standards are not directly in point because of the fact that no federal issue was addressed by the Utah court. The presumption that federal law applies arises when it "fairly appears to rest primarily on *federal law,* or to be interwoven with the federal law, and when the adequacy and independence of any possible state law ground is not clear from the face of the opinion." *Coleman,* 501 U.S. at 735, 111 S.Ct. 2546 (emphasis added). This language would seem to assume that if the state court decides the merits of the issue, in order to avoid a procedural default, the court must have decided the merits on the basis of federal law. It does not seem to treat squarely the situation where the state court finds a state procedural default but then goes on to decide the issue on the basis of state law. If as *Harris* and *Coleman* suggest, there is no reason for federal concern for a state procedural bar if the federal merits are addressed, it might be concluded that if the federal merits are not addressed, but only state grounds determined, the state's interest in its procedural bar remains in effect. Other courts have not used language about federal claims but have simply said the procedural bar has no application if the matter at issue has been addressed on the merits. See

*Remeta v. Singletary,* 85 F.3d 513 (11th Cir. 1996); *Bannister v. Armontrout,* 4 F.3d 1434 (8th Cir.1993) (although petitioner failed to raise the federal claim on direct appeal, state courts nonetheless considered the claim on the merits and the claim is not procedurally barred); *Beam v. Paskett,* 3 F.3d 1301 (9th Cir.1993). The Eleventh Circuit has also spoken in terms of when the state court addresses a constitutional question. *Horsley v. Alabama,* 45 F.3d 1486, 1489–90 (11th Cir.1995); *Hardin v. Black,* 845 F.2d 953 (11th Cir.1988) (federal claim); *Cooper v. Wainwright,* 807 F.2d 881, 886 (11th Cir. 1986).

The Eleventh Circuit cases do not seem to be precise and consistent. However in *Harris,* 489 U.S. at 266, 109 S.Ct. 1038, the court noted procedural bar was not appropriate where the state court did not "clearly and expressly" rest its judgment on procedural default. However, here the Utah court did so with specific clarity,[15] although it does not appear exclusive. In *Gutierrez v. Moriarty,* 922 F.2d 1464, 1469 (10th Cir.1991), the court considered on habeas corpus petition a New Mexico conviction and whether a procedural bar was applicable. The court said procedural bar could be applicable where New Mexico allowed an exception for "fundamental error," but that exception for fundamental error did not have to rest on federal grounds under New Mexico law. The court said:

> In sum, a state court in New Mexico may invoke the procedural bar without the necessity of ruling on the federal constitutional claim. As a general rule, therefore, application of New Mexico's procedural bar rule constitutes an independent state ground because it does not require a ruling on the merits of the *federal* claim.

922 F.2d at 1469 (emphasis added). The obvious conclusion is that if the claim itself is not addressed as a federal claim, the state procedural bar is still applicable. In *Shafer v. Stratton,* 906 F.2d 506 (10th Cir.1990), the court said that where the New Mexico court clearly and expressly stated that its objection to a commerce clause argument rested on a

---

**15.** Contrast *Brecheen v. Reynolds,* 41 F.3d 1343 (10th Cir.1994) (state court's procedural bar rul-

ing was unclear).

state procedural rule, that the further analysis of the merits did not preclude an application of procedural default. The Tenth Circuit still follows the rule that consideration of a federal claim on the merits will waive a procedural default. *Parks v. Brown,* 860 F.2d 1545 (10th Cir.1988); *Brasier v. Douglas,* 815 F.2d 64 (10th Cir.1987). However, if the procedural bar is clearly stated by the state court or the federal claim is not addressed but the matter addressed on the merits under *state law,* the procedural bar remains. *Klein v. Neal,* 45 F.3d 1395 (10th Cir.1995). That is the circumstance here since the Utah court clearly relied on Utah law as to claim of error as to the arguments of counsel. It further appears that federal law was not even raised before the Utah court. In *Klein,* 45 F.3d at 1398, the court again applied the "clearly and expressly" standard of the Supreme Court's ruling in *Harris.* The court said:

Application of these principles to this case demonstrates we need not reach the question of whether the *Harris* presumption applies. The decision of the Colorado Court of Appeals does not contain even a scintilla of evidence suggesting the court relied on federal law. There is no reference to any form of federal law, be it constitutional, statutory or decisional, in the opinion, and as such, the predicate to the *Harris* presumption has not been satisfied. The only references to legal authority are to Colorado statutory and decisional law. We therefore find the Colorado Court of Appeals' decision, which was the last reasoned state court decision in this case, rested exclusively on state law, entirely "independent" of federal law. The magistrate judge was thus correct in concluding Mr. Klein's ineffective assistance of counsel claim was subject to a procedural bar, and we will not reach the merits of his claim unless he carries his burden of overriding the procedural bar.

45 F.3d at 1399. See also *Maes v. Thomas,* 46 F.3d 979, 985 (10th Cir.1995).

This application comports with other federal circuits that have said that if the state court addresses both the state substantive merits and a state procedural default in rejecting a petitioner's claim, federal habeas review is still precluded unless the presumption *against* independent state and adequate state grounds is applicable. See *Ashe v. Styles,* 39 F.3d 80, 86–87 (4th Cir.1994); *Buxton v. Collins,* 925 F.2d 816; *Coulter v. Herring,* 60 F.3d 1499, 1505 (11th Cir.1995).

Therefore, petitioner's failure to object at trial to the argument of the prosecutor bars his pursuit of the matter in this court because the Utah Supreme Court based its conclusion on a "clearly and expressly" stated state procedural ground. Although the Utah Supreme Court addressed the merits of the petitioner's claim, it did so on the basis of *state* law and most prominently expressed its position that the claim was procedurally barred. Therefore, this court need not address the merits of petitioner's claim unless other grounds for such consideration exist.

An additional exception to the procedural bar rule requires that the state procedural requirement be consistently, strictly, or regularly applied. In *Ford v. Georgia,* 498 U.S. 411, 424, 111 S.Ct. 850, 112 L.Ed.2d 935 (1991), the court said procedural default must be " 'firmly established and regularly followed' by the time as of which it is to be applied." See also *Dugger v. Adams,* 489 U.S. 401, 109 S.Ct. 1211, 103 L.Ed.2d 435; *Johnson v. Mississippi,* 486 U.S. 578, 587, 108 S.Ct. 1981, 100 L.Ed.2d 575 (1988). "Nonetheless, the rule is not 'adequate' under *Harris* and its predecessor cases because New Mexico does not follow its procedural bar rule strictly or regularly when dealing with defaulted claims of *preindictment* or *pretrial delay." Gutierrez v. Moriarty,* 922 F.2d at 1469–70 (emphasis added). See also *Maes v. Thomas,* 46 F.3d 979; *Klein v. Neal,* 45 F.3d 1395 (10th Cir.1995); *Osborn v. Shillinger,* 861 F.2d 612 (10th Cir.1988). In *Andrews v. Deland,* 943 F.2d 1162, 1190 (10th Cir.1991) the court said as to the consistency requirement:

We first note that an allegedly uneven application of state procedural default rules *in general* does not necessarily establish that the application of a procedural default rule in a particular case is not "adequate." In *Dugger v. Adams,* 489 U.S. 401, 410–12 n. 6, 109 S.Ct. 1211, 1216–18 n. 6, 103 L.Ed.2d 435 (1989), the Supreme Court considered the adequacy of

Florida's procedural default rule by reviewing the Florida courts' prior applications of that rule to the other cases addressing the identical claim presented in *Adams* ....

The test then is whether the Utah courts' actual application of the particular procedural default rule to all "similar" claims has been evenhanded "in the vast majority" of cases.

In this case, petitioner has not presented any indication of uneven application of the procedural default argument in Utah cases, and recent authority from the Utah court, *infra*, would suggest a regular application as to prosecutor argument claims. The burden is on the petitioner to show uneven application of the state rule. *Dugger, supra* ; *Andrews, supra.* In *Stokes v. Anderson,* 123 F.3d 858, 860 (5th Cir.1997), the court said, "The petitioner bears the burden of showing that the state did not strictly or regularly follow a procedural bar around the time [applicable to the default]." See also *Sones v. Hargett,* 61 F.3d 410, 417 (5th Cir.1995) (petitioner failed in his burden of proof to show state court was not consistent as to procedural default). In *Stokes,* the court also noted the petitioner must demonstrate that the state has failed to apply the procedural bar rule to claims identical or similar to those raised in the matter before the court. 123 F.3d at 860. The petitioner has not met his burden in this case. Therefore, the petitioner's contentions as to the parole argument and future risk matters raised during sentencing is procedurally barred because of petitioner's failure to object.

■ The Utah Supreme Court also applied another state ground for failure to find error on the claim as to the prosecutor's argument on the matters of parole and future risk at the penalty phase. The court concluded the claim of error was barred by the doctrine of invited error.

"Inasmuch as defense counsel himself chose to initiate and argue these comments and failed to object to the prosecutor's response to the same, he should be deemed to have invited the error (if there was any) and waived any objection." *Tillman I,* 750 P.2d at 561. The invited error doctrine has been recognized as a legitimate state procedural bar to a federal claim based on a situation where error was the result of the petitioner's own misconduct.[16]

In *Tucker v. Johnson,* 115 F.3d 276, 280–281 (5th Cir.1997), the court considered a claim of procedural default to an instruction argument where the habeas petitioner had requested the instruction. The Texas Court of Criminal Appeals had applied its doctrine of invited error and refused to consider the matter. The Federal Court of Appeals considered the issue in the context of granting a certificate of probable cause (CPC) under 28 U.S.C. § 2253 (1994). The court treated the matter as procedurally barred unless petitioner could show a basis to overcome the procedural bar. Petitioner could not show such a reason and the CPC on that issue was foreclosed.

In *Coleman v. O'Leary,* 845 F.2d 696 (7th Cir.1988), the court held petitioner to be procedurally barred on a claim of a denial of due process because a scientific test was not performed where petitioner had objected to the test. The court held that procedural bar or default applied to an invited error situation:

Notwithstanding this statutory guarantee, firmly embedded in Supreme Court precedent is the doctrine that a federal habeas petitioner who fails to comply with a state procedural rule, such as waiver or *invited error,* at trial, thus barring state appellate court consideration of the merits of a criminal defendant's challenge to a state court conviction, precludes federal habeas review of that claim absent a showing of cause for, and prejudice resulting from, the procedural default. *Murray v. Carrier,* 477 U.S. 478, 106 S.Ct. 2639, 2644, 91 L.Ed.2d 397 (1986); *Reed v. Ross,* 468 U.S. 1, 11, 104 S.Ct. 2901, 2908, 82 L.Ed.2d 1 (1984); *Wainwright v. Sykes,* 433 U.S. 72, 87, 97 S.Ct. 2497, 2506–07, 53 L.Ed.2d 594 (1977). *See also United States v. Frady,* 456 U.S. 152, 167–68, 102 S.Ct. 1584,

16. Research has not disclosed a case where the Tenth Circuit has directly considered the issues of procedural default based on a claim of invited error. However, in *Thomas v. Gunter,* 962 F.2d 1477, 1483–84, n. 9 (10th Cir.1992) the court alluded to the appropriateness of the doctrine.

1594, 71 L.Ed.2d 816 (1982) ("cause and prejudice" standard in § 2255 actions). The Supreme Court has further held that the question whether the state court properly applied its state procedural rule (in this case waiver and invited error) is not, with some narrow exceptions, reviewable by a federal court:

"A judgment of a state court on a question of state law 'conclusively establishe[s]' the meaning of that law. *Bute v. Illinois,* 333 U.S. 640, 668, 68 S.Ct. 763, 778, 92 L.Ed. 986 (1948). '[I]t is for the [state] courts to say under its law what duty or discretion the court may have had .... We are not at liberty to conjecture that the trial court acted under an interpretation of the state law different from that which we might adopt and then set up our own interpretation as a basis for declaring that due process has been denied. We cannot treat a mere error of state law, if one occurred, as a denial of due process; otherwise, every erroneous decision by a state court on state law would come here as a federal constitutional question.' *Gryger v. Burke,* 334 U.S. 728, 731, 68 S.Ct. 1256, 1257, 92 L.Ed. 1683 (1948). 'Whether state statutes shall be construed one way or another is a state question, the final decision of which rests with the courts of the State. The due process clause in the Fourteenth Amendment does not take up the statutes of the several States and make them the test of what it requires; nor does it enable this Court to revise the decisions of the state courts on questions of state law.' *Hebert v. Louisiana,* 272 U.S. 312, 316, 47 S.Ct. 103, 104, 71 L.Ed. 270 (1926). 'We are of course bound by a State's interpretation of its own statute and will not substitute our judgment for that of the State's when it becomes necessary to analyze the evidence for the purpose of determining whether that evidence supports the findings of a state court.' *Garner v. Louisiana,* 368 U.S. 157, 166, 82 S.Ct. 248, 253, 7 L.Ed.2d 207 (1961). '[W]e have no power to revise judgments on questions of state law.' *Henry v. Mississippi,* 379 U.S. 443, 447, 85 S.Ct. 564, 567, 13 L.Ed.2d 408 (1965)."

*Cole v. Young,* 817 F.2d 412, 429–30 (7th Cir.1987) (dissenting opinion). Not surprisingly, case law within this circuit holds that the question of whether the state court properly applied its state procedural rules is a matter of state law, and may not, as a matter of comity and federalism, be reviewed by a federal court in a habeas case. *See United States ex rel, Tonaldi v. Elrod,* 782 F.2d 665, 668 (7th Cir.1986). "A federal court sitting in habeas corpus is required to respect *a state court's finding of waiver* or procedural default under state law. Federal courts do not sit to correct error made by state courts in the interpretation and application of state law." .... Although the [case] dealt with the Illinois waiver rule, we discern no reason to depart from the principle requiring that we accord deference to a state's application of its procedural rules with respect to Illinois' "invited error" doctrine; hence, to the extent that the holding of the Illinois court is premised upon either the doctrines of "waiver" and/or "invited error" under Illinois law, this court is without the "power to revise judgments on questions of state law," and thus we must defer to the state court's ruling that the doctrines were properly applied to the facts of this case.

845 F.2d at 699–700.

In *Francois v. Wainwright,* 741 F.2d 1275 (11th Cir.1984) the court considered the same issue. In the context of the discussion, the court noted defense counsel invited the court to rule against him. *Id.* at 1279. The federal court on habeas corpus treated the invited error doctrine under Florida law as a procedural bar subject to the same standards of analysis as other procedural default claims. *Id.* at 1281–83.

In a non-habeas corpus case, *United States v. Agnew,* 931 F.2d 1397 (10th Cir.1991), the court found invited error to preclude consideration of an issue even on plain error assessment where defendant invited the error by agreeing with the trial court's action and in not raising the constitutional claim that was pressed on appeal. See also *United States v. Burson,* 952 F.2d 1196 (10th Cir.

1991); *United States v. Pino,* 827 F.2d 1429 (10th Cir.1987) (defense counsel's conduct invited the error); *United States v. Cutler,* 948 F.2d 691 (10th Cir.1991) (same); *United States v. Scroger,* 98 F.3d 1256 (10th Cir. 1996). *Accord United States v. Fulford,* 980 F.2d 1110 (7th Cir.1992) (invited error precludes plain error claim). Therefore, because petitioner invited the error he is procedurally barred from raising the issue in this court.

Petitioner has offered no "cause or prejudice" excuse which would allow excuse from the procedural bar, *Sawyer v. Whitley,* 505 U.S. 333, 112 S.Ct. 2514, 120 L.Ed.2d 269 (1992); *Coleman v. Thompson,* 501 U.S. 722, 111 S.Ct. 2546, 115 L.Ed.2d 640 (1991), and therefore is barred. As noted before, the petitioner may not rely on a claim that the Utah Supreme Court addressed the issue because the Utah court only addressed the issue on state law grounds and it made a clear and precise statement that it was relying on the doctrine of invited error. *Klein v. Neal,* 45 F.3d 1395 (10th Cir.1995).

The petitioner has not otherwise carried his burden of showing any deficiency predicated on the application by the Utah courts of the procedural default rule based on invited error. *Dugger, supra; Andrews, supra.*[17]

The petitioner's contention is only that the Utah Supreme Court misapplied its invited error doctrine, relying on the argument in the dissent of Justice Durham of the Utah Supreme Court. However, it is well settled a federal court may not consider a claim of error based on an erroneous application of state procedural law. "The Supreme Court has further held that the question whether the state court properly applied its state procedural rule (in this case waiver and invit-

ed error) is not, with some narrow exceptions, reviewable by a federal court." *Coleman v. O'Leary,* 845 F.2d at 699; *Henry v. Mississippi,* 379 U.S. 443, 447, 85 S.Ct. 564, 13 L.Ed.2d 408 (1965); *Estelle v. McGuire,* 502 U.S. 62, 112 S.Ct. 475, 116 L.Ed.2d 385 (1991); *Pulley v. Harris,* 465 U.S. 37, 104 S.Ct. 871, 79 L.Ed.2d 29 (1984); *Rael v. Sullivan,* 918 F.2d 874 (10th Cir.1990). Therefore this court must accept the decision of the Utah Supreme Court that invited error occurred.

Even so, the court finds that the majority of the Utah Supreme Court was correct. The claim of error that petitioner makes is only as to the reference to parole and time before parole release. The future dangerousness argument has not been raised as a denial of due process as such. The prosecutor's original statement was to consider the petitioner as a future risk. Nothing was said about parole. The risk involved could be to correctional staff and other prisoners as well as the public.[18] Even the petitioner conceded the issue of parole was first introduced by defense counsel. Then the prosecutor responded. The error, if any, was clearly invited by the petitioner's counsel.

The respondent has also argued that the petitioner's claims on the prosecutor's argument are barred by *Teague v. Lane,* 489 U.S. 288, 109 S.Ct. 1060, 103 L.Ed.2d 334 (1989). However, petitioner contends that the prosecutor's argument denied due process relying on *Donnelly v. DeChristoforo,* 416 U.S. 637, 642–43, 94 S.Ct. 1868, 40 L.Ed.2d 431 (1974) and *Darden v. Wainwright,* 477 U.S. 168, 106 S.Ct. 2464, 91 L.Ed.2d 144 (1986). In *Berger v. United States,* 295 U.S. 78, 55 S.Ct. 629, 79 L.Ed. 1314 (1935), the Supreme Court addressed

---

17. The Utah Supreme Court applied the invited error doctrine in *State v. Johnson,* 774 P.2d 1141 (Utah 1989) in the context of a prosecutor's closing argument. The Utah courts have consistently applied the doctrine in other contexts. *State v. Brown,* 948 P.2d 337 (Utah 1997); *State v. Anderson,* 929 P.2d 1107, 1109 (Utah 1996); *State v. Gordon,* 886 P.2d 112 (Utah App.1994); *State v. Stevenson,* 884 P.2d 1287, 1292 (Utah App.1994); *State v. Taylor,* 818 P.2d 561 (Utah App.1991); *State v. Parsons,* 781 P.2d 1275, 1285 (Utah 1989); *State v. Smith,* 776 P.2d 929, 932 (Utah App.1989); *State v. Dunn,* 850 P.2d 1201, 1220 (Utah 1993); *State v. Bullock,* 791 P.2d 155 (Utah 1989).

18. This is part of the failing of Justice Durham's dissent in which she equates future risk with release. Many times courts overlook dangers in the community of confinement. Guards and correctional staff, as well as other inmates, are human beings entitled to protection and a future in life. As to the violence in American prisons, see *The Correction Yearbook 1997,* 26–28, 36. Future violence in a prison context is a legitimate point of focus for the death penalty. See generally, but anecdotally, Kauffman, *Prison Officers and Their World,* 10–18 (1988).

the prosecutor's role and indicated the prosecutor was obligated to use fair means to convict and punish. In *Donnelly*, the court did not grant relief but indicated that egregious misconduct by a prosecutor could be a basis for relief. 416 U.S. at 647–648, 94 S.Ct. 1868. The same is true of the ruling in *Darden v. Wainwright*, 477 U.S. 168, 106 S.Ct. 2464, 91 L.Ed.2d 144 (1986). Therefore, precedent supports the conclusion that as of 1988, egregious prosecutor misconduct during argument could be a basis for a claim of a denial of due process and for habeas corpus relief. See *Potts v. Kemp*, 814 F.2d 1512 (11th Cir.1987) (prosecutor remarks during sentencing phase justified habeas corpus); *Tucker v. Kemp*, 762 F.2d 1480 (11th Cir.1985) (argument improper but not prejudicial); *Rose v. Duckworth*, 769 F.2d 402 (7th Cir.1985); *Wheat v. Thigpen*, 793 F.2d 621 (5th Cir.1986) (habeas corpus relief properly granted based on death penalty argument). See also Wayne R. LaFave and Jerold H. Israel, *Criminal Procedure* § 23.5 (1984). Therefore, respondent cannot claim a *Teague* bar because the acceptance of petitioner's claim would not be a "new rule." *Graham v. Collins*, 506 U.S. 461, 467, 113 S.Ct. 892, 122 L.Ed.2d 260 (1993); *O'Dell v. Netherland*, 521 U.S. 151, 117 S.Ct. 1969, 138 L.Ed.2d 351 (1997).

The petitioner's claim of denial of due process because of the prosecutor's argument as to risk and parole during the penalty stage is procedurally barred. However, because the magistrate judge cannot make a final decision in the case, it is appropriate to consider the substance of petitioner's argument for review by the District Judge.

■ It was proper for the prosecutor to argue the defendant's future dangerousness and the risk that any dangerousness might pose in the event a death sentence was not the punishment. *Jurek v. Texas*, 428 U.S. 262, 275, 96 S.Ct. 2950, 49 L.Ed.2d 929 (1976); *Barefoot v. Estelle*, 463 U.S. 880, 896,

103 S.Ct. 3383, 77 L.Ed.2d 1090 (1983); *Simmons v. South Carolina*, 512 U.S. 154, 114 S.Ct. 2187, 129 L.Ed.2d 133 (1994); *Johnson v. Texas*, 509 U.S. 350, 113 S.Ct. 2658, 125 L.Ed.2d 290 (1993); *Castro v. Oklahoma*, 71 F.3d 1502 (10th Cir.1995); *Coleman v. Brown*, 802 F.2d 1227, 1239 (10th Cir.1986). Matters of parole are also relevant to the jury's consideration of the imposition of the death penalty. *Simmons v. South Carolina*, 512 U.S. at 168, 114 S.Ct. 2187 ("Concomitantly, nothing in the Constitution prohibits the prosecution from arguing any truthful information relating to parole or other forms of early release." Therefore, the only feature of the prosecutor's argument in this case that could be considered beyond the range of legitimate argument would be the expression as to when the petitioner might be released on parole if the death penalty was not imposed. There is no evidence in the record as to when that could occur under Utah law. However, Utah law at the time of trial, in 1983, provided for release on parole in the judgment of the Utah Board of Pardons.)[19] That constitutional body (Utah Const. Rpt. VII § 12; 77–27–9(1); Laws of Utah 1980 Ch. 15 § 2; 1981 Ch. 1 § 6.) could release Tillman at any time. See *Cardisco v. Davis*, 91 Utah 323, 64 P.2d 216 (1937);[20] *State v. Nemier*, 106 Utah 307, 148 P.2d 327, 331 (Utah 1944); *State v. Roberts*, 91 Utah 117, 63 P.2d 584, 585 (Utah 1937). See *Padilla v. Utah Bd. of Pardons and Parole*, 947 P.2d 664, 669, n. 4, 327 Utah Adv. Rep. 54 (Utah 1997); ; *Labrum v. Utah State Bd. of Pardons*, 870 P.2d 902, 906 (Utah 1993) ("In 1899, the legislature adopted a new statute, giving the parole power to the Board of Pardons. Act of March 9, 1899, ch. 39, 1899 Utah Laws 56 .... Utah's parole statute has changed little since 1899 .... Section 77–27–9 of the Utah Code grants the Board (1) authority to parole *any* offender committed to a state correctional facility, (2) absolute discretion in parole decisions, ...." (emphasis added));[21] *Neel v. Holden*, 849 P.2d 601,

---

**19.** Now the Utah Board of Pardons and Parole.

**20.** The Utah Board of Pardons may have had guidelines at the time for their own internal use, but there was no obligation to follow them. *Malek v. Haun*, 26 F.3d 1013, 1015–16 (1994)(no limitation on discretion of Utah parole authority).

**21.** Utah law has been amended to provide for life without possibility of parole for capital murder. See Utah Code Ann. § 77–27–9(2)(d); *Andrews v. Utah Bd. of Pardons*, 836 P.2d 790 (Utah 1992).

602 (Utah App.1993) (Utah's parole statute contains no limitation that would give rise to a liberty interest in parole); *Hatch v. De-Land,* 790 P.2d 49 (Utah App.1990).

Defense counsel was the first to suggest a parole period and said it was "highly unlikely in the event of [Tillman's] record at the end of 15 or 20 years." 750 P.2d at 559. He then went on to say that if he was paroled in 15 to 20 years, petitioner would not be the same man that was before the court. *Id.* at 559–60. The prosecutor made reference to the Mosaic law that defense counsel had referenced and said "Forty years, not fifteen years as a life imprisonment would mean .... " *Id.* at 560. The prosecutor then went on to ask if the jury could say petitioner would be a "better person" 15 years hence. *Id.* There was no evidence of how long the average stay under the Utah Department of Corrections is for a convicted first degree murderer. The 15 or 20 years asserted to by defense counsel or the 15 years stated by the prosecutor was speculation. But it was not completely incorrect, since under Utah law it could have been more or could have been less. The discretion was in the Board of Pardons. The weakness in the prosecutor's argument is that there was no evidence of record to support the fifteen year statement. The same is true as to defense counsel's statement.

In order for defendant to obtain any relief on this point he must show a violation of a Constitutional standard and not merely the kind of error that would allow relief on direct review. *Fero v. Kerby,* 39 F.3d 1462 (10th Cir.1994) (prosecutor's erroneous argument considered on habeas corpus must involve a due process violation not the supervisory power of the court); *Brecheen v. Reynolds,* 41 F.3d 1343 (10th Cir.1994).

In *Darden v. Wainwright,* 477 U.S. at 181, 106 S.Ct. 2464 quoting from *Donnelly v. DeChristoforo,* 416 U.S. at 643, 94 S.Ct. 1868, the court said the "relevant question is whether the prosecutors' comments 'so infected the trial with unfairness as to make the resulting conviction a denial of due process.' " The remarks must be reviewed in the context of the entire proceeding, in this case the sentencing proceeding. *United States v. Young,* 470 U.S. 1, 11–12, 105 S.Ct. 1038, 84 L.Ed.2d 1 (1985). See *United States v. Soto,* 988 F.2d 1548, 1559–60 (10th Cir.1993). In *Donnelly,* the court held a speculative statement by the prosecutor as to what the defense hoped would occur not to be a due process violation. 416 U.S. at 641–642, 94 S.Ct. 1868. In *Darden v. Wainwright,* the charge was that the prosecutor made offensive and prejudicial argument with referring to the defendant as an "animal." The prosecutor said the death penalty was the only way to avoid a future similar act. 477 U.S. at 180, 106 S.Ct. 2464. The court said the argument had to be taken in the context of what defense counsel had said which preceded the prosecutor's argument which was at best excess rhetoric. *Id.* at 178–79, 106 S.Ct. 2464. The court said the standard for relief was one of due process and the comments did not deprive the defendant of a fair trial. *Id.* at 181, 106 S.Ct. 2464.

In *Fero v. Kerby,* supra, comments of the prosecutor in asking for justice to a homicide victim's family that were found improper under the law at that time were held not to infringe due process. In *Bowser v. Boggs,* 20 F.3d 1060 (10th Cir.1994), the court held the prosecution's personal comments of "believe" and "think" did not offend due process. In *Brecheen v. Reynolds,* 41 F.3d 1343 (10th Cir.1994), also a death penalty case, the court said where no specific constitutional violation is claimed, the analysis must be one "under the fundamental fairness standard." 41 F.3d at 1355. The court said it is not enough that the prosecutor's remarks were " 'undesirable' " or " 'even universally condemned.' " *Id.* at 1356 (quoting *Darden,* 477 U.S. at 181, 106 S.Ct. 2464). The allegations of argument misconduct of the prosecutor were multiple in *Brecheen,* but the court found no violation of due process. 41 F.3d at 1356. See also *Williams v. Chrans,* 945 F.2d 926 (7th Cir. 1991); *Nichols v. Scott,* 69 F.3d 1255 (5th Cir.1995); *Culkin v. Purkett,* 45 F.3d 1229 (8th Cir.1995) (extreme but no violation of due process); *Turner v. Marshall,* 63 F.3d 807 (9th Cir.1995) (no due process violation). The conduct in this case is not comparable to that in *Mahorney v. Wallman,* 917 F.2d 469 (10th Cir.1990), where the prosecutor told the jury, in essence, to disregard the presumption of innocence.

The Tenth Circuit has, in other situations of similar measure, found no basis for relief. *Talamante v. Romero,* 620 F.2d. 784 (10th Cir.1980); *Soap v. Carter,* 632 F.2d 872 (10th Cir.1980) (improper racial references); *Runnels v. Hess,* 653 F.2d 1359 (10th Cir.1981); *Coleman v. Brown,* 802 F.2d 1227 (10th Cir. 1986); *Coleman v. Saffle,* 869 F.2d 1377 (10th Cir.1989) (relief denied); *Hoxsie v. Kerby,* 108 F.3d 1239 (10th Cir.1997).

Recently, in *Cargill v. Turpin,* 120 F.3d 1366 (11th Cir.1997), the court provided an instructive opinion on this issue. The habeas petitioner had been convicted of two murders and sentenced to death. He claimed improper prosecutor argument during both the guilt and penalty phases of the case. *Id.* at 1376. The opening statement referred to facts not supported by the evidence. During closing argument at the penalty phase the prosecutor addressed parole. The prosecutor said as to the defendant:

> His salvation and what Almighty God does to him for what he's done does not concern us, for society has a right to demand that he pay a price for the events that he has done. Is the appropriate price life imprisonment, and 10 years or 15 years or ever how long it is, seven years or five years, when a bunch of little boys are sitting around the Christmas table thinking, "Is that all that jury thought of my mama and daddy because that man is sitting off somewhere eating Christmas turkey dinner?"

*Id.* at 1381.

The petitioner argued that the jury was told he could not count on a life sentence and that it could be as little as five years. In fact, petitioner contended that under Georgia's law, thirty years was required for parole eligibility. *Id.* The court said in a conclusion based on a similar situation involving open endedness like the Utah law in this case:

> We reject Cargill's interpretation of these remarks for several reasons. First, the prosecutor's remarks were not an inaccurate comment on the applicable state law. As the state habeas corpus court found, Cargill "had been charged with two counts of murder and two counts of armed robbery. The minimum sentence allowed by law for armed robbery in Georgia is five

years imprisonment. O.C.G.A. Sec. 16–8–41(b)." Therefore, as the court further determined, "a life sentence for murder *and* from 15 to five years in prison would not be an inaccurate statement of the law." That is, of course, exactly what the prosecutor said—"Is the appropriate price life imprisonment, *and* 10 years or 15 years or ever how long it is, seven years or five years ....?" We are not at liberty to challenge this state court determination of state law.

*Id.* (footnotes omitted). The court also thought the prosecutor was really arguing proportionately. *Id.* at 1381–1382. The court noted no objection was made and considered the remarks against the total context of the evidence and concluded there was no basis for habeas relief. The prosecutor had also made an argument which defense counsel claimed told the jury that the prosecutor had special expertise in asking for the death penalty. *Id.* at 1383. Other improper argument was also found. Comments were also made on future dangerousness. *Id.* at 1385.

The court put forth the legal standard against which it would assess the right to habeas relief:

> Improper prosecutorial arguments will not compel habeas corpus relief, however, unless they rendered the defendant's sentencing proceeding "fundamentally unfair." *Brooks v. Kemp,* 762 F.2d 1383, 1400 (1985) (*en banc*), *vacated on other grounds,* 478 U.S. 1016, 106 S.Ct. 3325, 92 L.Ed.2d 732 (1986), *reinstated,* 809 F.2d 700 (11th Cir.) (*en banc*), *cert. denied,* 483 U.S. 1010, 107 S.Ct. 3240, 97 L.Ed.2d 744 (1987). In making this inquiry, we must determine whether the improper comments "were so egregious as to create a reasonable probability that the outcome was changed because of them." *Brooks,* 762 F.2d at 1403. A "reasonable probability" is one sufficient to undermine confidence in the outcome. *Wilson v. Kemp,* 777 F.2d 621, 623 (11th Cir.1985), *cert. denied,* 476 U.S. 1153, 106 S.Ct. 2258, 90 L.Ed.2d 703 (1986). "If a reviewing court is confident that, absent the improper remarks, the jury's decision would have been no different, the proceeding cannot be said

to have been fundamentally unfair." *Tucker v. Kemp,* 802 F.2d 1293, 1296 (11th Cir.1986) (*en banc*), *cert. denied,* 480 U.S. 911, 107 S.Ct. 1359, 94 L.Ed.2d 529 (1987).

In applying this standard, we remain aware of the primary importance of examining the entire context of the trial proceeding. *Brooks,* 762 F.2d at 1413. Thus, a reviewing court should not assess prosecutorial comments in isolation, shorn of their context. *See Johnson v. Wainwright,* 778 F.2d 623, 631 (11th Cir.1985) (evaluating challenged comments in light of "the rest of the prosecutor's speech"), *cert. denied,* 484 U.S. 872, 108 S.Ct. 201, 98 L.Ed.2d 152 (1987). "In this regard, isolated or ambiguous or unintentional remarks must be viewed with lenity." *Brooks,* 762 F.2d at 1400. We also consider the lack of an objection in examining the impact of a prosecutor's closing argument, as the omission "may demonstrate defense counsel's belief that the live argument, despite its appearance in a cold record, was not overly damaging." *Brooks,* 762 F.2d at 1397 n. 19; *see also Davis v. Zant,* 36 F.3d 1538, 1551 n. 20 (11th Cir.1994) ("The failure to object can sometimes serve to clarify an ambiguous record as to whether a particular argument was in fact misleading or prejudicial."). This court also evaluates whether "defense counsel's closing argument .... ameliorate[d] the damage done to the defense by the prosecutor's [statements]." *Davis,* 36 F.3d at 1551; *see also Brooks,* 762 F.2d at 1397–98. Moreover, we consider the trial court's instructions to the jury, as they "may remedy effects of improper comments." *Brooks,* 762 F.2d at 1400. And, of course, we consider the evidence of guilt and the weight of aggravating and mitigating factors. *See Brooks,* 762 F.2d at 1415–16. "A court need not determine whether specific arguments are proper or improper if, taken as a whole, they would not require relief." *Brooks,* 762 F.2d at 1403 n. 31. With this standard of review in mind, we address Cargill's specific allegations.

120 F.3d p. 1379.

The court concluded that the comments had not rendered the trial unfair. *Id.* at 1385. The opinion is not as clear as would be liked as to whether the court was making an evaluation on whether due process was violated or that even if due process was violated, there was still no basis for a claim of error entitling petitioner to relief. However, the case is instructive in its conclusion that the parole references, although possibly confusing, were not a basis for habeas relief. Further, as in this case, no objection was made by defense counsel, thereby suggesting defense counsel did not see an egregious error in the context of the argument. Finally, the gravity of the alleged misconduct of the prosecutor was substantially more serious in *Cargill,* than in this case.

Therefore, it must be concluded the prosecutor's argument as to parole did not arise to a breach of fundamental fairness sufficient to establish a violation of due process.

 Finally, the standard for determining if the claim of error, even if due process was shown, would entitle petitioner to relief is that stated in *Brecht v. Abrahamson,* 507 U.S. 619, 113 S.Ct. 1710, 123 L.Ed.2d 353 (1993). Any error with regard to the prosecutor's argument at the penalty phase is "trial error" not a structural deficiency. The standard is borrowed from *Kotteakos v. United States,* 328 U.S. 750, 776, 66 S.Ct. 1239, 90 L.Ed. 1557 (1946). Did any error have a "substantial and injurious effect or influence in determining the judge's verdict." *Brecht,* 507 U.S. at 623, 113 S.Ct. 1710 (quoting *Kotteakos,* 328 U.S. at 776, 66 S.Ct. 1239). In this case, given the nature of the claimed error and the strength of the evidence as well as the absence of mitigation and petitioner's criminal record (Tr. at 1935, 1939), any error that could be claimed did not have any effect on the sentence. *Hoxsie v. Kerby,* 108 F.3d 1239, 1244–1245 (10th Cir.1997) (prosecutor's remarks did not improperly tip the scales of the jury's determination). The arguments of counsel presented a number of aspects on the imposition of the death penalty. (See (Tr. p. at 1934–1978). The challenged argument was only a small and insignificant portion of the argument and evidence. It invoked no objection from counsel. *Hoxsie, supra.* This court has no grave doubt as to any effect the claimed error may have had on the jury's verdict. *O'Neal v. McAninch,* 513 U.S. 432,

115 S.Ct. 992, 995, 130 L.Ed.2d 947 (1995); *Tuttle v. Utah,* 57 F.3d 879, 884 (10th Cir. 1995). See also *California v. Roy,* 519 U.S. 2, 117 S.Ct. 337, 136 L.Ed.2d 266 (1996).

In *Tillman v. Cook,* (*Tillman* II) *supra,* petitioner raised another issue as to the prosecutor's argument during the sentencing phase of the case. The Utah Supreme Court in *Tillman* II 855 P.2d at 214, did not apply a procedural default concept, as such to this issue, *Harris v. Reed, supra.* It merely stated the issue had been previously adjudicated. As a consequence, respondent has not raised a procedural default claim but has addressed this issue on the merits (File Entry # 9, at 18–19).

■ The prosecutor made the alleged improper statement during first argument at the sentencing phase. The defense argument was significantly longer than the prosecution's argument. In the prosecutor's opening remarks, he addressed the issue of deterrence and said:

But more importantly, we are talking about deterrence of one man, one man alone, and that's Elroy Tillman who we are going to say, "If we execute this man we no longer run the risk associated with what he has done in the past and more specifically what he did to Mark Allen Schoenfeld when he bludgeoned him to death with an ax and then to further disfigure him, set fire to him while he was still breathing."

(Tr. at 1942).

Petitioner asserts the reference to "disfigurement" was improper. First, he suggests the argument went beyond the evidence. Second, it is suggested it introduced an improper aggravating circumstance. The contentions are without merit. The evidence at trial ((Tr. p. at 515–16, 562) in fact, shows the victim's body was burned.[22] The toes of both feet were charred and the legs burned (Tr. at 555–62). There were heat blisters on the legs, chest, and arm. The bludgeoning injury existed to the head and could also have caused death aside from the inhalation factor.[23] The evidence was clear Tillman burned the victim's clothing and the victim

while he was probably still alive. Tillman burned the victim by lighting his bed on fire with a cigarette lighter. This was after the victim had been bludgeoned into unconsciousness (Tr. at 977, 520–22). When Tillman burned the victim's bed, the victim's disfigurement could easily have occurred. Tillman left the room and the burning bed. It could be reasonably inferred Tillman intended some form of disfigurement to the victim's body. Indeed, it did occur, the body was burned. It may be inferred that petitioner intended the natural consequences of his act. It was within the range of advocacy to argue that petitioner intended disfigurement. Petitioner intended to cover up the bludgeoning by burning the victim. Therefore, the argument was not so improper as to raise any federal constitutional issue. See cases *supra* p. 1278. It may be inferred Tillman intended the possible destruction of the body.

■ Further, the conduct was directly within the felony aggravators of burglary and arson and within Utah Code Ann. § 76–5–202(1)(d) (1978). Therefore, the argument that petitioner makes, that the remarks were outside of the record, is without merit. The argument was not outside of a charged aggravator. It was within the aggravated murder provision of § 76–5–202(1)(d). Also, Utah law allows consideration of aggravating circumstances, at the penalty phase, beyond those charged in Utah Code Ann. § 76–5–202. *State v. Gardner,* 789 P.2d 273 (Utah 1989); *State v. James,* 819 P.2d 781 (Utah 1991); *Parsons v. Barnes,* 871 P.2d 516 (Utah 1994). In *State v. Menzies,* 889 P.2d 393, 404–05 (Utah 1994), the court said even if "heinousness" was not a consideration under § 76–5–202(q) in the case, that the brutality and other aspects of the crime could still be considered as aggravating factors at sentencing. See also *State v. Young,* 853 P.2d 327 (Utah 1993). Therefore, petitioner's first claim on this matter is without merit. There is simply no basis in error to complain of a due process violation.

**22.** At oral argument, counsel for petitioner asserted the body was not burned, (Tr. at 29, 11/9/95), but it was in fact burned (Tr. at 515–16).

**23.** There was a toxic level of carbon monoxide in the victim's blood (Tr. at 521).

The only rational consideration that petitioner can assert is that that comment was somehow "prejudicial." This court has previously noted the standard is not one of appellate prejudice but of a due process violation. *Fero v. Kerby, supra; Brecheen v. Reynolds, supra.* Applying the standard of *Darden v. Wainwright, supra,* and *Donnelly v. DeChristoforo, supra,* the remark does not come up to a due process violation. The remark was a small reference, somewhat casually made, not objected to, and insignificant in the context of the total argument. The reference was arguably based on the evidence. There was no violation of fundamental fairness in the remark. See *Hoxsie v. Kerby,* 108 F.3d at 1244.

In addition, it must be concluded that the remark, even if there was no burning of the victim's body, was in any event not so substantial or injurious as to affect the jury's verdict. *Brecht v. Abrahamson, supra.* The circumstance raises no grave doubt of substantial or injurious harm. *O'Neal v. McAninch, supra.* Therefore, the error, if any occurred, was harmless.

### Sufficiency of the Evidence To Justify Instructions On Killing During Arson Or Aggravated Arson

The petitioner notes that the information in this case charged defendant with murder in the first degree in violation of Utah Code Ann. § 76–5–202 by intentionally or knowingly causing the death of Mark Allen Schoenfeld, while petitioner was engaged in the commission of burglary or aggravated burglary, arson or aggravated arson (R. at 17). The petitioner states that it was necessary to find defendant guilty of both forms of "felony" murder and since a general verdict was returned, that if the evidence as to any of the crimes is insufficient, the finding of guilt must be set aside. Petitioner relies on *Stromberg v. California,* 283 U.S. 359, 51 S.Ct. 532, 75 L.Ed. 1117 (1931), *Zant v. Stephens,* 462 U.S. 862, 103 S.Ct. 2733, 77 L.Ed.2d 235 (1983) and *Cramer v. United States,* 325 U.S. 1, 36 n. 45, 65 S.Ct. 918, 89 L.Ed. 1441 (1945).

Petitioner contends the evidence was insufficient for conviction on the offenses of arson or aggravated arson. The respondent contends that the evidence shows that aggravated arson was adequately supported (File Entry # 9 at 25). The state also submits that the evidence was sufficient to show attempted aggravated arson. The respondent also contends that misdemeanor arson [24] would be sufficient under § 76–5–202(1)(d) and also, that the petitioner's contention is barred under *Teague v. Lane, supra.*

In approaching this issue it is important to keep in mind that under Utah law, the so called aggravation factors of § 76–5–202 are not just matters for consideration for sentencing and capital punishment purposes. They are elements of the crime of first degree murder (now aggravated murder) and the circumstances of the aggravating crimes in this case must be proved beyond a reasonable doubt. See Utah Code Ann. § 76–5–202. *State v. Brown, supra,* 948 P.2d 337, 343 (Utah 1997); *State v. Thurman,* 911 P.2d 371, 373 (Utah 1996); *State v. Alvarez,* 872 P.2d 450 (1994); *Parsons v. Barnes,* 871 P.2d 516 (Utah 1994); *State v. Tillman, (Tillman I), supra.*

The offense was committed in May, 1982. At that time Utah Code Ann. § 76–5–202(1)(d) provided that it was first degree murder if the killing was intentionally or knowingly done under circumstances where:

(d) The homicide was committed while the actor was engaged in the commission of, or an attempt to commit, or flight after committing or attempting to commit, aggravated robbery, robbery, rape, forcible sodomy, or aggravated sexual assault, aggravated arson, arson, aggravated burglary, burglary, aggravated kidnaping or kidnaping.

It should be noted that the statute does not refer to "felonies" but is couched in terms of the description of the crime, *i.e.,* attempt, arson, aggravated arson, burglary, aggravated burglary, etc. The petitioner makes a claim that the level of offense must be a felony. However, there is no statement to that effect in the statute as far as § 76–5–202(1)(d) describes a criminal aggravator, arson and aggravated arson, etc.

---

24. Utah Code Ann. § 76–5–102 (1978).

At the time of the offense in this case, arson was defined in Utah Code Ann. § 76–6–102:

> A person is guilty of arson, if under circumstances not amounting to aggravated arson, by means of fire or explosive he unlawfully and intentionally damages .... (b) the property of another.

Aggravated arson was defined by Utah Code Ann. § 76–6–103:

> A person is guilty of aggravated arson by means of fire or explosion if he intentionally and unlawfully damages (a) a habitable structure or (b) any structure or vehicle when any person not a participant is in the structure or vehicle.

The trial judge instructed the jury during the guilt phase on these offenses in the terms of the statutes (R. at 198, Instruction # 18).[25] The judge also instructed the jury that if the death of the victim occurred during an attempt to commit those offenses, guilt of first degree murder could be found under § 76–5–202(1)(d). (R. at 194, Instruction # 15).

■ State law determines the parameters of the offense and its elements and a federal court may not reinterpret state law. *Mullaney v. Wilbur*, 421 U.S. 684, 691, 95 S.Ct. 1881, 44 L.Ed.2d 508 (1975); *Estelle v. McGuire*, 502 U.S. at 67–68, 112 S.Ct. 475; *Richmond v. Embry*, 122 F.3d 866, 870 (10th Cir.1997); *Roybal v. Shanks*, 120 F.3d 271 (Table), 1997 WL 436238 (10th Cir.1997); *Manlove v. Tansy*, 981 F.2d 473, 478 (10th Cir.1992); *Rael v. Sullivan*, 918 F.2d 874, 877 (10th Cir.1990). The petitioner contends, however, if the evidence is insufficient under the Utah arson or aggravated arson law to support a conviction, then under *Stromberg v. California, supra,* there is no basis on which it can be determined whether the jury found the petitioner guilty under the burglary or the arson provisions and the conviction must be set aside.

The Utah Supreme Court responded to the argument saying that the evidence of aggravated burglary and burglary was sufficient. *Tillman II*, 855 P.2d at 219. As to the arson argument, the court also found the evidence sufficient and in discussing that matter observed:

Tillman also argues that because arson can be a misdemeanor, the Utah legislature could not have intended it to elevate an intentional killing to a capital offense. We find no merit to this contention. Clearly, the legislature did intend the commission of or attempt to commit arson as an aggravating circumstance. *See* Utah Code Ann. § 76–5–202(1)(d).

*Id.* at 219 n. 33. Finally, the court found the evidence sufficient to support a finding of attempted aggravated arson and that petitioner had intentionally killed. *Id.* at 219–20.

■ However, the issue need not be addressed since petitioner has misperceived the holding in *Stromberg v. California, supra.* It is sufficient that the evidence is adequate under *Jackson v. Virginia*, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979) as to any of the aggravating elements of the offense of first degree murder. The sufficiency of the evidence is not challenged in this petition as to the elements of burglary, and aggravated burglary, nor could it be challenged in good faith. The evidence being sufficient as to these factors, the aggravating element for a conviction under Utah Code Ann. § 76–5–202(1)(d) is sufficient. Further, given the interpretation by the Utah Supreme Court of arson in the statute the evidence is overwhelming as to that element.

In *Stromberg, supra,* the defendant was charged with displaying a red flag under three alternative sections of the California Penal Code. The jury was told that a conviction could be based on any one of the three sections and a general verdict of guilty was returned. The Supreme Court held that the first section of the statute was unconstitutional as violating the First Amendment, but that the second and third sections were constitutional. Thus, the invalidity that the court found was based on a determination of *law* not fact. The jury had been instructed in the disjunctive under the statute. The State argued to uphold the conviction on the two constitutional sections. The court responded:

> We are unable to agree with this disposition of the case. The verdict against the

---

**25.** The judge also instructed on burglary and aggravated burglary, but petitioner does not con-

test the sufficiency of the evidence as to those offenses.

appellant was a general one. It did not specify the ground upon which it rested. As there were three purposes set forth in the statute, and the jury were instructed that their verdict might be given with respect to any one of them, independently considered, it is impossible to say under which clause of the statute the conviction was obtained. If any one of these clauses, which the state court has held to be separable, was invalid, it cannot be determined upon this record that the appellant was not convicted under that clause. It may be added that this is far from being a merely academic proposition, as it appears, upon an examination of the original record filed with this Court, that the State's attorney upon the trial emphatically urged upon the jury that they could convict the appellant under the first clause alone, without regard to the other clauses. It follows that instead of its being permissible to hold, with the state court, that the verdict could be sustained if any one of the clauses of the statute were found to be valid, the necessary conclusion from the manner in which the case was sent to the jury is that, if any of the clauses in question is invalid under the Federal Constitution, the conviction cannot be upheld.

283 U.S. at 367–68, 51 S.Ct. 532.

It should be understood that the court spoke in terms of *invalidity* of the statutory provision. That is not involved in this case. The claim of petitioner is not one of invalidity of the statute (§ 76–5–202(1)(d)), but of insufficiency of the evidence.

The Supreme Court clarified the prior analysis in *Griffin v. United States*, 502 U.S. 46, 112 S.Ct. 466, 116 L.Ed.2d 371 (1991).[26] The defendant and others were charged in a multiple object conspiracy. The evidence implicated defendant Griffin on one conspiratorial object but not another. The jury was instructed that it could return a verdict of guilt based on either object and a general guilty verdict was returned. Defendant Griffin contended the verdict could not stand

because it left doubt as to the object on which the defendant had been convicted.

The Supreme Court rejected the argument. The court held neither due process or Supreme Court precedent supported the defendant's claim. The Court said its decision in *Yates v. United States*, 354 U.S. 298, 77 S.Ct. 1064, 1 L.Ed.2d 1356 (1957), a case where the object of a conspiracy failed as a matter of legal insufficiency, was not the controlling precedent. The court noted *Williams v. North Carolina*, 317 U.S. 287, 63 S.Ct. 207, 87 L.Ed. 279 (1942) and *Cramer v. United States*, 325 U.S. 1, 65 S.Ct. 918, 89 L.Ed. 1441 (1945), had rested on insufficiency as to either constitutional grounds or points of law. 502 U.S. at pp. 51–55, 112 S.Ct. 466. The court held the correct standard was that following the common-law position, *Id.* at 51–52, 112 S.Ct. 466, and *Turner v. United States*, 396 U.S. 398, 90 S.Ct. 642, 24 L.Ed.2d 610 (1970), that if evidence is insufficient as to one act of a charge, the conviction may be upheld if it is sufficient as to another act. "[W]hen a jury returns a guilty verdict on an indictment charging several acts in the conjunctive, as Turner's indictment did, the verdict stands if the evidence is sufficient with respect to any one of the acts charged." *Griffin*, 502 U.S. at 56–57, 112 S.Ct. 466 (quoting *Turner*, 396 U.S. at 420, 90 S.Ct. 642). In reaching its position the court observed:

Jurors are not generally equipped to determine whether a particular theory of conviction submitted to them is contrary to law—whether, for example, the action in question is protected by the Constitution, is time barred, or fails to come within the statutory definition of the crime. When, therefore, jurors have been left the option of relying upon a legally inadequate theory, there is no reason to think that their own intelligence and expertise will save them from that error. Quite the opposite is true, however, when they have been left the option of relying upon a factually inad-

---

**26.** Neither side has cited to *Griffin* on this issue. Further, since *Griffin* is after *State v. Johnson*, 821 P.2d 1150 (Utah 1991) where the Utah court applied a somewhat different standard, and in *Tillman* I the Utah Supreme Court did not have

the advantage of Griffin's instruction. However, the Utah court should have considered *Griffin* in *Tillman* II. This is probably because the issue was put to the Utah court as a state law sufficiency issue.

equate theory, since jurors are well equipped to analyze the evidence.

502 U.S. at 59, 112 S.Ct. 466. The court drew a distinction between legal error in a mistake about the law as distinct from the sufficiency of the evidence. *Id.* at 59, 112 S.Ct. 466. See also, *Sochor v. Florida,* 504 U.S. 527, 538, 112 S.Ct. 2114, 119 L.Ed.2d 326 (1992) and *Boyde v. California,* 494 U.S. 370, 379, 110 S.Ct. 1190, 108 L.Ed.2d 316 (1990), to the same effect. Due process does not require that a general guilty verdict be set aside if the evidence is insufficient to support a conviction as to one of the alternative means of committing the offense if the evidence is sufficient as to another means charged. *Griffin,* 502 U.S. at 49–50, 112 S.Ct. 466.

The *Griffin* approach was followed in *United States v. Pace,* 981 F.2d 1123, 1129–30 (10th Cir.1992). The court said that even if the evidence was insufficient as to one form of the charge with two objects, where the second object was supported by sufficient evidence the conviction could stand. The court said it accepted the reasoning of the Seventh Circuit in *United States v. Townsend,* 924 F.2d 1385, 1412–14 (7th Cir.1991), which "recognizes a distinction between legal and factual sufficiency." *Pace,* 981 F.2d at 1130.

In *United States v. Self,* 2 F.3d 1071 (10th Cir.1993), the defendant was charged with various environmental offenses. It appeared the prosecution had pursued an improper construction of the statute. Defendant contended the conviction on one count had to be set aside because the jury's verdict may have been based on "a *legally* insufficient overt act or means." *Id.* at 1092 (emphasis added). The court surveyed the decision in *Griffin v. United States, supra:*

> In *Griffin v. United States,* 502 U.S. 46, 112 S.Ct. 466, 116 L.Ed.2d 371 (1991), the Supreme Court limited *Yates'* holding to situations in which one of the possible bases of conviction was *legally* insufficient as opposed to *factually* insufficient. *Id.* at ————–———, 112 S.Ct. at 470–72. *See also United States v. Pace,* 981 F.2d 1123, 1130 (10th Cir.1992), *cert. denied,* 507 U.S. 966, 113 S.Ct. 1401, 122 L.Ed.2d 774 (1993). In *Griffin,* the jury returned a general verdict finding the defendant guilty of conspiracy

to defraud the United States by impairing the efforts of the Internal Revenue Service to ascertain income taxes and impairing the efforts of the Drug Enforcement Administration to ascertain forfeitable assets. 502 U.S. at ————, 112 S.Ct. at 468. While there was sufficient evidence to prove that the defendant conspired to defraud the IRS, the government conceded that the evidence was insufficient to prove that the defendant conspired to defraud the DEA. *Id.* at ————, 112 S.Ct. at 468. The *Griffin* Court distinguished *Yates* on the grounds noted above and recognized the precedent on which *Yates* relied was limited to cases in which one of the grounds which the jury might have based the conviction was constitutionally prohibited. *Id.* at ———— ————, 112 S.Ct. at 470–72. See *Cramer v. United States,* 325 U.S. 1, 65 S.Ct. 918, 89 L.Ed. 1441 (1945) (possible ground of conviction violated Article III, § 3 requirement of "two Witnesses to the same overt Act" for conviction of treason); *Williams v. North Carolina,* 317 U.S. 287, 63 S.Ct. 207, 87 L.Ed. 279 (1942) (possible ground of conviction violated Full Faith and Credit Clause); *Stromberg v. California,* 283 U.S. 359, 51 S.Ct. 532, 75 L.Ed. 1117 (1931) (possible ground of conviction violated First Amendment). The *Griffin* Court held that the government's failure to prove one of the unlawful objectives of the conspiracy did not require reversal of the defendant's conspiracy conviction. 502 U.S. at ———— ————, 112 S.Ct. at 472–73. Thus, after *Griffin,* a general verdict on a conspiracy count charging disjunctive objectives must be reversed if the jury could have based its verdict on a legally or constitutionally infirm objective; however, factual insufficiency of one or more of the objectives does not require reversal as we will presume that the jury rejected the factually inadequate theory and convicted on an alternative ground for which the evidence was sufficient. *See Pace,* 981 F.2d at 1130 (affirming conviction for distributing methamphetamine or amphetamine even though there was a "total lack of evidence" that defendant distributed amphetamine). Accordingly, we must reverse Defendant's conspiracy conviction if

any of the objectives were legally insufficient. *See United States v. Garcia,* 992 F.2d 409, 416 (2d Cir.1993).

We need go no further than consider the objectives relating to the diversion of the natural gas condensate as two of them—*i.e.* transporting natural gas condensate to an unpermitted facility and falsifying the manifest—are legally insufficient. We recognize that we have already held that these counts were not legally insufficient in the sense that Defendant's pretrial motion to dismiss should have been granted. However, our reasoning was based on the fact that the counts properly charged all the elements of the crimes and the issue of whether natural gas condensate was a hazardous waste depended on the factual issue of how the natural gas condensate was ultimately disposed. The government proceeded to trial on an erroneous theory that the natural gas condensate was hazardous waste unless it was used in a manner normally intended by the industry or in its original intended manner. The district court instructed the jury on this erroneous theory. Because the government proceeded on an erroneous theory, the government case with respect to these counts suffered from a failure of proof. Nonetheless, because of the government's erroneous theory and the district court's erroneous instruction, these objectives were legally insufficient as well.

The *Griffin* Court recognized this very distinction. As the Court stated, "the term 'legal error' means a mistake about the law, as opposed to a mistake concerning the weight or factual import of the evidence." Here, both the government and the district court were mistaken about the law, as burning natural gas condensate as automotive fuel does not fit within the regulatory definition of hazardous waste and, therefore, Defendant's actions were not within the statutory definition of the crime. This renders two of the three RCRA objectives of the conspiracy legally insufficient. "[W]hether .... the action fails to come within the statutory definition of the crime" constitutes "legal error" and is controlled by *Yates. See Griffin,* 502 U.S. at ——, 112 S.Ct. at 474. Because

the jury was erroneously instructed on the question of whether the natural gas condensate was hazardous waste, this is not the case where we can "assume that jurors ... reject[ed] the 'factually inadequate theory.'" *Pace,* 981 F.2d at 1130 (citing *Griffin,* 502 U.S. at ——, 112 S.Ct. at 474). *Cf. Walther v. Lone Star Gas Co.,* 952 F.2d 119, 126 (5th Cir.1992) (applying *Griffin* and holding that "[b]ecause the district court's instruction on statistical proof was legally correct, although not factually supported, there was not reversible error"). Rather, this is the case in which "a particular theory of conviction ... is contrary to law." *Griffin,* 502 U.S. at ——, 112 S.Ct. at 474. Therefore, Defendant's count 1 conspiracy conviction must be reversed. *See id.; Yates,* 354 U.S. at 312, 77 S.Ct. at 1073. *See also Pace,* 981 F.2d at 1130 ("[a] disjunctive charge may result in jury error when one of the alternatives is legally inadequate").

*Self,* 2 F.3d at 1092–94.

*Self* makes it clear that in a case like this one, where the challenge is to the sufficiency of the evidence and not the legality of the charge, the conviction based on the alternative theory can be sustained if the alternative theory is supported by sufficient evidence. See *United States v. Linn,* 31 F.3d 987, 990 (10th Cir.1994); *United States v. Mitchell,* 85 F.3d 800 (1st Cir.1996) (a guilty verdict on indictment charging several acts in the conjunctive will stand if the evidence is sufficient with respect to any one act charged); *United States v. Delano,* 55 F.3d 720 (2d Cir.1995) (same).

 If there is an erroneous legal theory that is presented to the jury, the verdict could not stand, *United States v. McIntosh,* 124 F.3d 1330, 1335 (10th Cir.1997); *United States v. Hudgins,* 120 F.3d 483 (4th Cir. 1997), but if the evidence is sufficient on properly instructed charges, the verdict will stand if supported as to the evidence on any basis. *United States v. Holland,* 116 F.3d 1353 (10th Cir.1997); *United States v. Hudgins,* 120 F.3d at 487; *United States v. Washington,* 106 F.3d 983, 1007 (D.C.Cir. 1997).

The position reached here is acknowledged as correct by other circuit decisions. *United States v. Wilkinson,* 124 F.3d 971, 976 (8th Cir.1997) ("Here, there is no allegation, nor could there be, that any of the 'theories' under which [defendant] was charged is legally incorrect ... [the] 'verdict [will] stand if the evidence is sufficient with respect to any of the acts charged.' "); *United States v. Pemberton,* 121 F.3d 1157, 1158 (8th Cir. 1997); *United States v. Johnson,* 108 F.3d 919, 921 (8th Cir.1997).

There is no merit to petitioner's claim as to the insufficiency of the evidence for conviction.

*Constitutionality of Guilt Phase Verdict As To The Charge of First Degree Murder Under Utah Code Ann, § 76–5–202(1)(d)*

 The petitioner contends that because the trial court did not require the jury to make specific findings on guilt as to *which* aggravating factors were found under Utah Code Ann. § 76–5–202(1)(d) (first degree murder) that supported the verdict of guilty, that he was denied a fair jury trial. This is a challenge to the constitutionality of a general verdict when multiple forms of commission of the offense are charged. The respondent contends the contention is barred under *Teague v. Lane, supra.*

If the petitioner's claim would adopt a "new rule" under *Teague v. Lane, supra,* that case would have application and the petitioner's contention would be barred from affording a basis for relief for habeas corpus under 28 U.S.C. § 2254.

The petitioner contends the verdict was constitutionally inadequate because it is possible the jury did not unanimously find one of four aggravating circumstances that the killing was during enumerated crimes. However, the contention of the petitioner has greater implications. To be consistent under the petitioner's theory, under § 76–5–202(1)(d),

the court would have had to give a special verdict interrogatory on whether the killing was intentional or knowing, whether the victim was alive at the time of the underlying crime, whether an attempt was involved or a completed offense, or whether the killing was during flight from the commission of one of the enumerated crimes. To be consistent with petitioner's theory every element of the crime that involved an alternative action element or mens rea would have to be given by special verdict interrogatory.[27] Petitioner cites no case supporting a constitutional basis for his claim. Indeed, at the time of trial, defense counsel did not request a special verdict, but the Utah Supreme Court considered the issue on appeal. *Tillman* I 750 P.2d at 565. Also, the Utah Supreme Court only considered the issue raised by petitioner as a matter of state procedural law, and did not address the claim as a part of a jury trial under the Sixth Amendment.[28]

 The traditional American procedure has been to use a general verdict in a criminal trial. For example, Rule 31, F.R.Cr.P. expressly provides for a special verdict only in forfeiture cases. The right to jury trial in a criminal case is the right as it existed at common law. *Patton v. United States,* 281 U.S. 276, 288, 50 S.Ct. 253, 74 L.Ed. 854 (1930). The requirements of the Sixth Amendment for federal jury trials have not been extended as full requirements for the states under the Fourteenth Amendment. *Williams v. Florida,* 399 U.S. 78, 90 S.Ct. 1893, 26 L.Ed.2d 446 (1970)(jury trial of twelve jurors not required in state cases); *Apodaca v. Oregon,* 406 U.S. 404, 92 S.Ct. 1628, 32 L.Ed.2d 184 (1972)(unanimity not required in a state jury trial).

The United States Supreme Court in *Griffin v. United States,* 502 U.S. at 49, 112 S.Ct. 466 observed:

the Utah statute does involve various forms of conduct. See Utah Code Ann. § 76–1–6–1(4) (" 'Conduct' means an act or omission"); § 76–1–601(1) (" 'Act' means a voluntary bodily movement ..."). § 76–5–202(1)(d) involves the possibility of various acts.

---

**27.** In *Tillman* I, *supra,* the Utah Supreme Court said the Utah statute, Utah Code Ann. § 76–5–202, involves only a singular actus reus and there are no alternatives, "Rather there are objective circumstances which evaluate and aggravate the singular actus reus." 750 P.2d at 565. This is in keeping with the concept of actus reus as not necessarily limited to the physical act performed in committing the crime. Perkins & Boyce, *Criminal Law,* 830–837 3d ed. (1982). However,

**28.** The respondent has not raised a claim of procedural default.

It was settled law in England before the Declaration of Independence, and in this country long afterwards, that a general jury verdict was valid so long as it was legally supportable on one of the submitted grounds—even though that gave no assurance that a valid ground, rather than an invalid one, was actually the basis for the jury's action.

See also *Griffin,* 502 U.S. at 49–52, 112 S.Ct. 466.

*Griffin* found no basis for complaint under the due process clause and noted the rule was recognized during Lord Mansfield's time, citing *Claassen v. United States,* 142 U.S. 140, 146, 12 S.Ct. 169, 35 L.Ed. 966 (1891) which referred to *Peake v. Oldham,* 1 Cowper 275, 276, 98 Eng. Rep. 1083 (K.B. 1775). *Griffin,* 502 U.S. at 49–50, 112 S.Ct. 466. It has been said that after 1792, Fox's Libel Act, 1792, 32 Geo. 3 Ch. 60 special verdicts ended in English criminal trials, citing Morgan, *A Brief History of Special Verdicts and Interrogatories,* 32 Yale L.J. 579, 590–91 (1923) in Renee B. Lettow, *New Trial for Verdict Against Law,* 71 Notre Dame L.Rev. 505, 563 (1996). A general verdict was the accepted practice in this country in multiple count cases. *Cf. Statler v. United States,* 157 U.S. 277, 279, 15 S.Ct. 616, 39 L.Ed. 700 (1895). One federal court in 1884 observed that it was not the practice in the federal courts, ordinarily, to instruct the jury to bring in a specific verdict. *United States v. Walsh,* 22 F. 644, 649 (C.C.D.Mass.1884). In *Anderson v. United States,* 273 F. 677, 679 (9th Cir.1921), the court said it was not the practice of the federal courts in criminal cases to call for special verdicts and "we hold that there was no error in refusing to depart from the practice." In 1946, a court said as to special verdicts in federal cases that, "They have, however, become virtually unknown in federal criminal practice." *United States v. Noble,* 155 F.2d 315, 317 n. 4 (3d Cir.1946).

In Abbott, *Criminal Trial Practice,* § 715 (1939) referring to general criminal practice in the United States, it is indicated that a verdict in a criminal case could be "general or special." It is also said, "A general verdict of 'guilty' is sufficient without the addition of other words." *Id.* at 1357 (citing state cases). In *Wharton's Criminal Law and Procedure,* § 2125, Anderson, (1957) the same language is found as in Abbott. *Wharton* also recognizes there is authority for a special question of fact or a special verdict. §§ 2125, 2126. In *Wharton's Criminal Procedure,* § 501 (1992) the same position is stated.

In Wayne R. La Fave and Jerold H. Israel, *Criminal Procedure* Vol. 5 § 23.7(d) (1984) it is observed that special verdicts are not "often utilized in criminal trials." *Id.* at 45. The work states that only in a few instances where a jury has to address a special matter is a special verdict to be utilized and that "This reflects the oft-stated proposition that 'special verdicts in criminal cases are not favored'" (citing *United States v. O'Looney,* 544 F.2d 385 (9th Cir.1976)).

In *United States v. Spock,* 416 F.2d 165 (1st Cir.1969), a special verdict was utilized and it was challenged on the grounds that it violated the defendant's Sixth Amendment rights to a jury trial. The court expressed disfavor with the special verdict observing that, "The constitutional guarantees of due process and trial by jury require that a criminal defendant be afforded the full protection of a jury unfettered, directly or indirectly." *Id.* at 182. It had been contended that a special verdict actually hobbles a jury. In *Heald v. Mullaney,* 505 F.2d 1241 (1st Cir. 1974) the same court observed that there could be "little doubt that, in general, the use of special questions and verdicts in any criminal proceeding, state or federal, is suspect not only as a matter of sound judicial policy but of due process as well." 505 F.2d at p. 1245. The court in *Spock* reversed the conviction because of the special verdict. 416 F.2d at 183.

These conclusions are in conformity with other federal decisions.[29] In *United States v.*

---

**29.** James C. Cissell, *Federal Criminal Trials,* § 12–6(d)(1) (4th ed.1996) states that "although there is no per se rule against the use of special verdict in criminal jury cases (citing *O'Looney, supra* ), it is established that special verdicts in

such trials are generally disfavored .... Courts do not look with favor on special verdicts because such verdicts are not favorable to defendants."

*Munz,* 542 F.2d 1382 (10th Cir.1976), the trial court gave an instruction for a verdict of not guilty by reason of insanity which the trial court later corrected. On appeal defendant contended he was entitled to a verdict of not guilty by reason of insanity because that was the only issue and it would provide the jury with a "clearer choice." *Id.* p. 1388. The court rejected the argument and said:

> It is true that use of the not guilty by reason of insanity form has been held not to be error, standing alone. *United States v. McCracken,* 488 F.2d 406, 420 (5th Cir.). We feel, however, that proper use was made here of the standard "not guilty" and "guilty" forms, which was in accord with the strong policy favoring submission of a general verdict form to preserve the jury's function in a criminal case, unrestricted by any requirement of a special verdict.

542 F.2d at 1389

In *Gray v. United States,* 174 F.2d 919, 923 (8th Cir.1949) the court held that a verdict that was in the form of special interrogatories and answers was reversible error. In *United States v. Desmond,* 670 F.2d 414, 416 (3d Cir.1982), the court observed:

> As a general proposition, special verdicts are generally disfavored in criminal cases, but there is no per se rule against them. We so held in cases within the past two years. (Citing cases).

The court however held that use of a special verdict in the particular case was harmless error but cautioned it did "not recommend the use of special interrogatories." *Id.* p. 419. In an interesting expression of dissent Judge Aldisert stated:

> "Basta!"
>
> This is an Italian exclamation which, freely translated, means "Enough!" I now say *"Basta!"* on the question of special verdicts in criminal cases. I believe that the issue has sufficiently percolated in our cases for this court to exercise its supervisory power and prohibit special verdicts or special interrogatories in all criminal cases except where specifically requested by the defendant for cause shown.

670 F.2d at 420

Judge Aldisert's opinion cited to substantial authority for the proposition that special verdicts should not be used in federal criminal cases. In *United States v. Johnson,* 718 F.2d 1317, 1322 (5th Cir.1983) the court said that a general verdict was the proper way for a judge to proceed on a criminal case and except for the rare case "the jury in a criminal trial does not answer interrogatories and it does not find facts. It decides whether the defendant is guilty or not guilty." See also Justice Story's opinion in *United States v. Battiste,* 24 F.Cas. 1042, 1043 (C.C.D. Mass. 1835) (No. 14, 545).

In *United States v. Pforzheimer,* 826 F.2d 200, 205 (2d Cir.1987), a case decided in the year of Tillman's trial, the court said "jury interrogatories in criminal cases are generally disfavored" but not "per se" impermissible "but rather is generally disfavored." *Id.* at 205–06 (citing cases). The court found the use of special interrogatories in the case not error and also noted the defendant did not object. *Id.* at 206 n. 2.

Based on the above authorities, it is clear that petitioner's contention in this case, that procedural due process required a special verdict where murder was based on the intentional or knowing killing during multiple enumerated crimes, would be a "new rule" within *Teague v. Lane,* 489 U.S. at 310, 109 S.Ct. 1060; *O'Dell v. Netherland,* 117 S.Ct. at p. 1970; *Lambrix v. Singletary,* 520 U.S. 518, 117 S.Ct. 1517, 1520, 137 L.Ed.2d 771 (1997).

Nor does petitioner's claim fit within the exception to the rule noted in *Teague* for fundamental fairness. *Griffin v. United States, supra,* has made it certain that the petitioner's claim is not one of fundamental bedrock procedure. In *Geschwendt v. Ryan,* 967 F.2d 877 (3d Cir.1992) a state prisoner contended he was entitled to a special verdict on not guilty by reason of insanity and that the failure to use that procedure denied due process. The court held due process did not require such a procedure. The court relied on *Schad v. Arizona,* 501 U.S. 624, 111 S.Ct. 2491, 115 L.Ed.2d 555 (1991), cited by petitioner in this case for his contention and also discussed by respondent.

In *Schad,* the Supreme Court rejected the petitioner's argument that the trial court's refusal to require the jury to return a verdict on a single theory of first degree murder was a constitutional violation. The court said

Arizona's characterization of first degree murder as a single crime as to which a jury need not agree on one of the alternative statutory theories of premeditated or felony murder was not unconstitutional.[30] The court concluded the Arizona approach was not a violation of fundamental fairness.[31] See 501 U.S. at 637–638, 111 S.Ct. 2491. History also supported the conclusion. The court said the relevant inquiry is not one of whether a unanimous verdict is required in capital cases, but whether it was constitutionally acceptable to permit the jury to reach one verdict based on the "permissible limits" of defining criminal conduct. *Id.* at 630–631, 111 S.Ct. 2491. This is the same approach the Utah court took in *Tillman* I. The United States Supreme Court rejected the idea of required special verdicts. 501 U.S. at 631, 111 S.Ct. 2491. Justice Scalia concurring noted there was no historical basis for a contrary conclusion. *Schad* supports the rejection of petitioner's claim in this instance both as to *Teague's* possible exception for fundamental fairness and on the merits of petitioner's claim, *Teague* aside.

In *Geschwendt, supra,* the court rejected the petitioner's claim that a special verdict was required as a matter of due process. 967 F.2d at 899. See also *United States v. Console,* 13 F.3d 641 (3d Cir.1993).

In *United States v. Shenberg,* 89 F.3d 1461 (11th Cir.1996), a contention was made that the use of a general verdict for a multi-object conspiracy violated the deceased's Sixth Amendment rights. The court rejected the argument, relying on *Griffin v. United States, supra. Shenberg,* 89 F.2d at 1472. The court said it was presumed the jury followed the trial court's instructions, and said "we hold that the district court acted within its discretion in denying appellant's request for a special verdict on the RICO conspiracy count." *Id.*

"Most courts considering the issue under the Sixth Amendment have concluded the Constitution does not require a federal jury to agree unanimously upon the identity of the specific predicate acts underlying a conviction for a compound-complex crime." Note, *Compound–Complex Criminal Statutes and the Constitution: Demanding Unanimity As To Predicate Acts,* 104 Yale L.J. 2277, 2279 (1995).

The petitioner's claim that the Sixth Amendment required a special verdict on the first degree murder offense is barred by *Teague v. Lane, supra,* and also is without merit as a claim of fundamental right.

*The Information Violated Due Process Notice Requirements and Deprived Petitioner of a Fair Opportunity to Prepare a Defense*

The petitioner contends that the information in this case which charged him with first degree murder in the Utah state court, denied him due process of law.[32] The information in this case (R. at 17) charges the petitioner, Elroy Tillman, with one offense, criminal homicide, Murder First Degree, a capital offense, in violation of "Title 76, Chapter 5, Section 202, Utah Code Annotated." The information specified the precise location of the offense as at "1560 South 1300 East, Salt Lake County, State of Utah." The date of the offense is particularly alleged as on or about May 26, 1982. The information further alleges that at the time and place "Elroy Tillman, intentionally or knowingly caused the death of Mark Allen Schoenfeld while defendant was in commission of, or attempting to commit, burglary or aggravated burglary; arson or aggravated arson." The latter two elements (arson or aggravated arson) were added as amendments to the information following the preliminary hearing. *Tillman II* 855 P.2d at 215.

---

**30.** The court rejected a contrary analysis in *United States v. Gipson,* 553 F.2d 453 (5th Cir.1977), see 501 U.S. at 635, 111 S.Ct. 2491.

**31.** This conclusion means as well that the contention would not be obligatory on the states under the Sixth Amendment to the extent incorporated in the due process clause of the Fourteenth Amendment.

**32.** Utah courts seldom use a grand jury. An information is used as the basic pleading document with a preliminary hearing being provided. Article I, § 13, Const. of Utah; Rules 4 & 5 Utah Rules of Criminal Procedure (U.R.Cr.P.)(enacted initially as Utah Code Ann. §§ 77–35–4 & 5, Laws of Utah Ch. 14 § 1). See *State, ex rel. Cannon v. Leary,* 646 P.2d 727 (Utah 1982).

Rule 4(d) U.R.Cr.P. authorizes the amendment of an indictment or information at any time before verdict if no additional or different offense is charged. In this case no additional offense was charged, just additional ways of commission of the offense under the applicable statute. *State v. Tillman (Tillman* I), 750 P.2d at 564–66, 569. The Court in *Tillman* II, noted that .the amendment was made with defense counsel's concurring statement that he had no objection to the amendment. 855 P.2d at 215.

The petitioner states that the issue he now raises was first raised in petitioner's state habeas corpus petition and that the Utah Supreme Court addressed the issue on the merits (File Entry #2, p. 24). This assertion is not correct. The Utah Supreme Court in *Tillman* II addressed only the propriety and effect of the amended information. 855 P.2d at 214–16. The argument in the petition now before the court raises an entirely different contention, addressing the alleged insufficiency of the indictment itself. This matter has never been addressed by the Utah Courts. It is before this court for the first time. The respondent has not raised any issue of procedural bar or default on this matter. Therefore, the issue is before this court without exhaustion in the state court. The respondent has effectively conceded exhaustion and has not raised a procedural bar, but has addressed the issue on the merits. Therefore, this court will consider the matter on its merits.

 It must be understood the issue raised by petitioner goes to the sufficiency of the information as a matter of constitutional law, not the failure to meet a pleading requirement of state or federal procedure. Nor is this a case of a conviction for an offense not charged. *Cole v. Arkansas,* 333 U.S. 196, 201, 68 S.Ct. 514, 92 L.Ed. 644 (1948) ("No principle of procedural due process is more clearly established than that notice of the specific charge, and a chance to be heard in a trial on the issues raised by the charge, if desired, are among the constitutional rights of every accused in a criminal proceeding in all courts, state or federal."). See also *Groppi v. Leslie,* 404 U.S. 496, 92

S.Ct. 582, 30 L.Ed.2d 632 (1972) (failure to give legislative protestor notice of the contempt charge violated due process).

It should also be mentioned that not only was there no objection raised to the sufficiency of the information in this case, but no request was made by petitioner for a bill of particulars under Rule 4(b) U.R.Cr.P. The information in this case fully complied with Rule 4(b), U.R.Cr.P.

 The Fifth Amendment right to a Grand Jury indictment does not apply to the states. *Hurtado v. California,* 110 U.S. 516, 4 S.Ct. 111, 28 L.Ed. 232 (1884); *Palko v. Connecticut,* 302 U.S. 319, 323, 58 S.Ct. 149, 82 L.Ed. 288 (1937); *Alexander v. Louisiana,* 405 U.S. 625, 633, 92 S.Ct. 1221, 31 L.Ed.2d 536 (1972); *Hampton v. Oklahoma,* 368 F.2d 9 (10th Cir.1966). Therefore, matters that may be applicable to a federal indictment are not necessarily applicable to a state information. The sufficiency of a state charge pleading is determined by the Sixth Amendment right "to be informed of the nature and cause of the accusation." *United States v. Cruikshank,* 92 U.S. 542, 557–58, 23 L.Ed. 588 (1875); *In re Oliver,* 333 U.S. 257, 273, 68 S.Ct. 499, 92 L.Ed. 682 (1948); *Cole v. Arkansas, supra, Rabe v. Washington,* 405 U.S. 313, 92 S.Ct. 993, 31 L.Ed.2d 258 (1972). Where the charge pleading embodies the wording of the statute which is fully descriptive of the offense, it is constitutionally sufficient. *Potter v. United States,* 155 U.S. 438, 15 S.Ct. 144, 39 L.Ed. 214 (1894).[33] The Supreme Court has upheld a state short form of pleading where a bill of particulars is available as in Utah. *Hodgson v. Vermont,* 168 U.S. 262, 18 S.Ct. 80, 42 L.Ed. 461 (1897).

It has been uniformly held that the sufficiency of state charge (information or indictment) is not an issue on federal habeas corpus unless the indictment is so deficient that the convicting court was deprived of jurisdiction. *Heath v. Jones,* 863 F.2d 815, 821 (11th Cir.1989); *Uresti v. Lynaugh,* 821 F.2d 1099, 1102 (5th Cir.1987) ("It is well settled, however, that sufficiency of an indictment is not

---

**33.** The due process clause of the Fourteenth Amendment incorporates the Sixth Amendment

obligation to inform the accused of the charge he must meet. *In re Oliver, supra.*

a matter for federal habeas relief unless the indictment is so deficient that the convicting court had no jurisdiction (citing cases)." These authorities were cited approvingly in *Ferguson v. Davies*, 941 F.2d .1213 (10th Cir.1991) (unpublished 1991 WL 159849) p. 5. It has been said an indictment that fairly but imperfectly informs the accused of the offense for which he is to be tried, does not give rise to a constitutional issue cognizable on habeas corpus. *Mira v. Marshall*, 806 F.2d 636 (6th Cir.1986). If no crime was alleged relief by habeas corpus would be available. *United States v. Green*, 797 F.2d 855 (10th Cir.1986). That is not the case in this instance.

In *California v. Superior Court*, 482 U.S. 400, 410, 107 S.Ct. 2433, 96 L.Ed.2d 332 (1987), the Supreme Court in an extradition context seemed to recognize the general rule saying that an indictment from the demanding state court could be challenged in the asylum jurisdiction only if the elements of the demanding state offense were not alleged in the charge. This limitation has been repeated in several cases. *Williams v. Collins*, 16 F.3d 626 (5th Cir.1994) (indictment must be so deficient that the court was without jurisdiction before relief is appropriate on federal habeas corpus); *McKay v. Collins*, 12 F.3d 66 (5th Cir.1994); *United States v. Prince*, 868 F.2d 1379, 1384 (5th Cir.1989) ("[T]he sufficiency of an indictment or information is not open to collateral attack after conviction unless it appears that the circumstances are exceptional, that the questions raised are of 'large importance,' that the need for the remedy sought is apparent, *and* that the offense charged was one of which the sentencing court manifestly had no jurisdiction.") (quoting *Merrill v. United States*, 599 F.2d 240, 242 (8th Cir.1979)) (emphasis added).

The Ninth Circuit in *Echavarria–Olarte v. Reno*, 35 F.3d 395, 397 (9th Cir.1994) said that a failure to object to an indictment "waives all objections except those which challenge the court's jurisdiction or allege that the indictment failed to charge an offense." The Court also said indictments that are tardily challenged (28 U.S.C. § 2255 proceeding) "are liberally construed in favor of validity." Applying these standards, petitioner's efforts to challenge the sufficiency of

the indictment in this case are without merit. The indictment fully appraised the petitioner of the offense, its elements, and the essential allegations. There was no jurisdiction deficiency in the present information.

The expressed standards as to the sufficiency of an indictment were discussed in *Hamling v. United States*, 418 U.S. 87, 94 S.Ct. 2887, 41 L.Ed.2d 590 (1974), a case not involving a habeas corpus review of a state charge. The Court said an indictment is sufficient if it fulfills certain functions. The defendants in *Hamling*, were convicted of conspiracy and mailing obscene matter. The indictment charged defendants in the language of the statute. A challenge was made to the indictment as vague and lacking adequate notice. *Id.* at 117, 94 S.Ct. 2887. In rejecting the challenge, the court said:

Our prior cases indicate that an indictment is sufficient if it, first, contains the elements of the offense charged and fairly informs a defendant of the charge against which he must defend, and, second, enables him to plead an acquittal or conviction in bar of future prosecutions for the same offense.

*Id.*

The court said, "It is generally sufficient that an indictment set forth the offense in the words of the statute itself, as long as those words of themselves fully, directly and expressly, without any uncertainty or ambiguity, set forth all the elements necessary to constitute the offence intended to be punished." *Id.* at 117, 94 S.Ct. 2887. *United States v. Carll*, 105 U.S. 611, 612, 26 L.Ed. 1135 (1881). Also, *Potter v. United States, supra*.

Recently, in *United States v. Dashney*, 117 F.3d 1197, 1205 (10th Cir.1997), on review of a petition under 28 U.S.C. § 2255, the Court said:

An indictment need only meet minimal constitutional standards, and we determine the sufficiency of an indictment by practical rather than technical considerations. *United States v. Dahlman*, 13 F.3d 1391, 1400 (10th Cir.1993), *cert. denied*, 511 U.S. 1045, 114 S.Ct. 1575, 128 L.Ed.2d 218 (1994). An indictment is sufficient if it sets forth the elements of the offense

charged, puts the defendant on fair notice of the charges against which he must defend, and enables the defendant to assert a double jeopardy defense.

117 F.3d at 1205.

This position has been followed by other decisions from the Tenth Circuit. *United States v. Bolton,* 68 F.3d 396, 400 (10th Cir. 1995) ("minimal constitutional standards" determined in a "practical rather than technical" manner); *United States v. Dahlman,* 13 F.3d 1391, 1400 (10th Cir.1993); *United States v. Poole,* 929 F.2d 1476, 1478–79 (10th Cir.1991). In *United States v. DeSantiago–Flores,* 107 F.3d 1472, 1480 (10th Cir.1997), in finding an indictment for making a destructive device to be sufficient as against an argument that it did not include all the elements of the offense, the Tenth Circuit said:

> The legal sufficiency of the indictment can be challenged at any time, although where, as here, the challenge is not made during trial "the challenged language will 'be construed liberally in favor of validity.' " *Sullivan,* 919 F.2d at 1410 n. 5. "An indictment that sets forth the words of the statute generally is sufficient so long as the statute itself adequately states the elements of the offense." *United States v. Darrell,* 828 F.2d 644, 647 (10th Cir.1987). An indictment is sufficient if it sets forth the elements of the offense charged, puts the defendant on fair notice of the charges he must defend, and enables the defendant to assert a double jeopardy defense.

107 F.3d at 1480.

 Thus the indictment in this instance must be construed liberally in its favor and against petitioner's contention. See also *United States v. Darrell,* 828 F.2d 644, 647 (10th Cir.1987). The statute need not be fully quoted if the allegations adequately put the defendant on notice of the charge. *United States v. Edmonson,* 962 F.2d 1535, 1542 (10th Cir.1992). The real issue is whether the defendant has been provided with a clear understanding of the charge. *Id.; Kienlen v. United States,* 379 F.2d 20, 23 (10th Cir.1967) (language of statute used in indictment). It is enough that defendant is appraised of what he has to meet. *United States v. Lepanto,* 817 F.2d 1463 (10th Cir.1987); *United States v. Staggs,* 881 F.2d 1527 (10th Cir.1989). The defendant is not entitled to notice of the prosecutor's evidence to support the charge. *United States v. Ivy,* 83 F.3d 1266 (10th Cir.1996); *United States v. Innamorati,* 996 F.2d 456 (1st Cir.1993) (indictment need not recite the government's evidence).

In a homicide case, reference to the relevant state law sections was held sufficient. *Nevius v. Sumner,* 852 F.2d 463 (9th Cir. 1988). The allegations may be adequate to show the elements although the specific statutory language is not used if the element is inferred from the allegation made. *United States v. Dahlman, supra.* On habeas corpus, state law is the primary determinant. *Tapia v. Tansy,* 926 F.2d 1554, 1560 (10th Cir.1991).

In *United States v. Bedonie,* 913 F.2d 782 (10th Cir.1990), defendants challenged an indictment in a homicide case for killing Navajo police officers. The court observed:

> An indictment is constitutionally sufficient if it passes the following two-part test:
> "First, the indictment must contain the elements of the offense and sufficiently apprise the defendant of what he must be prepared to meet; second, it must be such as to show to what extent he may plead a former acquittal or conviction as a bar to further prosecution for the same cause."

*United States v. Salazar,* 720 F.2d 1482, 1486 (10th Cir.1983), cert. denied, 469 U.S. 1110, 105 S.Ct. 789, 83 L.Ed.2d 783 (1985) (quoting *United States v. Radetsky,* 535 F.2d 556, 562 (10th Cir.), cert. denied, 429 U.S. 820, 97 S.Ct. 68, 50 L.Ed.2d 81 (1976)); see also *Hamling v. United States,* 418 U.S. 87, 117, 94 S.Ct. 2887, 41 L.Ed.2d 590 (1974); *United States v. Smith,* 788 F.2d 663, 667 (10th Cir.1986).

"An indictment generally is sufficient if it sets forth the offense in the words of the statute so long as the statute adequately states the elements of the offense" intended to be punished. *Salazar,* 720 F.2d at 1486 (citing *Hamling,* 418 U.S. at 117, 94 S.Ct. at 2907). The indictment here did not specifically reference § 81 or incorporate its exact language. Instead, the indictment charged that appellants "willfully, deliberately, maliciously and premeditatedly murder[ed] [Stanley and Begay] and committ[ed] said murder in the perpetra-

tion of and the attempt to perpetrate arson ... by means of setting fire to a truck." If the indictment had fused the exact language of §§ 1111(a) and 81, it would have produced a more perfect statement of the offense; however, we conclude the indictment sufficiently charged the federal offense of arson-murder under §§ 1111(a) and 81. The indictment sufficiently apprised appellants of the offense charged and the elements thereof.

913 F.2d at 790–91.

Applying these standards to the indictment in this case, it is apparent petitioner had adequate notice of the charge to meet any constitutional requirement. The charge virtually parallels the language of Utah Code Ann. § 76–5–202(1)(d) as was then written. It gave the place of the offense, the mental elements of an intentional, knowing killing and the crimes during which the deceased was killed. It contained a clear indication of the charge petitioner had to defend against and was adequate to protect him against double jeopardy.

At hearing on this matter, petitioner argued this point pro se, in effect saying the charge should have given him a break down of the elements of the underlying aggravating crimes of burglary and arson (Tr. 11/9/95, pp. 94–95). Tillman first attempted to invoke Utah law, but of course as noted before, Utah law does not require such a litany. The crime was first degree murder and all the elements of that offense were set forth as proscribed in the statute. Tillman's reference to Rule 7(c)(1) F.R.Cr.P. is also unavailing.[34] A similar argument was made in *United States v. Willis*, 102 F.3d 1078 (10th Cir.1996) and rejected. The Court said "fair notice of what defendant must defend against" is the important feature. *Id.* at 1081. The Court said:

> We also reject defendant's contention that Count 2 of the indictment should have recited the elements of § 2113(b). Our concern is whether, after reading the counts of an indictment together, a defendant has "a clear understanding of each of the charges against him." *United States v. Edmonson*, 962 F.2d 1535, 1542 (10th

Cir.1992) (reading all three counts of an indictment together, it stated all essential elements of the statute). Count 1 of the superseding indictment parrots the language of § 2113(b) in the context of the conspiracy charged. Count 2 includes the language of § 2113(d) and then incorporates Count 1 and references § 2113(b). *See* Fed.R.Crim.P. 7(c)(1). An indictment need not quote the statute to adequately place a defendant on notice of the charges against him. *United States v. Bullock*, 914 F.2d 1413, 1414 (10th Cir.1990) (discussing untimely challenge to sufficiency of indictment) (citing *Hamling v. United States*, 418 U.S. 87, 94 S.Ct. 2887, 41 L.Ed.2d 590 (1974)); see also *Kienlen v. United States*, 379 F.2d 20, 23 (10th Cir.1967) (rejecting challenge to single sentence indictment that failed "to allege the [defendant] assaulted and put lives in danger by the use of a dangerous weapon 'while committing an offense in violation of 18 U.S.C. § 2113(a)' ").

Defendant has not shown that he could not adequately prepare his defense or that the charge or the record at the second trial is so lacking that it provided him no protection against double jeopardy. Defendant evidently received all required access to the prosecution's discovery and concedes that the evidence in both trials was nearly identical. Appellant's Brief at 34. *See United States v. Dyba*, 554 F.2d 417, 420 (10th Cir.) (upholding imperfect indictment because not substantially prejudicial to defendant), *cert. denied*, 434 U.S. 830, 98 S.Ct. 111, 54 L.Ed.2d 89 (1977); *United States v. Mason*, 440 F.2d 1293, 1296 (10th Cir.) (upholding indictment that was "not a model of clarity"), *cert. denied*, 404 U.S. 883, 92 S.Ct. 219, 30 L.Ed.2d 165 (1971).

102 F.3d at 1082–83.

See also *Nevius v. Sumner, supra; United States v. Antelope*, 377 F.Supp. 193 (D.Idaho 1974) (felony murder under 18 U.S.C. § 1111); *United States v. Narcia*, 776 F.Supp. 491 (D.Ariz.1991). See *United States v. Lopez–Alvarez*, 970 F.2d 583, 596

---

**34.** This issue was not of course raised before the Utah courts nor in petitioner's opening brief. For this reason, as well, the contention must be

deemed waived by petitioner and it is barred as beyond the pleadings and issues as framed in the petition.

(9th Cir.1992) (felony murder indictment was sufficient by alleging killing during kidnaping); *United States v. Bedonie, supra.*

■ Further, charging the various forms of criminal acts during which the victim was intentionally or knowingly murdered does not offend due process. *Schad v. Arizona, supra; United States v. Miller,* 471 U.S. 130, 105 S.Ct. 1811, 85 L.Ed.2d 99 (1985); *United States v. Wiles,* 102 F.3d 1043 (10th Cir.1996) (indictment may charge single offense committed by several means); *United States v. Cornillie,* 92 F.3d 1108 (11th Cir.1996); *Gerlaugh v. Lewis,* 898 F.Supp. 1388 (D.Ariz. 1995) (two means of murder).

Therefore, applying the standard for review on habeas corpus, the minimal constitutional requirements, and the fair notice standards for the sufficiency of an information, defendant has no basis on which to complain as to the sufficiency of the information.

### Constitutionality of the Utah Murder Statute as Applied.

### The Argument for the Application of a Merger Doctrine.

The petitioner contends the Utah first degree murder statute is unconstitutional as applied because Utah has not adopted a "merger doctrine" with regard to § 76–5–202(1)(d) as California did as to its felony murder statute in *People v. Ireland,* 70 Cal.2d 522, 75 Cal.Rptr. 188, 450 P.2d 580 (Cal.1969) and *People v. Wilson,* 1 Cal.3d 431, 82 Cal.Rptr. 494, 462 P.2d 22 (Cal.1969). In *Ireland,* the California Supreme Court construing the "common law"[35] felony murder doctrine in California held, as a matter of interpretation of state law, that where the underlying felony for felony murder was an element of homicide that the felony could not be used to invoke the felony murder rule for second degree murder. In *Ireland* the underlying felony was assault with a deadly weapon. The Court said to construe the felony murder rule to apply to such a case

extended felony murder beyond the "rational function that it is designed to serve." 75 Cal.Rptr. 188, 450 P.2d at 590. Nothing in *Ireland* assumed the construction was constitutionally required. It was entirely a matter of state policy, based on the perceived purpose of the California felony murder rule.

Subsequently, in *People v. Wilson, supra,* the California Supreme Court applied the same reasoning to the first degree murder statute where burglary was the enumerated underlying felony. Cal.Penal Code § 189. In *Wilson* the California burglary statute encompassed intent on entry to commit "any felony" and the prosecution had charged the offense of burglary as the underlying felony where defendant entered the premises and shot and killed his wife and wounded another person. The felony which the burglary statute incorporated was assault with a deadly weapon. The court said the purpose of the California felony murder rule is to deter felons from killing negligently or accidentally by holding persons strictly liable for deaths during commission of a felony. The court held under the facts in *Wilson* the felony murder rule did not apply as the underlying felony merged[36] into the act of killing. Again, there was no federal constitutional basis for the decision. Further, the reasoning of *Wilson* has no application to the Utah first degree murder statute because it applies to intentional or knowing killings not accidental killings. *Tillman* I, 750 F.2d at 569.

After *Wilson,* the California Court rejected the application of the merger doctrine to a robbery felony. *People v. Burton,* 6 Cal.3d 375, 99 Cal.Rptr. 1, 491 P.2d 793 (1971); *People v. Garrison,* 47 Cal.3d 746, 254 Cal. Rptr. 257, 765 P.2d 419, 435 (1989); See also *People v. Mattison,* 4 Cal.3d 177, 93 Cal. Rptr. 185, 481 P.2d 193 (1971) (merger doctrine is not applicable in prison poisoning by selling methyl alcohol).

---

**35.** The California Penal Code defined second degree murder as "any other kind of murder." The California courts had construed second degree felony murder which invokes a common law standard requiring a felony inherently dangerous to human life other than the six enumerated felonies for first degree murder. 75 Cal.Rptr. 188, 450 P.2d at 589.

**36.** The court referred to the "merger doctrine" and said it refers to the concept that only felonies independent of the homicide can support a felony murder instruction. 82 Cal.Rptr. 494, 462 P.2d at 29 n. 5. This standard has since been modified by the California Supreme Court.

The California Supreme Court has recently reanalyzed its position on merger. In *People v. Hansen*, 9 Cal.4th 300, 36 Cal.Rptr.2d 609, 885 P.2d 1022 (1994), it held the second degree felony murder rule could apply where the underlying felony was the discharging of a weapon at an inhabited dwelling. Defendant argued for the application of the merger rule under *Hansen, supra,* 36 Cal.Rptr.2d 609, 885 P.2d at 1028. The Court said defendant's argument was based on "an unduly expansive view of the scope of the merger doctrine applied in *Ireland.*" *Id.* at 1028. The Court said the "integral part of the homicide" language in *Ireland* was not the standard.[37] *Id.*, 36 Cal.Rptr.2d 609, 885 P.2d at 1030. The Court in *Hansen* said:

> Rather than rely upon a somewhat artificial test that may lead to an anomalous result, we focus upon the principles and rationale underlying the foregoing language in *Taylor,* namely, that with respect to certain inherently dangerous felonies, their use as the predicate felony supporting application of the felony-murder rule will not elevate all felonious assaults to murder or otherwise subvert the *legislative intent.*

*Id.* (emphasis added). A legislative intent concept, a policy analysis as to the intention of the statute, now determines the application of the merger rule in California. This somewhat less rigid test is not a standard obviously compatible with a federal due process analysis. It would vary from state to state and be dependent on state law analysis rather than a fundamental aspect of federal constitutional law.

Some states have adopted the California position. Many have not done so. Robert L. Johnson, Annotation, *Application of Felony–Murder Doctrine Where the Felony Ruled upon Is an Includable Offense with the Homicide,* 40 A.L.R. 3d 1341 (1971 & Supp. 1997). The cases vary substantially and there is no generally accepted premise for the rule.

The District of Columbia Court of Appeals has rejected *Wilson. Blango v. United States,* 373 A.2d 885 (D.C.App.1977); *Harris v. United States,* 377 A.2d 34 (D.C.App. 1977). Many state cases have refused to follow the *Wilson* analysis based on different state social interests and differing statutory construction. They have reached differing positions on the merger doctrine. *Blango, supra; State v. Rueckert,* 221 Kan. 727, 561 P.2d 850 (1977); *Battles v. State,* 262 Ga. 415, 420 S.E.2d 303 (1992); *Smith v. State,* 499 So.2d 750, 754 (Miss.1986); *State v. O'Blasney,* 297 N.W.2d 797 (S.D.1980); *State v. Tremblay,* 4 Or.App. 512, 479 P.2d 507 (1971); *State v. Morris,* 241 Or. 253, 405 P.2d 369 (Or. 1965); *People v. Jones,* 209 Mich.App. 212, 530 N.W.2d 128 (1995) (Michigan policy is to provide graduated punishment not deter accidental killing). See especially *Rodriguez v. State,* 953 S.W.2d 342, 346–54 (Tex.App.1997); *State v. Thompson,* 88 Wash.2d 13, 558 P.2d 202, 205 (1977). A state by state analysis shows various positions and different policies. There is no fully accepted concept of the merger doctrine and therefore no settled law. See Paul H. Robinson, *Criminal Law Defenses* § 103(b).

In this case, the petitioner presented the matter to the Utah Supreme Court as a state law issue. *Tillman* I, 750 P.2d at 568–572. The Utah court considered the matter based on the intent of the legislature. *Id.* at 569. The Utah first degree murder statute is a modified form of the Model Penal Code approach to aggravating circumstances in an effort to narrow the situations in which the death penalty may be invoked. Utah did not leave the aggravators to sentencing but made them elements of the first degree murder definition. *Id.* at 570. The Court said the *Wilson* concerns were not present in the Utah statute. *Id.* at 570–71. The Utah Court's focus was in analyzing the issue from the perspective of the death penalty and concluded a literal reading of the statute was required. *Id.* at 571 n. 99. It concluded:

> Accordingly, the above analysis supports the conclusion that under Utah Code Ann. § 76–5–202, which itself draws no distinction between felonies that are committed independent of the murder and those that are not, a defendant commits first degree murder if it is committed knowingly or intentionally in conjunction with the commission of any one of several enumerated

---

**37.** See also *People v. Taylor,* 11 Cal.App.3d 57, 89 Cal.Rptr. 697 (Cal.App.1970).

felonies, even if the felony is an integral part of, or merely incidental to, the murder.

750 P.2d at 571.

The decision rejected *People v. Wilson,* *supra,* and observed that state legislatures are afforded wide latitude in defining criminal conduct. The Utah court gave no consideration to a substantive due process analysis. The precise claim raised by petitioner in this court was not presented to the Utah Supreme Court. It decided the issue as a matter of state law. To this extent respondent is partially correct in arguing the contention is one of state law. However, the petitioner *now* argues the failure to apply the merger doctrine renders the Utah statute unconstitutional as applied. This is a federal claim based on substantive due process. It is not a matter of state law, but one of federal constitutional law never raised in state court. The respondent has not argued a procedural bar based on failure to exhaust state remedies under 28 U.S.C. § 2254 and a present bar because there is no longer any available state remedy. It could have been argued that this court cannot consider the issue because of a state procedural bar. No such argument was made. The issue is before this court for the first time as a *federal* constitutional issue.

█ Respondent contends a requirement for the merger argument would be a "new rule" and therefore barred by *Teague v. Lane,* 489 U.S. 288, 109 S.Ct. 1060, 103 L.Ed.2d 334 (1989). Respondent is correct that a new rule would be created if this court were to accept petitioner's argument. There is no precedent for petitioner's contention. *O'Dell v. Netherland,* 521 U.S. 151, 117 S.Ct. 1969, 138 L.Ed.2d 351 (1997). However, the issue is not one barred by *Teague v. Lane.* *Teague* applies to a new rule of criminal procedure. 489 U.S. at 311, 109 S.Ct. 1060. *Saffle v. Parks,* 494 U.S. at 495, 110 S.Ct. 1257. A claim of a procedural nature cannot avoid *Teague's* limitation merely by asserting the argument in substantive terms. *Goeke v. Branch,* 514 U.S. 115, 115 S.Ct. 1275, 131 L.Ed.2d 152 (1995). If, however, the claim is one of a "substantive" categorical guarantee accorded by the Constitution, such as a rule "prohibiting a certain category of punishment," the matter is outside of *Teague.* *Saffle,* 494 U.S. at 494, 110 S.Ct. 1257; *Penry v.*

*Lynaugh,* 492 U.S. at 329, 330, 109 S.Ct. 2934; *Bilzerian v. United States,* 127 F.3d 237 (2d Cir.1997); *Hernandez–Rodriguez v. Pasquarell,* 118 F.3d 1034, 1044 (5th Cir. 1997). This is actually what the petitioner's merger argument is.

█ Therefore, the merits of the claim must be addressed. It is apparent that there is no settled standard as to the "merger doctrine" in felony murder cases. Some courts reject the concept, some apply it but in different circumstances. This makes it impossible to attribute a specific fundamental basis to petitioner's claim. The Utah Supreme Court did not violate any recognized substantive due process standard in rejecting the merger doctrine and finding the offense aggravators in the Utah statute were legislatively intended and based on a purpose of narrowing the eligibility prong for the capital sanction.

The Utah Supreme Court correctly noted that states have wide latitude in defining their substantive crimes. The respondent bears the burden of showing his contention is "so rooted in the traditions and conscience of our people as to be ranked as fundamental." *Patterson v. New York,* 432 U.S. 197, 202, 97 S.Ct. 2319, 53 L.Ed.2d 281 (1977). In *Patterson* the court noted "preventing and dealing with crime is much more the business of the States than it is of the Federal Government, and we should not lightly construe the Constitution so as to intrude upon the administration of justice by the individual states." *Id.* (citation omitted).

In *Montana v. Egelhoff,* 518 U.S. 37, 116 S.Ct. 2013, 135 L.Ed.2d 361 (1996), the Supreme Court held that *Montana* did not violate due process by eliminating the defense of intoxication. The court said "the preliminary guide in determining whether the principle in question is fundamental is, of course, historical practice." *Id.* at 2017. The merger doctrine has no firm recognition in the history of American law and is contrary to early English and American law. Charles E. Torcia, *Wharton's Criminal Law,* § 147 (15th ed.1994); Perkins & Boyce, *Criminal Law* 136–137 (3d ed.1982). Paul H. Robinson, *Criminal Law Defenses,* § 103(b) p. 498 (1984) states that "the difficulty arising from

the merger doctrine lies in determining which underlying felonies should merge.... Existing explanations of the merger doctrine offer little guidance in more selectively describing the underlying felonies that merge." See *Rowe v. DeBruyn*, 17 F.3d 1047 (7th Cir.1994)(Right of self defense is not a fundamental constitutional right within the due process clause); see also *Martin v. Ohio*, 480 U.S. 228, 107 S.Ct. 1098, 94 L.Ed.2d 267 (1987); *Leland v. Oregon*, 343 U.S. 790, 72 S.Ct. 1002, 96 L.Ed. 1302 (1952); *United States v. Ransom*, 942 F.2d 775 (10th Cir.1991)(Before a defendant may prevail on a claim that a state offense offends due process it must be shown that the legislative practice offends a principle of justice so rooted in traditions and conscience of the people as to be ranked as fundamental). In *Montana v. Egelhoff,* the court cautioned that not every "rule favorable to criminal defendants establishes a fundamental principle of justice." 116 S.Ct. at 2021.

The petitioner has not shown that the merger rule is fundamental and therefore cannot claim its benefits as a matter of substantive due process of law.

The conclusion comports with the position of other federal courts. In *State v. Beeman*, 315 N.W.2d 770, 776–777 (Iowa 1982), the Iowa Supreme Court rejected the application of the merger doctrine. In *Ragland v. Hundley*, 79 F.3d 702 (8th Cir.1996), a state petitioner challenged the Iowa position on habeas corpus under 28 U.S.C. § 2254. The court rejected the petitioner's claims. First, it concluded there was no merit to a double jeopardy argument. 79 F.3d at 704. Second, the court held that under *Estelle v. McGuire*, 502 U.S. 62, 112 S.Ct. 475, 116 L.Ed.2d 385 (1991), it was bound by the State's interpretation of its law. The court rejected petitioner's argument that allowing "felonious assault" as the underlying felony, violated due process. The court had rejected the same argument in *Heaton v. Nix*, 924 F.2d 130, 134 (8th Cir.1991) The court in *Ragland* said of its prior holding, "The court found that Iowa's specific inclusion of 'felonious assault' as a basis for felony murder and refusal to apply the merger doctrine to such situations was determinative." 79 F.3d at 705.

In *Rhode v. Olk–Long*, 84 F.3d 284 (8th Cir.1996), defendant was convicted of felony murder based on the underlying offense of child endangerment. Defendant claimed due process precluded using child endangerment as an offense for felony murder. The court denied relief:

Rhode's argument that the Iowa court was precluded from using her participation in child endangerment to convict her of first degree murder lacks a constitutional basis. *See Heaton v. Nix,* 924 F.2d 130, 134 (8th Cir.1991), *cert. denied,* 500 U.S. 956, 111 S.Ct. 2266, 114 L.Ed.2d 718 (1991). Rhode is essentially arguing for the merger doctrine, which bars using felonies that are an integral part of a homicide to support a felony murder conviction. The Supreme Court of Iowa has rejected the merger doctrine for forcible felonies such as child endangerment. *State v. Beeman,* 315 N.W.2d 770, 776–77 (Iowa 1982). Even if it had not, violations of state law cannot serve as a basis for federal habeas relief, and Rhode fails to cite a single federal case (nor are we aware of any) that supports her due process argument.

84 F.3d at 289.

Petitioner's claim has no basis in substantive due process and must be rejected.

*Jury Instructions*

The petitioner in the second part of his (F) argument asserts that Utah Code Ann. § 76–5–202(1)(d) was unconstitutional as applied. He contends that the jury instructions unconstitutionally precluded the jury from deliberating on a meaningful distinction between capital and non-capital murder (File Entry # 3 p. 38). This argument, and others raised allied to it, is not related to the merger doctrine so that the petitioner's two points under subsection (F) of his memorandum are in fact distinct. This issue does not necessarily relate to an application of the first degree murder statute. Petitioner asserts the issue was raised on direct appeal and in his state habeas proceeding.

In fact, the issue raised by petitioner in this case is different than that raised before the Utah Courts. The petitioner in the first part of his memorandum seems to say the *instructions* on first and second degree mur-

der under Utah law did not allow for a meaningful distinction between the various kinds of murder. However, in petitioner's memorandum (File Entry # 2, at 39), the petitioner references the failure of the trial court to given an instruction on the need for *uniformity* with regard to the means of commission of murder. Then petitioner argues the jury could not distinguish between capital and non-capital murder and murder in the second degree under Utah Code Ann. § 76–5–203.

The Utah Supreme Court in *Tillman* I, 750 P.2d at 563, observed that petitioner did not request a unanimity instruction, did not object to the instructions given the jury or request a special verdict form. The Court also indicated the petitioner's argument was presented as one that the instructions allowed the jury to reach a verdict without being unanimous, denying petitioner a unanimous verdict as required by Article I § 10, Utah Constitution and Utah Code Ann. § 77–35–21(b) (1982). The issue was thus presented exclusively as an issue of state law.

In addressing the issue the Utah Supreme Court said:

Under our statute, so far as applicable to the case before us, proof beyond a reasonable doubt that defendant intentionally or knowingly killed the victim in connection with an aggravated arson or arson or burglary or aggravated burglary establishes guilt of the crime charged. Here, there was only one actus reus for the crime charged, causing the death of another. There are not alternatives for the actus reus of the charged crime. Rather, there are objective circumstances which evaluate and aggravate the singular actus reus.

The aggravating circumstances portion of the statute reflects the fact that the legislature considered certain intentional killings to be especially reprehensible either because of the invasion of special societal interests, because of the status of the killer or the victim, because of the manner in which death occurred, and/or because the killer contemporaneously committed other serious acts. These circumstances are not only morally reprehensible, but also increase the risk of societal harm and additional crime and violence such that they presuppose the actor's cognizance of the creation and existence of significant homicidal risk. Since this increased risk is not reasonable or justifiable by any valid purpose that the individual's conduct serves, the legislature has seen fit to increase the criminal nature of the crime.

Furthermore, although defense counsel did not request separate verdict forms and the general verdict did not note the specific evaluative circumstance(s) the jury relied upon, the record contains ample evidence, both eyewitness testimony and physical evidence, to support a jury verdict that at the time of the commission of the homicide, defendant intentionally and knowingly caused the death of the victim under any one of the several objective aggravating circumstances at issue and specified in subsection 76–5–202(1)(d). The jurors could have believed defendant committed the murder under any of the aggravating circumstances since each circumstance was supported by the evidence and the proof of any or all beyond a reasonable doubt satisfied the same circumstance requirement under the first degree murder offense. Where the evidence overwhelmingly supports a conviction under one variation of a crime submitted to the jury, we have already stated that we may not reverse a conviction even if there was erroneous instruction on another variation. Likewise, a defendant who makes " 'no request for an instruction which would enable him to know which theory the jury adopted' cannot complain of insufficiency of the evidence for one theory of first degree murder when there was ample evidence under either theory." To allow the same would be to invite error.

Also, as long as the record reveals a sufficient evidentiary basis for the conviction of first degree murder as to insure that this Court can conduct a comprehensive review of the proceedings and insure that the death penalty was not arbitrarily and capriciously imposed, the concerns of *Furman v. Georgia* are met. Hence, jury unanimity on the evaluating circumstances is not required so long as the evidence supports the conviction with the alternative circumstances aggravating the crime charged.

This conclusion, in part, is supported by the recent decision of the Tenth Circuit Court of Appeals in *Andrews v. Shulsen.* On appeal from the United States District Court for the District of Utah, defendant Andrews argued that one of the aggravating circumstances submitted to the jury in his case, "killing for personal gain," could not withstand scrutiny. Specifically, he contended that this aggravating circumstance was constitutionally over broad because "every deliberate homicide could be viewed as committed for the benefit of the perpetrator." The Court of Appeals did not reach the merit of this contention because Andrews failed to preserve this claim in state court. However, the court noted:

> Even if the "personal gain" aggravating circumstance is constitutionally over broad, we are required to sustain Andrews' death sentences because of the *unimpeachable presence* of two other statutory grounds. The case was submitted to this jury on six theories of aggravation.... *Although the jury did not specify which of these aggravating circumstances it had found, the Eighth Amendment does not require a jury to identify the aggravating circumstances it has relied upon to convict a capital defendant under a statute such as Utah's, See Jurek,* 428 U.S. at 265 n. 1, 267–68, 96 S.Ct. at 2953 n. 1, 2954.

While the jury in *Andrews* did not specify in writing the statutory aggravating circumstance(s) it relied upon, the Tenth Circuit held that the jury's determination was reliable notwithstanding the general verdict of guilt. In holding so, the court observed that Andrews' convictions rested upon at least two well-founded statutory aggravating circumstances "which, under the Utah statute, place him in the restrictive class of defendants who may be sentenced to death."

Here, the trial court instructed the jury as to the requirement of a unanimous verdict. The jury returned a unanimous verdict. The jury was polled, and each juror affirmed the verdict to be his or her own. Therefore, defendant was convicted by a unanimous jury as required by the Utah Constitution. Accordingly, we should follow the *Sullivan* rule in cases where a defendant is convicted of a single offense and the jury is instructed disjunctively as to the alternative evaluating circumstances aggravating that offense. Article I, section 10 of the Utah Constitution and Utah Code Ann. § 77–35–21(b) should be interpreted to require only that a jury be unanimous in concluding beyond a reasonable doubt that a defendant committed the single offense proscribed in the statute. Such rule is supported by this Court's past handling of other cases wherein we were faced with a similar question.

750 P.2d at 565–567 (footnotes omitted).

It is apparent from the record that the issue was presented only as a state law question in *Tillman* I.

In *Tillman* II on state post conviction proceedings, the same issue was raised again, 855 P.2d at 216, and this time a federal element was asserted based on *Mills v. Maryland,* 486 U.S. 367, 108 S.Ct. 1860, 100 L.Ed.2d 384 (1988). The Utah Supreme Court found *Mills* inapplicable as it dealt with improper employment of a unanimity standard as to mitigation factors in the penalty phase, an issue not involved in this case. The Utah Supreme Court said, "Federal Constitutional law does not require unanimity in state cases with respect to a particular aggravating circumstance to uphold a state's capital offense conviction." 855 P.2d at 216. Therefore, the issue resolved as a federal issue in *Tillman* II was the unanimity standard also addressed as a state issue. Nothing was addressed as to confusion between First Degree and Second Degree murder. The only issue remotely involving that argument was with regard to a claim of ineffectiveness of defense counsel in tendering an allegedly overly broad second degree murder instruction. *Tillman* II, 855 P.2d at 222. No specific issue as to confusion between first and second degree murder instructions in the guilt phase was ever presented to the Utah courts or discussed. This is not exhaustion of state remedies. *Duncan v. Henry,* 513 U.S. 364, 115 S.Ct. 887, 130 L.Ed.2d 865 (1995); *Anderson v. Harless,* 459 U.S. 4, 103 S.Ct. 276, 74 L.Ed.2d 3 (1982); *Picard v. Connor,* 404 U.S. 270, 92 S.Ct. 509, 30

L.Ed.2d 438 (1971). This is not merely the presentation of additional facts on an issue, *Vasquez v. Hillery,* 474 U.S. 254, 106 S.Ct. 617, 88 L.Ed.2d 598 (1986), but an entirely different argument.

This difference was not appreciated by respondent. There is no claim that the issue had not been exhausted and no claim by respondent of a procedural default has been raised. Therefore, any issue of exhaustion or procedural default has been waived by respondent. *Granberry v. Greer,* 481 U.S. 129, 107 S.Ct. 1671, 95 L.Ed.2d 119 (1987); *Lawson v. Dixon,* 3 F.3d 743 (4th Cir.1993) [38] (exhaustion waiver); *Engle v. Isaac,* 456 U.S. 107, 124 n. 26, 102 S.Ct. 1558, 71 L.Ed.2d 783 (1982); *Wealot v. Armontrout,* 948 F.2d 497, 499 (8th Cir.1991) (procedural default waived); *Richmond v. Embry,* 122 F.3d 866, 869 n. 2 (10th Cir.1997); *Hoxsie v. Kerby,* 108 F.3d 1239, 1242 (10th Cir.1997).

■ The respondent, however, has asserted that petitioner's claim that a unanimity instruction was required would be a "new rule" under *Teague v. Lane, supra,* and therefore petitioner's claim is barred (File Entry # 9 at 48). The respondent's contention as to the issue is correct as to the unanimity argument. As this court noted before, in addressing the petitioner's claim on a special verdict requirement, the claim of a need for a special procedure to assure unanimity on an alternative means of committing an offense would be a "new rule" under *Teague.*

It should be remembered that there was only one count charged against petitioner, but four aggravators were alleged for first degree murder. The trial judge did give an instruction to the jury that its verdict had to be unanimous. The trial judge did not instruct that it had to be unanimous as to each aggravator. No such instruction was requested by petitioner. There was nothing in the instructions that suggested anything to the contrary, that unanimity was not required.

The petitioner cites to no decision that would support a claim that the Constitution as of 1988 required a unanimity instruction beyond a general unanimity instruction in a state criminal case. The petitioner candidly admits that the Supreme Court has in other cases not imposed a unanimity requirement for a jury in state criminal prosecutions. *Apodaca v. Oregon,* 406 U.S. 404, 92 S.Ct. 1628, 32 L.Ed.2d 184 (1972). See also *Johnson v. Louisiana,* 406 U.S. 356, 359–63, 92 S.Ct. 1620, 32 L.Ed.2d 152 (1972); *United States v. Edmonds,* 80 F.3d 810, 816 n. 6 (3rd Cir.1996). No decision to the contrary has been found.

In *Schad v. Arizona,* 501 U.S. 624, 630–31, 111 S.Ct. 2491, 115 L.Ed.2d 555 (1991), the Supreme Court addressed the issue of state law and a requirement for unanimity for multiple act offenses. The court in *Schad* referred to *Andersen v. United States,* 170 U.S. 481, 18 S.Ct. 689, 42 L.Ed. 1116 (1898) where the Supreme Court sustained a murder conviction against a challenge that the indictment alleged death by both shooting or drowning. In *Schad* the Court said, "We have never suggested that in returning general verdicts in such cases, the jurors should be required to agree upon a single means of commission, any more than the indictments were required to specify one alone." *Id.* at 631, 111 S.Ct. 2491. Any rule as proposed by petitioner would contradict the Court's observation in *Schad.* The Court then said:

> In these cases, as in litigation generally, "different jurors may be persuaded by different pieces of evidence, even when they agree upon the bottom line. Plainly there is no general requirement that the jury reach agreement on the preliminary factual issues which underlie the verdict." *McKoy v. North Carolina,* 494 U.S. 433, 449, 110 S.Ct. 1227, 108 L.Ed.2d 369 (1990) (BLACKMUN, J., concurring) (footnotes omitted).

The alternatives in the cases cited went, of course, to possibilities for proving the requisite *actus reus,* while the present case involves a general verdict predicated on the possibility of combining findings of what can best be described as alternative mental states, the one being premeditation,

---

**38.** The recent amendments to 28 U.S.C. § 2254(b)(3) would not necessarily allow a waiver of exhaustion without an express waiver by respondent's counsel. However, at hearing on this petition, the respondent's counsel conceded exhaustion (Tr. 11/9/95 at 1).

the other the intent required for murder combined with the commission of an independently culpable felony. *See State v. Serna*, 69 Ariz. 181, 188, 211 P.2d 455, 459 (1949) (in Arizona, the attempt to commit a robbery is "the legal equivalent of. . . . deliberation, premeditation, and design"). We see no reason, however, why the rule that the jury need not agree as to mere means of satisfying the *actus reus* element of an offense should not apply equally to alternative means of satisfying the element of *mens rea.*

501 U.S. at 631–632, 111 S.Ct. 2491 (footnote omitted). The one requirement the Court specified was with regard to a standard of vagueness for the definition of the crime. There is no such claim in this case. In addition, as the Utah Supreme Court pointed out in *Tillman* I, there is only one actus reus; the aggravators are the acts that can give rise to a conviction for first degree murder. In *Schad*, the majority rejected a requirement for maximum verdict specificity 501 U.S. at 635–36, 111 S.Ct. 2491.

It must be concluded that petitioner's contention that a special unanimity instruction was required would be a new rule under *Teague v. Lane, supra,* and is therefore barred. See *Davis v. Maynard*, 911 F.2d 415 (10th Cir.1990).

■■■ Even if not barred by *Teague,* the claim of a Constitutional violation must be rejected on its merits. Where no instruction was requested, the burden on petitioner to show a basis for relief is very heavy. *Henderson v. Kibbe*, 431 U.S. 145, 155, 97 S.Ct. 1730, 52 L.Ed.2d 203 (1977); *Jeffries v. Blodgett,* 5 F.3d 1180, 1194 (9th Cir.1993). The general rule applicable in federal courts is that a general unanimity instruction is adequate absent a showing that the case was unique or there is a real danger of confusion. *United States v. Hager,* 969 F.2d 883 (10th Cir.1992); *United States v. Nash,* 115 F.3d 1431 (9th Cir.1997); *United States v. Chandler,* 98 F.3d 711 (2d Cir.1996); *United States v. Schiff,* 801 F.2d 108 (2d Cir.1986).

In *United States v. Phillips,* 869 F.2d 1361 (10th Cir.1988), the defendant contended an instruction given deprived him of a unanimous verdict because of the need to find a document was falsely made *and* forged. The Court said that because of the lack of a unanimity instruction request the matter was viewed from the standpoint of plain error. *Id.* at 1366. It then said:

In this circuit, as in most others, "it is assumed that a general instruction on the requirement of unanimity suffices to instruct the jury that they must be unanimous on whatever specifications they find to be the predicate of the guilty verdict." *United States v. McClure,* 734 F.2d 484, 494 (10th Cir.1984) (citing *United States v. Murray,* 618 F.2d 892, 898 (2d Cir.1980); *see also Beros,* 833 F.2d at 460; *Payseno,* 782 F.2d at 835; *United States v. Williams,* 737 F.2d 594, 614 (7th Cir.1984), *cert. denied,* 470 U.S. 1003, 105 S.Ct. 1354, 84 L.Ed.2d 377 (1985); *United States v. Johnson,* 713 F.2d 633, 646 n. 14 (11th Cir.1983), *cert. denied,* 465 U.S. 1081, 104 S.Ct. 1447, 79 L.Ed.2d 766 (1984). Therefore, we assume that the jury unanimously reached a decision as to all factual predicates on which it based Phillips' conviction.

"In the final analysis, 'only common sense and intuition can define the specificity with which the jury must describe the defendant's conduct before it convicts.' Note, *Right to Jury Unanimity on Material Fact Issues,* 91 Harv.L.Rev. 499, 502 (1977). That common sense and intuition, in turn, is informed by the circumstances of the case and the arguments of the parties. In the absence of an appropriate unanimity instruction tendered by the defendant, we will not reverse the convictions on the ground of faulty instruction."

*Williams,* 737 F.2d at 614 (citing *United States v. Pavloski,* 574 F.2d 933, 936 (7th Cir.1978)).

869 F.2d at 1366–67. The Court found the general unanimity instruction to suffice. See *United States v. McClure,* 734 F.2d 484 (10th Cir.1984).

In *United States v. Hager,* 969 F.2d 883 (10th Cir.1992), the Court held a general unanimity instruction was sufficient and not plain error. The Court also noted no unanimity instruction was tendered and the case was not complex. *Id.* at 891. A similar result was reached with the same reasoning

in *United States v. Linn,* 31 F.3d 987 (10th Cir.1994); *United States v. Jaynes,* 75 F.3d 1493, 1502 n. 7 (10th Cir.1996) ("In this circuit, as in most others, 'it is assumed that a general instruction on the requirement of unanimity suffices to instruct the jury that they must be unanimous on whatever specifications they find to be the predicate of the guilty verdict.'") (citing cases).

In *United States v. Wiles,* 102 F.3d 1043 (10th Cir.1996) on rehearing 106 F.3d 1516 (10th Cir.1997) defendant was charged with a single offense of securities fraud involving a "multitude of ways and courses of action." *Id.* at 1062. The jury had asked a question about unanimity. The defendant contended that the jury's question showed they did not understand the court's unanimity instruction and the chance of a nonunanimous verdict was significant. The Court said defendant's "speculation is insufficient to cast doubt upon the jury's verdict." *Id.* Although the trial court addressed the matter again, the Tenth Circuit observed, relevant to this case, that it must be presumed the jury followed the court's instruction on unanimity.

Other decisions support the conclusion that there was no error in the instructions in this case, even assuming a federal unanimity standard were to be applied. *United States v. Sasser,* 971 F.2d 470 (10th Cir.1992); *United States v. Bedonie,* 913 F.2d 782 (10th Cir.1990); *United States v. Chandler,* 98 F.3d 711 (2d Cir.1996); *United States v. Correa–Ventura,* 6 F.3d 1070 (5th Cir.1993); *United States v. Edmonds,* 80 F.3d 810, 815–816 n. 6 (3d Cir.1996); *United States v. Gilley,* 836 F.2d 1206 (9th Cir.1988); *United States v. Jackson,* 72 F.3d 1370 (9th Cir.1995).

In this case, a unanimity instruction was given, no objection or other request was made, petitioner has not shown any actual likelihood of confusion but merely speculated as to the possibility. It is presumed the jury followed the general unanimity instruction. *Wiles, supra.* Therefore, there could be no due process violation or denial of a fair trial even if the federal standard of unanimity were required to be adopted.

However, applying the previously noted position in *Schad v. Arizona, supra,* there can be no legitimate contention of an instructional error or constitutional misapplication by the jury with regard to the unanimity of the verdict. There was no federal constitutional violation as to this matter.

Finally, the petitioner suggests the instructions were likely to produce confusion and prevent the jury from making a proper distinction between first and second degree murder. Petitioner has not really developed this issue but placed it in his memorandum as part of the general contention of the unconstitutionality of the Utah first degree murder statute as applied. Petitioner does not say in what way there was or could have been confusion.

The difference between first and second degree murder in Utah, committed during the course of other crimes, is that first degree murder requires a state of mind of an "intentional or knowing" killing, Utah Code Ann. § 76–5–202(1)(d), whereas second degree murder does not require such a mental state. Utah Code Ann. § 76–5–203.[39] The distinction is clear. In addition, second degree murder can be committed by intentionally or knowingly causing death without any aggravating circumstances, Utah Code Ann. § 76–5–203(1)(a), or by intending to cause serious bodily harm, § 203(1)(b), or by killing under circumstances evidencing depraved indifference § 203(1)(c). (Instruction # 16, at R. 195). These are lesser included offenses to first degree murder. See *State v. Bishop,* 753 P.2d 439 (Utah 1988). The instructions covered second degree murder in the terms of the statute and clearly set forth the distinction. There is no suggestion of the source of any confusion; the petitioner's argument is hypothetical and academic. Again no exception was taken and petitioner's counsel submitted a similar instruction. Petitioner simply does not advise the court of the basis for his argument.

In order for petitioner to prevail on this issue, he would have to show a violation of due process. Instructional error, based on a

---

**39.** In another Utah case under § 76–5–202, *State v. Hansen,* 734 P.2d 421 (Utah 1986), the court held the failure to give a second degree murder instruction was prejudicial error.

state departure from a model instruction, is not the standard in a federal habeas corpus review of a claim of state instructional error. *Estelle v. McGuire*, 502 U.S. 62, 72, 112 S.Ct. 475, 116 L.Ed.2d 385 (1991) ("The only question for us is 'whether the ailing instruction by itself so infected the entire trial that the resulting conviction violates due process'."). In *Hunter v. New Mexico*, 916 F.2d 595 (10th Cir.1990), the court citing *Henderson v. Kibbe, supra*, referred to the habeas petitioner's "great burden" when seeking to collaterally attack a state court instruction. *Id.* at 598. The Court then said:

> It is a long-standing principle that " 'habeas proceedings may not be used to set aside a state conviction on the basis of erroneous jury instructions unless the errors had the effect of rendering the trial so fundamentally unfair as to cause a denial of a fair trial in the constitutional sense.' "

*Id.* See also *Shafer v. Stratton*, 906 F.2d 506, 507 (10th Cir.1990); *Brinlee v. Crisp*, 608 F.2d 839, 854 (10th Cir.1979). In *Estelle v. McGuire*, the Court further cautioned,

> (" '[I]t must be established not merely that the instruction is undesirable, erroneous, or even "universally condemned," but that it violated some [constitutional right]' "). It is well established that the instruction "may not be judged in artificial isolation," but must be considered in the context of the instructions as a whole and the trial record. *Cupp v. Naughten, supra*, 414 U.S., at 147[, 94 S.Ct. 396]. In addition, in reviewing an ambiguous instruction such as the one at issue here, we inquire "whether there is a reasonable likelihood that the jury has applied the challenged instruction in a way" that violates the Constitution.

502 U.S. at 72, 112 S.Ct. 475.

The same high standard has been followed in several other cases in this Circuit. *Maes v. Thomas*, 46 F.3d 979, 984 (10th Cir.1995) (heavy burden rest on habeas petitioner in an effort to set aside a state conviction based on an erroneous instruction); *Jones v. Stotts*, 59 F.3d 143, 146 (10th Cir.1995) (A state conviction may be set aside because of erroneous jury instructions only when the error denied the defendant a fair trial); *Odum v. Boone*, 62 F.3d 327, 330 (10th Cir.1995) (Errors in a state instruction must have the "effect of rendering a trial so fundamentally unfair as to cause a denial of a fair trial.").

In *Nguyen v. Reynolds*, 131 F.3d 1340 (10th Cir.1997) petitioner, who had been convicted of first degree murder in Oklahoma and sentenced to death, challenged a state court instruction by a petition under 28 U.S.C. § 2254. The Oklahoma trial court gave an instruction on flight which petitioner contended was inconsistent with the presumption of innocence. The court stated the general rule that instructional error will not provide a basis for relief on habeas corpus "unless they are so fundamentally unfair as to deprive petitioner of a fair trial and to due process of law." *Id.* at 1357. The court cited to *Henderson v. Kibbe, supra*, and *Cupp v. Naughten*, 414 U.S. 141, 94 S.Ct. 396, 38 L.Ed.2d 368 (1973). The court quoted from *Maes, supra*:

> "The burden of demonstrating that an erroneous instruction was so prejudicial that it will support a collateral attack on the constitutional validity of a state court's judgment is even greater than the showing required to establish plain error on direct appeal." The question ... is not whether the [challenged] instruction is "undesirable, erroneous, or even 'universally condemned,' " but whether the instruction so infected the trial that the resulting conviction violates due process.

*Id.* (quoting *Maes*, 46 F.3d at 984). The court held Nguyen could not meet the high standard.

In this case, petitioner Tillman cannot meet the burden as to any confusion as to the difference between First Degree and Second Degree murder under Utah law. Petitioner has not articulated the basis for his argument. The instructions were in complete compliance with Utah law, no objection to the instruction was raised by petitioner, and, in fact, petitioner's trial counsel requested the instruction given.

There is no merit to the petitioner's claim that he is entitled to relief on the basis of instructional error or that the Utah First Degree murder statute was unconstitutionally applied in this case.

*Petitioner's Claim That Evidence of Guilt of the Aggravating Circumstances of Arson Was Insufficient and Use of Such Factors at Sentencing Violated Due Process*

The petitioner contends the evidence of guilt on the aggravating acts of arson and aggravated arson at the guilt phase was insufficient and therefore they could not be used at the sentencing phase. Petitioner concedes this argument "reiterates arguments already made in prior sections ...." The Utah Supreme Court found the evidence sufficient for each of the possible aggravating acts in Utah Code Ann. § 76–5–202(1)(d). *Tillman* II, 855 P.2d at 217–20. Petitioner does not challenge the sufficiency of the aggravators for burglary and aggravated burglary and the evidence has previously been determined to be clearly sufficient for arson.[40] Consequently, the evidence was sufficient as to some of the aggravators even if petitioner's position were accepted as to aggravated arson.[41]

Petitioner contends he exhausted this issue in the Utah Supreme Court in *Tillman* II. This may not be correct. The Utah Supreme Court's opinion held that the evidence was sufficient as to all of the aggravating circumstances in the guilt phase but petitioner did not argue that the insufficiency he contended for may have affected the *sentencing phase*. This issue is not shown to have been exhausted in the Utah courts. The respondent did not initially raise a procedural default claim (File Entry # 9 at 49–51). However, a supplemental memorandum was submitted contending that this issue was procedurally defaulted (File Entry # 18). The petitioner's initial petition was dismissed as a mixed opinion by Judge Greene and this issue was one of those determined not to have been exhausted at that time. Petitioner has not challenged that conclusion in this petition, nor could he effectively do so (April 10, 1995). The issue now raised by petitioner was one of the issues that was presented to the Utah Supreme Court (*Tillman* III,

unreported) (second habeas petition to Utah Supreme Court April 25, 1995, Exhibit 3, Respondent's Memo, File Entry # 9) after this court's dismissal of petitioner's prior mixed petition. The Utah Supreme Court heard one argument in *Tillman* III and then entered an order: "The state's motion to dismiss the petition is granted. The petitioner's claims are procedurally defaulted from consideration by this court." (6/10/95, Michael D. Zimmerman, Chief Justice) (*Id.* Exhibit 3, File Entry # 9). Respondent argues the petitioner is therefore procedurally defaulted on this issue by the order in *Tillman* III (File Entry # 19). Petitioner did not file a written reply to this argument, nor did petitioner address the procedural default issue at oral argument (Tr. 11/9/95, at 62–72). The petitioner had seen the respondent's supplemental petition making the procedural default claim. (*Id.* at 72). The respondent also argued procedural default at the hearing on this matter (Tr. 11/9/95, at 73–74). The petitioner did not request an additional opportunity to address this matter and did not respond to the argument at hearing. Therefore, it is appropriate to determine if this issue is procedurally defaulted.

The petitioner did not raise the issue of sufficiency of the evidence of the aggravators under § 76–5–202(1)(d) as it may affect the jury's sentence on either his direct appeal, *Tillman* I, *supra,* or on his first petition for habeas corpus. *Tillman* II, *supra.* There is no reason petitioner could not have raised the issue since he did raise the issue of sufficiency of the evidence in a guilt context for the arson aggravators in *Tillman* II. Petitioner has provided no explanation for not having raised the issue. See *Joubert v. Hopkins,* 75 F.3d 1232 (8th Cir.1996) (issue on the aggravator in capital case was not fairly presented to state court and the claim is procedurally barred). In *Tillman* III, the Utah Supreme Court treated the matter as procedurally defaulted. The statement of

---

**40.** Petitioner's refusal to accept the Utah court's construction of its own statute as to the meaning of "arson" in § 76–5–202(1)(d) can avail himself nothing in this court. The construction binds this court.

**41.** This is not to conclude this court has accepted the petitioner's argument on aggravated arson only that even if petitioner were correct, his contention would fail. It is therefore not necessary to consider the factual sufficiency of the aggravated arson aggravator.

the Utah Supreme Court was specific and direct. *Harris v. Reed, supra; Coleman v. Thompson, supra.* It was not ambiguous in any aspect. The court did not otherwise address the merits and therefore no claim of waiver can be raised *Harris, supra; Coleman, supra; Klein v. Neal, supra.* The independent and adequate state ground as a procedural bar is directly presented.

There can be no claim that there is any exception for cause and prejudice because none exists and petitioner, on whom the burden to establish such exception rests, has not advanced any such justification. *Sawyer v. Whitley,* 505 U.S. 333, 112 S.Ct. 2514, 120 L.Ed.2d 269 (1992); *Murray v. Carrier,* 477 U.S. 478, 488, 106 S.Ct. 2639, 91 L.Ed.2d 397 (1986); *Hoxsie v. Kerby, supra; Andrews v. Shulsen,* 802 F.2d 1256 (10th Cir.1986). Petitioner cannot claim the Utah court has acted inconsistently. No case has been cited to the effect that the Utah court has previously in an issue of this general nature which was raised on third appellate review and on a second petition for habeas corpus, allowed a petitioner to proceed. The petitioner bears the burden of showing uneven application of the state procedural default rule. *Dugger v. Adams, supra; Andrews v. Deland, supra; Stokes v. Anderson, supra.* Petitioner has not carried that burden or made an effort to do so. The issue has not been addressed.

Consequently, it must be concluded that petitioner's claim on this issue is procedurally defaulted. *Wainwright v. Sykes, supra; Coleman v. Thompson, supra.*

■ The respondent also argues that the petitioner's claim on this point is barred under the doctrine of *Teague v. Lane, supra.* This requires construction of plaintiff's claim. The trial judge in the sentencing phase instructed the jury that it was to consider all facts and circumstances in aggravation and mitigation and the jury could only consider evidence presented by the state or the defendant during the guilt and penalty phases of the trial (R. at 289, Inst. # 5). The jury was instructed that it could consider as aggravating circumstances "the very matters which [it] found to be present beyond a reasonable doubt as elements of first degree murder in the guilt phase." (Penalty Instruction # 6). The jury was instructed again as to the elements of first degree mur-

der and advised "you may consider as aggravating circumstances *only* those circumstances listed above which you, as a jury, *unanimously* found to exist beyond a reasonable doubt." (R. at 270, Inst. # 6). Other aggravating circumstance evidence could be considered (R. at 271, Inst. # 7). An instruction was given on mitigating circumstances (R. at 272, Inst. # 8). Various other instructions on mitigation were given (R. at 272–74, Inst. # 9, 10). The court then gave an instruction on the necessity to compare the totality of mitigating and aggravating factors and the requirement that the state prove beyond a reasonable doubt that the aggravating factors outweigh the mitigating factors. In addition, the state had to prove beyond a reasonable doubt that the death penalty was the only appropriate and just penalty in light of all the circumstances (R. at 275, Inst. # 11). This was the standard Utah adopted, based on state law, in *State v. Wood, supra.*

Utah is a comparison jurisdiction in which the aggravators are a part of the elements of first degree murder. See *Lowenfield v. Phelps,* 484 U.S. 231, 108 S.Ct. 546, 98 L.Ed.2d 568 (1988) (fact that aggravating circumstance for the death penalty was an element of the crime does not make the sentence invalid under the Eighth Amendment merely because the death selection narrowing occurred during the guilt phase). It should be noted the court also gave a unanimity instruction as to the penalty phase verdict (R. at 277).

It should be observed that the court did not instruct the jury that its prior deliberation on guilt required it to find that any aggravator was established, but only that the jury could consider any aggravator that it had found unanimously and beyond reasonable doubt during the guilt phase. If the jury did not find a particular aggravator that may have been charged, beyond a reasonable doubt, it could not consider it at the sentencing phase. With these instructions it seems difficult to see just what petitioner contends the trial judge should have done. Apparently, petitioner would have required the trial judge to have specifically advised the jury it could not consider the arson or aggravated

arson, as aggravator acts. However, in essence this is what the trial judge did. The instruction advised the jury it was not to consider any matter that it had not found unanimously and beyond reasonable doubt. However, petitioner does not make any showing that the jury considered any aggravator for which there was insufficient evidence. In addition, petitioner does not consider that there were other aggravators, burglary and aggravated burglary, which are undisputed as being supported by sufficient evidence, which the jury could have used for imposition of the death penalty.

The United States Supreme Court has never required a death penalty aggravator to be established beyond a reasonable doubt. See *Gregg v. Georgia*, 428 U.S. 153, 96 S.Ct. 2909, 49 L.Ed.2d 859 (1976) (jury must find an aggravator but no requirement of beyond a reasonable doubt); *Proffitt v. Florida*, 428 U.S. 242, 96 S.Ct. 2960, 49 L.Ed.2d 913 (1976) (in a weighing jurisdiction). In *Jurek v. Texas*, 428 U.S. 262, 96 S.Ct. 2950, 49 L.Ed.2d 929 (1976), the court approved a procedure that required under Texas law that the jury answer three questions beyond a reasonable doubt. However, the United States Supreme Court did not impose the standard of beyond a reasonable doubt; that was provided for by state law. The petitioner would seem to contend that if proof was insufficient as to one of a multiple number of aggravators submitted at sentencing, that the imposition of a death penalty, even if based on other aggravators supported by the evidence, would be a violation of the Eighth Amendment. The petitioner advances this position even if the jury was told it was not to consider any aggravator not found unanimously and beyond a reasonable doubt.

In *Zant v. Stephens*, 456 U.S. 410, 102 S.Ct. 1856, 72 L.Ed.2d 222 (1982), defendant was found guilty of murder and sentenced to death on the basis of the jury's finding of three aggravating circumstances. The state appellate court set aside one of the circumstances but upheld the verdict. The Supreme Court remanded to the state court for a determination of the "premises of state law" that supported the conclusion the death sentence was not affected by the invalidity of one of the aggravating circumstances. The Supreme Court further considered the issue in *Zant v. Stephens*, 462 U.S. 862, 103 S.Ct. 2733, 77 L.Ed.2d 235 (1983). The court observed that under Georgia procedure, the jury could consider the guilt phase evidence in the sentencing phase and had to specify one aggravator in writing.[42] The court also noted the invalidity of the one aggravator as found by the state court was based on a conclusion that it was unconstitutionally vague. Thus, it was invalid as a matter of *law*. The Georgia court had held that the aggravating circumstance is to determine which persons convicted of murder were eligible for the death sentence.[43] The Supreme Court said *Stromberg v. California, supra,* relied on by petitioner before in this case for the same kind of argument in the guilt phase, did not support reversal. The court said the two specific findings were legally sufficient to sustain the death penalty. Further, since in *Griffin v. United States, supra,* the Supreme Court said the *Stromberg* rule was limited to a situation where the improper basis for a verdict was because of invalidity as a matter of law, not fact, it would appear *Zant* would support the verdict in this case even if the evidence on aggravated arson was insufficient. This is because it is clear in this case that the evidence is fully adequate as to the other aggravators under § 76–5–202(1)(d). In addition, there is no evidence the jury didn't rely on the aggravators that were factually sufficient and reject any that were factually insufficient. Further, if it is assumed that the aggravated arson evidence is short of reasonable doubt,[44] the overall arson

---

42. This differs from the Utah procedure in this case. No specific finding on an aggravator is required under Utah law. The jury returns a general verdict in the penalty phase of the trial.

43. This is also what the Utah Supreme Court said was the function of the aggravating circumstance in the Utah first degree murder statute § 76–5–202(1)(d). See *Tillman* I, 750 P.2d at 565–66, 569.

44. This position is not to conclude that the Utah Supreme Court was wrong on the sufficiency of the evidence for attempted arson, only that assuming the petitioner's argument as to insufficiency of the aggravated arson evidence, it makes no constitutional difference to the outcome in this case.

evidence would still have been admissible on the death penalty determination. *Zant*, 462 U.S. at 887, 103 S.Ct. 2733.

 Other cases have appeared to discuss an invalid aggravator in terms of legal invalidity, not factual insufficiency, and if any rational trier of fact could have found a factual basis for the verdict, it will stand. *Lewis v. Jeffers*, 497 U.S. 764, 110 S.Ct. 3092, 111 L.Ed.2d 606 (1990). There was nothing to suggest that the jury, in this case, used any legally or factually invalid aggravator in setting the sentence. *Cf. Poland v. Arizona*, 476 U.S. 147, 106 S.Ct. 1749, 90 L.Ed.2d 123 (1986). See also *Clemons v. Mississippi*, 494 U.S. 738, 110 S.Ct. 1441, 108 L.Ed.2d 725 (1990) (in a weighing state an illegal aggravator does not per se preclude upholding a death sentence if other valid aggravators exist which will support the jury's verdict). A state may allow "non-statutory" aggravating circumstances to be used in the death penalty determination. *Zant, supra; Barclay v. Florida*, 463 U.S. 939, 103 S.Ct. 3418, 77 L.Ed.2d 1134 (1983) (use of non-statutory aggravating circumstance is not constitutionally improper). A felony aggravator may be used both on guilt and sentencing. *Deputy v. Taylor*, 19 F.3d 1485 (3d Cir.1994); see also *Johnson v. Dugger*, 932 F.2d 1360 (11th Cir.1991).

In *Stringer v. Black*, 503 U.S. 222, 112 S.Ct. 1130, 117 L.Ed.2d 367 (1992) a state prisoner challenged his death sentence because one of the aggravators the jury found was the invalid "especially heinous, atrocious and cruel" killing which the Supreme Court had essentially ruled to be constitutionally improper in *Godfrey v. Georgia*, 446 U.S. 420, 100 S.Ct. 1759, 64 L.Ed.2d 398 (1980). Therefore, the prisoner's claim was not barred by *Teague v. Lane, supra*.[45] Mississippi was a "weighing" state and the Supreme Court in *Zant v. Stephens*, 462 U.S. at 890, 103 S.Ct. 2733, had left open the issue as to the possibility that in a weighing state an "invalid aggravating factor" might be a basis to attack a death sentence. The court did refer to *Lowenfield, supra*, where it had

upheld the aggravator narrowing during the guilt phase as constitutional.

We observed that "[t]he use of 'aggravating circumstances' is not an end in itself, but a means of genuinely narrowing the class of death-eligible persons and thereby channeling the jury's discretion. We see no reason why this narrowing function may not be performed by jury findings at either the sentencing phase of the trial or the guilt phase."

*Stringer*, 503 U.S. at 233, 112 S.Ct. 1130. The Court in *Stringer*, referred the matter for constitutional "harmless-error analysis or reweighing in the state judicial system." 503 U.S. at 237, 112 S.Ct. 1130.

In a subsequent case, *Espinosa v. Florida*, 505 U.S. 1079, 112 S.Ct. 2926, 120 L.Ed.2d 854 (1992), after the *Teague* date of this case, the Supreme Court held that where a Florida jury, that was not the sentencer but only made a recommendation to the judge who finally imposed a sentence of the jury, considered a legally invalid aggravator[46] and under Florida law, the trial judge had to give "great weight" to the jury's determination, it would be assumed that the judge followed the law and gave consideration to the invalid aggravator. Therefore, remand for reweighing was required. See also *Sochor v. Florida*, 504 U.S. 527, 112 S.Ct. 2114, 119 L.Ed.2d 326 (1992); *Richmond v. Lewis*, 506 U.S. 40, 113 S.Ct. 528, 121 L.Ed.2d 411 (1992)(Arizona weighing practice with legally invalid aggravator). None of these cases has application to the petitioner's case since no *legally invalid* aggravator was given to the jury. In this case, petitioner's argument is only as to the potential that the jury ignored the court's instructions and found facts other than what they should have under the instructions. This contention is entirely speculative and, if adopted, would be a "new" legal position.

In this case, there was no legally invalid aggravator. The jury, in the penalty phase, was instructed it could only consider an aggravator which it found unanimously and be-

---

**45.** That circumstance barring application of *Teague* is not involved in this case.

**46.** The improper aggravator was an " 'especially wicked, evil, atrocious or cruel' standard." *Es-*

*pinosa*, 505 U.S. at 1080, 112 S.Ct. 2926. This was the same type of instructional error found invalid in *Godfrey v. Georgia, supra*.

yond a reasonable doubt in the guilt phase. The Supreme Court has never set a standard of proof for an aggravator and not one beyond a reasonable doubt. See *infra* and see also *Walton v. Arizona,* 497 U.S. 639, 110 S.Ct. 3047, 111 L.Ed.2d 511 (1990). See discussion of *Woratzeck v. Lewis,* 863 F.Supp. 1079, 1088–89 (D.Ariz.1994). See also *State v. Wood, supra; Harris v. Johnson,* 81 F.3d 535, 540 (5th Cir.1996). Utah imposes a higher standard of protection than is required by the federal Constitution and, in addition, the jury in this case was not faced with an illegal invalid aggravator. The procedure utilized fully protects the fact finding process. Compare *Penry v. Lynaugh,* 492 U.S. 302, 109 S.Ct. 2934, 106 L.Ed.2d 256 (1989). The Utah approach is more demanding than those involved in *Tuilaepa v. California,* 512 U.S. 967, 114 S.Ct. 2630, 129 L.Ed.2d 750 (1994), where the court said a death penalty sentence was not invalid because there was no instruction as to the weight to be given to an aggravator. "A capital sentencer need not be instructed how to weigh any particular fact in the capital sentencing decision." *Id.* at 979, 114 S.Ct. 2630. In this case, no unconstitutional weighing aggravator was submitted to the jury.[47] It was only a fact issue on which the jury was properly instructed.

Further, at about the time of the Utah Supreme Court's decision in this case, the court in *Andrews v. Shulsen,* 802 F.2d 1256, 1264 (10th Cir.1986), addressed a comparable issue. In that case, the defendant had argued that Utah's "personal gain" aggravator was overbroad. The court noted the case had been submitted on six theories. The court sustained the penalty, noting:

> The jury's determination in this case is reliable notwithstanding the general verdict of guilt. Because Andrews and Pierre were each convicted of three murders, the jury could not have failed to find the aggravating circumstance of multiple killings. *See supra* note 5. Similarly, because they were convicted of aggravated robbery, the jury was compelled to find the circumstance of killing in perpetration of robbery. *See id.* Andrews' convictions therefore

rest upon at least two well-founded statutory aggravating circumstances which, under the Utah statute, place him in the restricted class of defendants who may be sentenced to death.

> The Court in *Zant* also satisfied itself that all evidence relating to the invalid circumstance was otherwise fully admissible at the sentencing phase. *See Zant,* 462 U.S. at 886–87, 890, 103 S.Ct. at 2747–48, 2749. Similarly, the instant case is not one where inadmissible or prejudicial evidence was improperly admitted in connection with the statutory aggravating circumstance of killing for personal gain. Any evidence of killing for personal gain was admissible as evidence of the crime and also admissible as evidence of non-statutory aggravating circumstances . . . .

802 F.2d at 1264.

Therefore, it is apparent that the position argued for by petitioner in this case is not supported. The petitioner's argument here is that if one aggravator is not *factually* supported, even if the jury was instructed not to consider an aggravator not supported unanimously and beyond a reasonable doubt, the death penalty must be vacated. That position is a "new rule" barred by *Teague v. Lane, supra; Butler v. McKellar,* 494 U.S. 407, 110 S.Ct. 1212, 108 L.Ed.2d 347 (1990). There is no authority which supports the petitioner's position. In 1988, as well as 1997, the petitioner's contention is outside the markers of judicial precedent. The various cases discussed before are not supportive of the argument and not immediately, squarely in point. The argument of petitioner is a wholly new contention in death penalty jurisprudence. Therefore, petitioner is within the new rule limitation of *Teague, Lambrix v. Singletary,* 520 U.S. 518, 117 S.Ct. 1517, 137 L.Ed.2d 771 (1997) (that a death sentence is invalid if the trial judge [trial jury] considers an *invalid* aggravating factor in weighing the circumstances for capital punishment, is a new rule within *Teague* ).

In addition, from what has been said it is apparent the petitioner's position is not sub-

---

47. Consider *Davis v. Executive Director of Department of Corrections,* 100 F.3d 750, 767–68 (10th Cir.1996).

ject to the *Teague* exception as a matter of "fundamental fairness." It is not a "watershed rule of criminal procedure." The rule has no established position in precedent and is contrary to the Supreme Court's analogous position in *Griffin, supra.* Also in *Tuilaepa, supra,* the court addressed the substance of petitioner's claim and clarified the law governing the sentencing process in capital cases. The defendant was sentenced to death under California law. California law required the sentencing jury to consider the "circumstances of the crime of which defendant was convicted ... and the existence of any special circumstances *found to be true.*" 512 U.S. at 975–76, 114 S.Ct. 2630 (emphasis added). This is somewhat akin to the instructions in this case.

The defendant challenged the special factors used in sentencing but none were found invalid. *Id.* at 976–78, 114 S.Ct. 2630. The court referred to *Zant, supra,* and *Gregg v. Georgia, supra.* The court in *Tuilaepa* had said the vagueness concerns of its other cases were not as significant when the jury did not have to respond "yes or no" to a specific question. "Those concerns are mitigated when a factor does not require a yes or a no answer to a specific question, but instead only points the sentencer to a subject matter." 512 U.S. at 975, 114 S.Ct. 2630. The court added, "In these cases as well, we must reject petitioners' suggestion that the Constitution prohibits sentencing instructions that require the trier of fact to consider a relevant subject matter such as the 'circumstances of the crime.'" *Id.* at 978, 114 S.Ct. 2630. The Court then observed:

> Petitioners also suggest that the § 190.3 sentencing factors are flawed because they do not instruct the sentencer how to weigh any of the facts it finds in deciding upon the ultimate sentence. In this regard, petitioners claim that a single list of factors is unconstitutional because it does not guide the jury in evaluating and weighing the evidence and allows the prosecution (as well as the defense) to make wide-ranging arguments about whether the defendant deserves the death penalty. This argument, too, is foreclosed by our cases. A capital sentencer need not be instructed how to weigh any particular fact in the capital sentencing decision. In *California*

*v. Ramos,* for example, we upheld an instruction informing the jury that the Governor had the power to commute life sentences and stated that "the fact that the jury is given no specific guidance on how the commutation factor is to figure into its determination presents no constitutional problem." 463 U.S., at 1008–1009, n. 22[, 103 S.Ct. 3446]. Likewise, in *Proffitt v. Florida,* we upheld the Florida capital sentencing scheme even though "the various factors to be considered by the sentencing authorities [did] not have numerical weights assigned to them." 428 U.S., at 258[, 96 S.Ct. 2960]. In *Gregg,* moreover, we "approved Georgia's capital sentencing statute even though it clearly did not channel the jury's discretion by enunciating specific standards to guide the jury's consideration of aggravating and mitigating circumstances." *Zant,* 462 U.S., at 875[, 103 S.Ct. 2733]. We also rejected an objection "to the wide scope of evidence and argument" allowed at sentencing hearings. 428 U.S. at 203–204[, 96 S.Ct. 2909]. In sum, "discretion to evaluate and weigh the circumstances relevant to the particular defendant and the crime he committed" is not impermissible in the capital sentencing process. *McCleskey v. Kemp,* 481 U.S. 279, 315, n. 37[, 107 S.Ct. 1756, 95 L.Ed.2d 262]. "Once the jury finds that the defendant falls within the legislatively defined category of persons eligible for the death penalty, ... the jury then is free to consider a myriad of factors to determine whether death is the appropriate punishment." *Ramos, supra,* 463 U.S., at 1008[, 103 S.Ct. 3446]. Indeed, the sentencer may be given "unbridled discretion in determining whether the death penalty should be imposed after it has found that the defendant is a member of the class made eligible for that penalty." *Zant, supra,* 462 U.S., at 875[, 103 S.Ct. 2733]. *See also Barclay v. Florida,* 463 U.S. 939, 948–951[, 103 S.Ct. 3418, 77 L.Ed.2d 1134] (plurality opinion). In contravention of those cases, petitioners' argument would force the States to adopt a kind of mandatory sentencing scheme requiring a jury to sentence a defendant to death if it found, for example, a certain kind or number of facts, or found more statutory aggravating factors than statutory mitigating factors. The States

are not required to conduct the capital sentencing process in that fashion.

512 U.S. at 978–80, 114 S.Ct. 2630.

Although, *Tuilaepa, supra,* involved a different sentencing scheme and specific issue different from that involved in this case, the governing analytical principle closely parallels the applicable principle in this case. There is no fundamental right to have the trial judge surgically extract evidence that can be used as a capital aggravator but also advise the jury that they could consider such evidence as a part of the total evidence on the death penalty. It is presumed the jury follows the instructions of the court in the guilt and penalty phases. *Shannon v. United States,* 512 U.S. 573, 114 S.Ct. 2419, 129 L.Ed.2d 459 (1994); *Zafiro v. United States,* 506 U.S. 534, 540, 113 S.Ct. 933, 122 L.Ed.2d 317 (1993); *Greer v. Miller,* 483 U.S. 756, 107 S.Ct. 3102, 97 L.Ed.2d 618 (1987); *Cargill v. Turpin,* 120 F.3d 1366, 1374 (11th Cir.1997); *United States v. Davis,* 1 F.3d 1014, 1016 (10th Cir.1993) (It is presumed that the jury remains true to its oath and followed instructions absent evidence to the contrary); *United States v. Wacker,* 72 F.3d 1453 (10th Cir.1995); *United States v. Wiles,* 102 F.3d 1043 (10th Cir.1996) (same). There is no claim of instructional error. The jury was to consider only an aggravator they found unanimously and beyond a reasonable doubt. The record clearly shows the evidence is sufficient for the aggravated burglary, burglary, or arson aggravators. Under *Griffin, supra,* it must be assumed the jury followed the instructions so that *if* the evidence was insufficient beyond a reasonable doubt on the aggravated arson claim, it was not considered as an aggravator but merely part of the evidence of what occurred. The arson evidence could be considered as a part of the total evidence applicable to the death phase weighing requirement under Utah law. The general unanimity instruction given in this case would assure jury compliance.

It must be concluded that petitioner's argument doesn't raise any issue of fundamental fairness that would override the restriction of *Teague v. Lane, supra,* applicable to this issue. Further, the principle petitioner contends should be applied in this case is not "fundamental" within the due process clause or required by the Eighth Amendment.

Finally, given the nature of the offense in this case, the factual aggravating evidence of petitioner's extensive criminal record and his failure as a parolee (Tr. at 1866–86), the aggravating circumstances are strong. The mitigation was from family and other members, his wife and friends (Tr. at 1886–1923). The jury had a full opportunity to weigh all relevant evidence under Utah's very stringent requirements for imposition of the capital penalty. It cannot be said that any error that may have been committed, even if petitioner's claim on this point is accepted as to the aggravator of aggravated arson, would have been prejudicial within the standard of *Brecht v. Abrahamson,* 507 U.S. 619, 113 S.Ct. 1710, 123 L.Ed.2d 353 (1993). Therefore, there is no merit to petitioner's contention of constitutional error in the sentencing phase of his trial.

*Eighth Amendment Violation Because of the Random Positions Taken by the Various Dissenting Justices of the Utah Supreme Court*

The petitioner's final contention is that three members of the Utah Supreme Court have concluded "Tillman should not be executed" and that execution now would violate the Eighth Amendment (File Entry # 2 at 45). The respondent first contends that the issue is not a federal issue because the random positions of the three justices of the Utah Supreme Court were based on state law (File Entry # 51). However, this misinterprets petitioner's contention. Petitioner has raised the issue as a matter of federal constitutional law, based on a claim of cruel and unusual punishment under the Eighth Amendment. The argument is that where three of five state justices, for whatever reason, reject the penalty of death for petitioner, to impose the death penalty violates the Eighth Amendment to the Constitution. This is not a state law issue. Respondent's argument to the contrary must be rejected.

To fully understand the issue, consideration must be given to the Utah Supreme Court's two opinions. *Tillman* I and *Tillman* II.[48] In *Tillman* I, 750 P.2d at 583,

---

48. *Tillman* III is merely an order from the Utah

Supreme Court finding petitioner's efforts to

Justice Durham dissented on the issue of the harmfulness of the prosecutor's argument during the penalty phase. The dissent on this point appears to be on state law grounds. Certainly, there is no clear invocation of a federal constitutional standard. On this point, Justice Durham was the only dissenting judge. This court has found the same issue did not sustain a violation of a federal constitutional right.

Justice Durham also dissented on the basis of the unanimity issue in the guilt phase and would require a specific unanimity instruction in the guilt phase of the case on the various aggravators. This appears also to be a state law construction. As noted before, no such standard exists as a matter of federal law, nor did Justice Durham assert as much. See 750 P.2d at 585–88. Justice Zimmerman concurred with Justice Durham. 750 P.2d at 591. However, a majority of three justices rejected their position.

Justices Durham and Zimmerman accepted petitioner's merger doctrine claim as a matter of construction of Utah law. 750 P.2d at 588–91. Again, three justices took a different position.

In *Tillman* II, on habeas corpus, *Tillman v. Cook*, 855 P.2d 211, the only dissent was from Justice Stewart. He dissented on the issue of jury unanimity in the guilt phase but under Utah law. 855 P.2d at 226. Justice Stewart, however, found the matter to be harmless error. 855 P.2d at 228. Therefore, a majority of the Utah Supreme Court never found the guilt phase unanimity issue to be a basis for reversal. Justice Stewart dissented in *Tillman* II, on the penalty phase unanimity issue. This also appears to have been based solely on state law. *Id.* at 228–31. No other justice of the Utah Supreme Court agreed with that position. Consequently, there never was any other justice who agreed with Justice Stewart's position on the penalty phase unanimity issue.

Based on what has been observed, it is apparent that at no time have three justices of the Utah Supreme Court concurred on any issue for reversal. Nor did the justices who did dissent on any issue conclude, as petitioner asserts, that he "should not be executed." No justice dissented under the Utah court's death penalty doctrine expressed in *State v. Wood*, 648 P.2d 71 (Utah 1982). No justice of the Utah Supreme Court said the death sentence was not supported by the aggravating circumstances outweighing the mitigating circumstances beyond a reasonable doubt or that the death penalty was not "justified and appropriate in the circumstance" beyond a reasonable doubt.

Petitioner's argument must be reframed in light of the previously discussed circumstances of the position of the justices of the Utah Supreme Court. What petitioner is asserting is that a violation of the Eighth Amendment occurs when the death penalty is imposed if a numerical majority of the justices of a state Supreme Court dissent as to any individual issue when a majority do not dissent on any single issue and there is no majority for reversal on either the defendant's guilt or the penalty imposed. The petitioner's argument is one of merely counting judicial noses regardless of the content of the issue on which the individual justice dissents. To this argument, respondent urges the contention is barred under *Teague v. Lane, supra* (File Entry # 9 at 54).

The petitioner has cited no precedent for his position on this point. None has been found. The acceptance of the petitioner's argument would be a major federal intrusion into the right of state courts to openly address issues and present publicly legitimate arguments.[49] Such a position would discourage written and open expression by individual justices and possibly cause state appellate courts, in capital cases, to adopt a position of not publishing dissenting opinions. A rigidi-

---

again address his claims to the Utah court, to be procedurally barred. Respondent has not asserted any procedural bar on this issue, which was raised on petition for rehearing in *Tillman* II and on petition in *Tillman* III. Petitioner raised the issue at the earliest point at which the issue solidified. Therefore, a procedural default claim would not be valid.

**49.** There could be Tenth Amendment considerations against adopting such a position. States are free to set the standards of affirmance of their appellate courts, absent an overriding federal constitutional restriction. None currently exists in the context of petitioner's argument.

ty akin to the French Court of Cassation might be approximated. Dawson, *The Oracles of the Law,* 320–23, 380–385, 406 (1968). The result could be disastrous to the growth of the law. Consequently, the approach suggested by petitioner is a "new rule" within *Teague v. Lane, supra.* It also is not a matter of fundamental fairness as there is nothing in American constitutional law that would support such a requirement. Therefore, the claim is barred under *Teague* and further, there is no constitutional merit to the position. Petitioner's claim on this issue must be denied.

### Conclusion

Petitioner has raised numerous issues in his petition under 28 U.S.C. § 2254 for habeas corpus. Counsel for petitioner have been aggressive and imaginative in their advocacy and have represented petitioner very well. The court has carefully reviewed petitioner's contention in detail, appropriate to death penalty cases. "Review of a death sentence is among the most serious examinations any court of law ever undertakes." *Brecheen v. Reynolds,* 41 F.3d at 1370; *Duvall v. Reynolds,* 131 F.3d 907, 936 (10th Cir.1997). However, in spite of the many claims raised by petitioner, there is no basis for federal habeas corpus relief. Therefore,

The petition for habeas corpus should be DENIED.

Copies of the foregoing Report and Recommendation are being mailed to the parties who are hereby notified of their right to object to the same. The parties are further notified that they must file any objections to the Report and Recommendation within ten (10) days after receiving it. Failure to file objections may constitute a waiver of those objections on subsequent appellate review.

December 23, 1997.